# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAURA GARCIA and LORE REDNOUR, individually and on behalf of others similarly situated,<br>    Plaintiffs,<br><br>        v.<br><br>J.C. PENNEY CORPORATION, INC.,<br>    Defendant. | Judge Joan B. Gottschall<br><br>No. 12 C 3687 |

## MEMORANDUM OPINION AND ORDER

This case originated in California as a putative class action on behalf of California and Illinois employees of J.C. Penney Corporation, Inc. ("JCP"). *See Tschudy v. J.C. Penney*, No. 11 C 1011-JM (S.D. Cal.). In the Illinois portion of *Tschudy*, which was transferred to this court, plaintiffs Laura Garcia ("Garcia") and Lore Rednour ("Rednour") allege violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq.*, and Illinois Department of Labor ("IDOL") regulations. Specifically, the plaintiffs, on behalf of a putative class consisting of current and former Illinois JCP management associates and part-time non-management associates, claim that they did not receive vacation benefits earned pursuant to JCP's "My Time Off" vacation policy (the "vacation policy" or the "MTO vacation policy"). The plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23, the plaintiffs' motion to strike, and the plaintiffs' motion for judicial notice, along with JCP's motion to strike, are before the court. For the following reasons, the plaintiffs' motion for class certification is denied without prejudice to renewal after the plaintiffs amend the class definition and the motions to strike and for judicial notice are denied without prejudice because the motion for class certification that they relate to is no longer pending.

## I. FACTS

The plaintiffs are proceeding in this case using the second amended complaint filed in the *Tschudy* case, which contains claims brought on behalf of current and former California and Illinois JCP employees. That complaint was transferred to this court when the *Tschudy* court carved off the Illinois portion of the case and transferred it to this district.[1] *See* ECF No. 74 (JCP's answer to the second amended complaint filed in *Tschudy* following transfer of the case to this court). In this action, despite the more sweeping allegations in the operative complaint, Garcia and Rednour allege that JCP's MTO vacation policy caused the putative class of current and former Illinois JCP employees to forfeit earned vacation benefits.

The second amended complaint from the *Tschudy* case contains a proposed Illinois sub-class consisting of "all similarly situated former and current Illinois employees of J.C. Penney who, during the ten (10) years prior to the commencement of this action ("IWPCA Class Period"), forfeited accrued vacation benefits and/or were denied compensation thereof pursuant to J.C. Penney's vacation policies."[2] (2d Am. Compl. ¶ 63, ECF No. 45.)

---

[1] It is procedurally improper to use the second amended complaint filed in the *Tschudy* case as the operative complaint in this case since it contains allegations that have no relationship to this case. The plaintiffs must file an amended complaint that contains the correct Northern District of Illinois caption and excises allegations about the California plaintiffs and the claims arising under California law. In this regard, the court notes that the California case included Does 1-100 as additional defendants who, upon information and belief, "were in some manner responsible for the events and happenings alleged in the complaint and for the injuries and damages of PLAINTIFFS, all others similarly situated and the general public." (2d Am. Compl. ¶ 13, ECF No. 45.) The sole defendant in this case appears to be JCP, although the Doe defendants are still listed in the caption. The plaintiffs should ensure that they name the desired defendants when they amend their complaint.

[2] With respect to the start date for the proposed class, the plaintiffs filed suit in the Superior Court of California for the County of San Diego on April 5, 2011. (Notice of Removal, ECF No. 1.) The defendants removed the case to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

In their motion for class certification, the plaintiffs provide a different class definition consisting of "Part-Time Non-Management Associates and Management Associates employed in Illinois by J.C. Penney from January 1, 2004 through the date of trial who, according to J. C. Penney's records, were not permitted to accrue, or were not paid, all accrued and unused My Time Off." (Pls.' Class Cert. Memo. at 14, ECF No. 127.)

**A.  JCP's MTO Vacation Policy**

According to the plaintiffs, the relevant portions of the various iterations of JCP's vacation policy are substantively interchangeable. *See* Pls.' Motion for Class Cert. at 1, ECF No. 127 ("the terms of the MTO [vacation policy] described in the annual iterations from 2007 through 2012 and . . . two miscellaneous summaries are substantively identical"). JCP gave a copy of the MTO vacation policy to each new employee until April 2012, when it placed the vacation policy online. The plaintiffs allege that after April 2012, there is no proof that new hires received copies of the MTO vacation policy. JCP, however, gave new hires other documents, including the "Associate Guide to Winning Together." This document refers generally to the MTO vacation policy but does not set out its terms.

The MTO vacation policy defines "My Time Off" as "a bank of paid time off hours that you **earn** each month." (*Id*. at 3) (emphasis in original.) The amount of vacation benefits accrued by a JCP associate depends on her position, length of service, and the average number of hours worked per week. Management associates, who generally work full-time, become eligible to receive MTO vacation benefits and receive their first deposit on the first day of the third month of employment. Management associates do not receive vacation benefits for their first 60 days of employment if they are terminated prior to the first day of the third month of

employment.  Management associates also do not receive vacation benefits for the first 60 days of employment even if they are still employed by JCP as of the first day of the third month of their employment.

In contrast, part-time non-management associates become eligible to receive MTO vacation benefits and receive their first deposit on the first day of the month following 12 months of employment if they averaged 25 or more hours per week during the first 48 weeks of employment.  Part-time non-management associates must qualify each year to receive MTO deposits.  "Each July [following the first 48 weeks of employment, JCP] will look back at the previous 52 weeks to determine [each part-time non-management associate's] eligibility for MTO [vacation benefits] for the next year."  (*Id.*)

The amount of vacation earned each month for both management and part-time non-management associates is calculated by multiplying the employee's average weekly hours by the appropriate "MTO Weeks Factor," then dividing by twelve.  The "MTO Weeks Factor" is a constant value that is based on length of service and whether an employee is a management associate or a part-time non-management associate:

| Months of Service | Management Associate "MTO Weeks Factor" | Part-Time Non-Management Associate "MTO Weeks Factor" |
|---|---|---|
| Less than 12 months | 2.6 | 2.6 |
| 12-35 months | 2.6 | 2.6 |
| 35-59 months | 3.0 | 2.8 |
| 60-179 | 4.0 | 3.4 |
| 180-299 months | 5.0 | 4.0 |
| 300+ months | 6.0 | 4.6 |

(Pls.' Class Cert. Memo. at 4, ECF No. 127.)  Assuming that employees are eligible to use vacation time, they can use earned MTO vacation hours at their discretion.  (Pls.' Class Cert. Memo. at 3, ECF No. 127.)

**B.  The Named Plaintiffs**

From November 17, 2005 to June 28, 2009, Garcia worked for JCP in Illinois as a part-time non-management associate.  During her first 48 weeks of employment, Garcia averaged 18.24 hours per week.  She was employed by JCP for a total of 188 weeks and worked 3,796.70 hours, which averages out to 20.2 hours per week.  Garcia did not receive any vacation benefits under the MTO vacation policy.

From November 26, 2007 until October 3, 2010, Rednour worked for JCP in Illinois as a part-time non-management associate in Illinois.  She worked an average of 29.47 hours per week during the first 48 weeks of her employment and received the MTO vacation days she accrued during that time period on a pro rata basis on the first day of each month during her second year of employment.  According to Rednour's declaration, she averaged more than 25 hours per week during her second year of employment with JCP, but did not receive all of the MTO vacation time she had accrued because she stopped working for JCP on October 30, 2010.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23 allows class certification when the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Wal-Mart, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  The party seeking class certification must present proof that the requirements of Rule 23 are satisfied, and the court must engage in a

"rigorous analysis" and, if necessary, delve into "the merits of the plaintiff's underlying claim." *Id.* at 2551-52.

Rule 23(a) lists four prerequisites for certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Wal-Mart*, 131 S. Ct. at 2548. These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 131 S. Ct. at 2550 (internal quotation marks omitted). In turn, Rule 23(b)(3) is satisfied when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. ANALYSIS

The issue in this case is whether JCP's MTO vacation policy, as applied to management associates and part-time non-management associates, violates the IWPCA. The IWPCA provides that:

> Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.

820 ILCS § 115/5.

The corresponding Illinois Department of Labor regulations provide that:

(a) Whenever an employment contract or an employment policy provides for paid vacation earned by length of service, vacation time is earned pro rata as the employee renders service to the employer.

(b) Oral promises, handbooks, memoranda, and uniform patterns of practice may create a duty to pay the monetary equivalent of earned vacation . . . .

(e) An employment contract or an employer's policy may require an employee to take vacation by a certain date or lose the vacation, provided that the employee is given a reasonable opportunity to take the vacation. The employer must demonstrate that the employee had notice of the contract or policy provision.

(f) The Department recognizes policies under which:

(1) no vacation is earned during a limited period at the commencement of employment. The employer must demonstrate that the policy is not a subterfuge to avoid payment of vacation actually earned by length of service and, in fact, no vacation is implicitly earned or accrued during that period . . . .

(3) the employer does not have separate arrangements for vacation and sick leave. Under the policy, employees earn a certain amount of "paid time off" that they can use for any purpose, including vacation and sick leave. Because employees have an absolute right to take this time off (unlike traditional sick leave in which using sick leave is contingent upon illness), the Department will treat "paid time off" as earned vacation days.

56 Ill. Admin. Code § 300.520(a), (b), (e), & (f).[3]

---

[3] An Illinois Department of Labor regulation provides that "[c]laims for vacation pay must be brought to the Department within 3 years from the date the vacation is earned." 56 Ill. Admin. Code § 300.520(c). The parties do not discuss this three-year limitation on regulation-based claims. The operative complaint in this case (the *Tschudy* second amended complaint) includes a single count based on Illinois law: the IWPCA. The plaintiffs appear to be relying on the Illinois Department of Labor regulations to support their IWPCA claim, as opposed to seeking relief separately under the regulations.

## A. The Complaint and the Class Definition

There are multiple threshold problems with the complaint and the class definition. First, as noted above, the operative complaint in this case is the complaint from *Tschudy* filed in the California case. The parties have not commented on this procedural anomaly, but the court does not see how the plaintiffs can proceed before this court without a complaint that is tailored to the Illinois plaintiffs. The plaintiffs are granted leave to file an amended complaint and must do so within fourteen days after the date that this order is entered on the docket.

Second, the current operative complaint and the plaintiffs' motion for class certification contain different proposed classes. Courts in this district "appear to be split on whether to hold a plaintiff to the class defined in the complaint." *Costello v. BeavEx Inc.*, 303 F.R.D. 295, 305 (N.D. Ill. 2014) (collecting cases). This case has an unusual procedural posture since the operative complaint was filed in the California action and largely consists of allegations about plaintiffs who are proceeding in federal district court in California based on claims arising under California law. It makes no sense to hold the Illinois plaintiffs to a class definition that they eschewed in their motion for class certification, given that unlike the current operative complaint, the motion for class certification was filed with this court and focused specifically on a putative class of individuals seeking relief under Illinois law. The court assumes that the plaintiffs wish to proceed using the proposed class definition in the motion for class certification, as the parties' briefs are based on this definition and the definition was drafted specifically for the instant case. However, this is not a subject for conjecture.

In any event, even if the plaintiffs wanted to proceed with the class definition in their motion for class certification, they would be unable to do so. To recap, that proposed class

-8-

consists of "Part-Time Non Management Associates and Management Associates employed in Illinois by J.C. Penney from January 1, 2004 through the date of trial who, according to J.C. Penney's records, were not permitted to accrue, or were not paid, all accrued and unused My Time Off." (Pls.' Class Cert. Memo. at 14, ECF No. 127.)

A "fail-safe" class is defined so that whether a person qualifies as a member depends on whether she has a valid claim, so that individuals with no claim are not bound by the judgment in the class action case. *Messner*, 669 F.3d at 825. "Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Id*.

The class definition could (and should) be refined to describe the class (or, possibly, sub-classes) based on objective criteria, such as the number of hours worked or whether an individual claims that she failed to re-qualify for vacation benefits. As it stands now, however, membership in the class is conditioned on whether JCP impermissibly refused to credit an individual with accrued vacation time or did not pay accrued and unused vacation time based on JCP's records. The court declines to rewrite the definition for the plaintiffs; this is a task for counsel.

The court also notes its concern with the end date proposed by the plaintiffs ("through the date of trial"). This poses an ascertainability problem. If the class closes on the day that trial starts, all of the pretrial proceedings will occur with an open-ended class definition. Moreover, what happens if the case is resolved short of trial? And does "through the date of trial" mean the first or last date of trial? The class must have a start and end date that "limit[s] the class to a

defined set of class members." *See George v. Kraft Foods Global, Inc.*, No. 08 C 3799, 2011 WL 5118815, at *8 (N.D. Ill. Oct. 25, 2011); *Leib v. Rex Energy Operating Corp.*, 256 F.R.D. 178, 179 (S.D. Ill. 2009) (a class definition with an overly broad temporal limitation has the potential to be unmanageable). "[A] district court has the authority to modify a class definition at different stages in litigation." *In re Motorola Securities Litigation*, 644 F.3d 511, 518 (7th Cir. 2011) (internal citations omitted). The court, however, again declines to rewrite this aspect of the plaintiffs' definition.

Numerous additional challenges to the class definition are scattered throughout JCP's oversized brief opposing class certification. JCP's claim that the named plaintiffs cannot properly represent management associates is addressed below. JCP also contends that the class definition is "grossly overbroad" because it includes five categories of individuals who must be excluded: (1) workers who could never have accrued vacation time because they did not satisfy the vacation policy's vesting conditions; (2) current employees; (3) seasonal workers; (4) the 12,712 putative class members who signed mandatory arbitration agreements containing a class action waiver; and (5) the 350 employees who signed unspecified releases in favor of JCP.

In support of its argument that individuals who did not satisfy the vacation policy's vesting conditions should be excluded from the class, JCP argues that these individuals could not have accrued vacation time because they did not work enough hours, remain employed for a long enough time, or remain employed on the first day of the thirteenth month after beginning employment with JCP. Saying that certain members of the putative class are not entitled to benefits pursuant to the vacation policy based on JCP's interpretation of the IWPCA and that

these individuals should, therefore, be excluded is unhelpful since this case challenges the propriety of the provisions in JCP's vacation policy.

Second, JCP contends that the IWPCA does not protect current employees because it expressly applies only to separated or terminated employees. *See* 820 ILCS § 115/5 ("[W]henever a contract of employment or employment policy provides for paid vacations, and an employee *resigns or is terminated* without having taken all vacation time earned . . . the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation") (emphasis added). In their reply, the plaintiffs do not engage with this statutory language; they merely assert that JCP should not be allowed to enforce the policy against current employees "as a matter of public policy." (Pls.' Reply at 14, ECF No. 141.) This is unconvincing. The class may not include current employees.

Third, JCP argues that the class is overbroad because it includes 6,026 "seasonal workers . . . who would have no expectation of receiving any time off" because they are told that (with limited exceptions) they cannot take any time off for the duration of their employment. (Def.'s Opp. at 25, n.19, ECF No. 134.) The plaintiffs assert that "seasonal" workers are still part-time non-management associates. Alternatively, they contend that, at most, JCP might be able to "establish that seasonal employees, even if they are different from [part-time non-management associates], are only asked to defer taking time off, not that vacation time does not accrue during this three month period [as a seasonal worker] or at all thereafter." (Pls.' Reply at 15, ECF No. 141.)

JCP makes its argument about seasonal workers in a footnote, and the plaintiffs respond to this argument in a single paragraph that does not contain any authority. The Seventh Circuit has

"often said that a party can waive an argument by presenting it only in an undeveloped footnote." *Harmon v. Gordon*, 712 F.3d 1044, 1054 (7th Cir. 2013). The court will not bar the parties from presenting arguments – supported by authority – about the seasonal worker issue. However, their perfunctory presentation is insufficient. The court declines to resolve the seasonal worker issue based on the present record.

Fourth, JCP argues that "[b]eginning on July 17, 2009, all newly-hired [JCP] Associates executed a binding arbitration agreement with [JCP] . . . These putative class members – numbering 12,712 – are subject to individual arbitration of their claims and cannot properly be included in any putative class here." (Def.'s Opp. at 27, ECF No. 134.) The arbitration clause underlying this argument provides that:

> J.C. Penney Company, Inc., including its subsidiaries (hereinafter "JCPenney"), and I voluntarily agree to resolve disputes arising from, related to, or asserted after the termination of my employment with JCPenney through mandatory binding arbitration under the JCPenney Rules of Employment Arbitration. JCPenney and I voluntarily waive the right to resolve these disputes in courts.

(*Id.*) JCP's arbitration agreement also contains a class action waiver as it provides that "the Parties waive their rights to bring class and representative actions." (*Id.*)

Based on these provisions, JCP asserts that part-time non-management associates who signed documents containing these provisions must challenge the vacation policy in individual arbitration actions. In their three-paragraph response, the plaintiffs argue that the arbitration clause is not enforceable or, alternatively, that even if it is generally enforceable, it does not apply to this action because it is unconscionable and cannot bar a claim based on a welfare benefit plan. (Pls.' Reply at 15-16, ECF No. 141.)

JCP could not have filed a motion to compel arbitration directed at putative class members as they are not parties to this lawsuit. *See In re Evanston Nw. Corp. Antitrust Litig.*, No. 07-CV-4446, 2013 WL 6490152, at *4 (N.D. Ill. Dec. 10, 2013) (citing *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (Scalia, J., dissenting) ("Not even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation before the class is certified.").  JCP does not provide any explanation or authority supporting its position that the court is authorized to consider whether members of the putative class must arbitrate claims about the vacation policy at the class certification stage and that this issue is properly raised in the context of determining if the class definition is proper.  If JCP renews its arbitration argument, it must explain why consideration of the arbitration issue is procedurally appropriate and must then provide developed arguments, supported by relevant authority, on the merits.

Fifth, in a footnote, JCP asserts the single-sentence argument that the approximately 350 employees who signed "releases in favor of [JCP] should be excluded from any potential class in this matter, given that they have no viable claims." (Def.'s Opp. at 28 n.23, ECF No. 134.)  Yet again, this is insufficient.  The court will not craft arguments and locate relevant authority for JCP.

The parties should take the above rulings and concerns into account and should attempt to come to agreement on a class definition.

## C. Typicality and Adequacy

The current class definition (assuming that the court chose the correct definition to analyze) makes it impracticable to analyze all of the class certification factors at this time.

Nevertheless, the present record makes clear that the named plaintiffs – both of whom are part-time non-management associates – cannot proceed on behalf of putative class members who are management associates.

A plaintiff must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3) & (4). A claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Simpson v. Safeguard Prop., LLC*, No. 13 CV 2453, 2014 WL 4652336, at *4 (N.D. Ill. Sept. 17, 2014) (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)). The adequacy requirement turns on whether, among other things, the named plaintiffs' claims and interests conflict with those of the class and whether the named plaintiffs are sufficiently interested in the outcome of the case. *Kurgan v. Chiro One Wellness Ctrs, LLC*, No. 10-CV-1899, 2014 WL 642092, at *7 (N.D. Ill. Feb. 19, 2014) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

JCP argues that because both named plaintiffs are part-time non-management associates, their claims are atypical of the putative class, which includes both management and part-time non-management associates. With respect to part-time non-management associates, JCP recognizes that "nearly all of the approximately 38,096 putative class members are [part-time non-management associates]" and that "approximately 345 members of the putative class are or were management employees." (Def.'s Opp. at 26 n.20, ECF No. 134.) JCP does not explain

how the named plaintiffs' claims about the vacation policy are atypical of claims about the vacation policy that could be brought by other part-time non-management associates.

The court, however, agrees with JCP that the claims of the named plaintiffs are not typical of the claims of management associates. The plaintiffs provide a list of questions that "will drive the resolution of this case" for the members of the putative class who are or were management associates, and answer the questions as follows:

- Why were [management associates] prevented from accruing vacation benefits during the first 60 days of employment?

    — The MTO [vacation policy] contains unlawful milestones that unlawfully prohibit the accrual of vacation benefits during this period unless the employee is employed on the first day of the third month.

    — Vacation benefits did not accrue because the MTO [vacation policy] contains an ostensible waiting period, but such waiting period is not lawful because it is not clearly and unequivocally disclosed in the MTO [vacation policy], and is contrary to other terms in the MTO [vacation policy].

- Why did [management associates] forfeit vacation benefits even if they were employed on the first day of their third month of employment?

    — Vacation benefits for the first 60 days of employment were forfeited because the MTO [vacation policy] contains an ostensible waiting period which prevented any accrual during this period, but such waiting period is not lawful because it is not clearly and unequivocally disclosed in the MTO [vacation policy], and is contrary to other terms in the MTO [vacation policy].

(Pls.' Class Cert. Memo. at 20, ECF No. 127.)

According to the plaintiffs, their claims are typical of the claims of all other class members – both management and non-management – because the members of the putative class all challenge "JCP's uniform MTO [vacation policy]." (Pls.' Class Cert. Memo. at 21, ECF No. 127.) The plaintiffs also contend generally that "[t]he claims of [management associates] arise

out of the same event, practice, or course of conduct that gives rise to the claims of the Plaintiffs and the [part-time non-management associates] and are based on the same legal theory." (Pls.' Class Cert. Memo. at 23, ECF No. 127.) The plaintiffs' position is very broadly correct insofar as the claims of management and part-time non-management associates are based on JCP's vacation policy. But this broad commonality is not enough to show that the named plaintiffs' claims are typical of the claims of management associates.

Typicality can exist "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). However, the claims of the named plaintiffs must "have the same essential characteristics as the claims of the class at large." *Id.* (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Significant factual differences between a named plaintiff's claims and the claims of putative class members not only preclude a finding of typicality but also make a named plaintiff an inadequate class representative. *See id.*; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (Rule 23(a)'s commonality, typicality, and adequacy criteria "tend to merge").

"Typicality requires 'enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group.'" *Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Division St., Inc.*, No. 11 C 6753, 2015 WL 638522, at 3 (N.D. Ill. Feb. 13, 2015) (quoting *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011)). "A class is disserved if its representative's claim is not typical of the claims of the class members, for . . . a class representative's atypical claim may prevail on grounds unavailable to the other class members, leaving them in the lurch." *CE

*Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). The typicality requirement thus can "merge[] with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'" *Id.* (citing Fed. R. Civ. P. 23(a)(4)).

Here, the named plaintiffs have no discernable motivation to litigate issues that apply exclusively to management associates, such as whether JCP properly barred management associates from receiving vacation benefits during their first 60 days of employment. "[I]f [a plaintiff's] claim is atypical, he is not likely to be an adequate representative; his incentive to press issues important to the other members of the class will be impaired." *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999). That is the case here. The named plaintiffs' claims are typical of the claims of other part-time non-management associates, but atypical of the claims of management associates. Thus, the putative class cannot include management associates.

## IV. CONCLUSION

The plaintiffs' motion for class certification [125] is denied without prejudice to renewal with an amended class definition, consistent with this opinion. The objections and motions to strike filed by plaintiffs [125] [145] and JCP [135], as well as the plaintiffs' amended request for judicial notice [148], are denied without prejudice because the motion for class certification that they relate to is no longer pending. Because the court is requiring the plaintiffs to refile their motion for class certification, the plaintiffs' request for class certification remains pending as a placeholder and no rights are waived for the purposes of *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011).

It is procedurally improper to use the second amended complaint filed in the *Tschudy* case as the operative complaint in this case since it contains allegations that have no relationship to this case. The plaintiffs shall amend the complaint to include the correct caption and excise information about the California class action within fourteen days after the date that this order is entered on the docket. JCP shall file its responsive pleading twenty-one days thereafter.[4] The plaintiffs may then renew their motion for class certification following the principles outlined in this opinion. In responding to the motion, JCP should not discuss the merits of its claims except as necessary to discuss the class certification factors.

Date: March 31, 2015
                                                           /s/
Joan B. Gottschall
United States District Judge

---

[4] In the interests of clarity and because the parties have been proceeding based on the *Tschudy* second amended complaint, the plaintiffs should call their amended complaint the "third amended complaint," even though it will be the first complaint filed in this case.