UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA GARCIA and LORE REDNOUR, individually and on behalf of other similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>JCPENNEY CORPORATION, INC.,<br><br>    Defendant. | Case No. 12-cv-3687<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiffs Laura Garcia ("Garcia") and Lore Rednour ("Rednour"), for themselves and on behalf of the class they seek to represent ("Plaintiffs"), bring this lawsuit against Defendant JCPenney Corporation, Inc. ("JCPenney"), alleging violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq*., and Illinois Department of Labor ("IDOL") regulations. Specifically, Plaintiffs, on behalf of a putative class consisting of former JCPenney part-time non-management associates ("PTNMA"), claim that they did not receive vacations benefits earned pursuant to JCPenney's "My Time Off" vacation policy (the "vacation policy" or the "MTO vacation policy"). Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23 is before the court. (Pls. Mot. Class Cert., ECF No. 173.) The present motion for class certification is the second such motion filed by Plaintiffs. This court denied Plaintiffs' original motion for class certification for two reasons: (1) Plaintiffs' motion for class certification was not based on an action pending in this district;[1] and (2) the proposed class

---

[1] Instead, Plaintiff's motion for class certification was based on a second amended complaint filed in the Southern District of California: *Tschudy v. JCPenney*, No. 11 C 1011. [Dkt. 45] The court in *Tschudy* carved off the Illinois portion of the case and transferred it to his district. [Dkt. 74].

definition suffered from a number of deficiencies. For the following reasons, Plaintiffs' second motion for class certification is granted.

## I. BACKGOUND

Plaintiffs have cured the first defect in its original motion for class certification by filing their Third Amended Complaint ("TAC") in this district alleging a violation of the IWPCA by JCPenney. (TAC, ECF No. 159.) The TAC contains a proposed class of "all former PTMNAs employed by JC Penney [sic] in Illinois and terminated between January 1, 2004 through the date of entry of an order certifying the instant action as a class action ('IWPCA Vacation Pay Class')." (TAC at ¶ 18, ECF No. 159.)

### A. JCPenney's MTO Vacation Policy

JCPenney's vacation policies are memorialized in its MTO vacation policy. (Pls. Class Cert. Memo. at 2, ECF No. 173-1.) The parties agree that all iterations of the MTO are substantively identical. (*Id.*, Def. Resp. at 2, ECF No. 174.) The MTO policy defines "My Time Off" as "a bank of hours that you **earn** each month." (Pls. Mot. for Class Cert. at 3, ECF No. 127) (emphasis in original.) The amount of vacation benefits accrued by a JCPenney associate depends on his/her position, length of service, and the average number of hours worked per week. According to Plaintiffs, each iteration of the MTO in effect during the proposed class period is a "look back" policy whereby the amount of vacation an associate is entitled to receive in a current year of employment is based on past performance, i.e. the number of hours he/she worked during the look back period. (Pls. Class Cert. Memo. at 3, ECF No. 173-1.) That is, the amount of MTO an associate receives is based on the number of hours he/she worked in the preceding year and his or her length of service. (*Id.*)

PTNMAs become eligible to receive MTO vacation benefits and receive their first deposit on the first day of the month following 12 months of employment if they averaged 25[2] or more hours per week during the first 48 weeks of employment. PTNMAs must qualify each year to receive MTO deposits. "Each July[3] [following the first 48 weeks of employment, JCPenney] will look back at the previous 52 weeks to determine [each PTNMAs] eligibility for MTO [vacation benefits] for the near year." (*Id.* at 4.) The amount of time of vacation earned each month is calculated by multiplying the employee's average weekly hours by the appropriate "MTO Weeks Factor," then diving by twelve. The "MTO Weeks Factor" is a constant value that is based on length of service:

| Months of Service | Part-Time Non-Management Associate "MTO Weeks Factor" |
| --- | --- |
| Less than 12 months | 2.6 |
| 12-35 months | 2.6 |
| 35-59 months | 2.8 |
| 60-179 | 3.4 |
| 180-299 months | 4.0 |
| 300+ months | 4.6 |

(Pls. Class Cert. Memo., at 5, ECF No. 173-1.) Assuming that employees are eligible to use vacation time, they can use earned MTO vacation hours at their discretion. (*Id.* at 4.)

**B. The Named Plaintiffs**

From November 17, 2005 to June 28, 2009, Garcia worked for JCPenney in Illinois as a part-time non-management associate. (Pl. Class Cert. Memo. at 5, ECF 173-1.) During the first

---

[2] Since January 31, 2015, the MTO Policy has required PTNMAs to have averaged at least 30 hours per week in the previous year to remain eligible for MTO benefits. (Def. Resp. at 5, fn. 8, ECF 174.)

[3] Beginning in 2007, JCPenney moved its annual calculation of whether an employee remained eligible to receive MTO deposits to July 1, from December 31. (Def. Resp. at 4, fn. 6, ECF 174.)

3

48 weeks of Garcia's employment, she averaged approximately 18.24 hours per week. (*Id.*) During her entire 188 weeks of employment she worked 3,796.7 hours and averaged 20.2 hours per week. (*Id.* at 6.) Garcia did not receive any vacation benefits under the MTO vacation policy.

From November 26, 2007 until October 3, 2010, Rednour worked for JCPenney in Illinois as a part-time non-management associate. (Pl. Class Cert. Memo. at 7, ECF 173-1.) Rednour averaged 29.47 hours per week during the first 48 weeks of her employment and received the MTO vacation days she accrued during that time period on a pro rata basis on the first day of each month during her second year of employment. (*Id.*) According to Rednour, she averaged more than 25 hours per week during the first 48 weeks of her second year of employment in 2009 as calculated by JCPenney. (*Id.*) Rednour did not receive the MTO benefits she accrued in 2009 that were due in November and December 2010 because her employment terminated on October 30, 2010. (*Id.*) Rednour also claims she did not receive any MTO benefits for the hours she worked during the period between January 1, 2010 and October 30, 2010. (*Id.*)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23 allows class certification when the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). The party seeking class certification must present proof that the requirements of Rule 23 are satisfied. "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Plaintiffs bear the burden of showing by a preponderance of the evidence that all of Rule 23's requirements are satisfied. *Comcast Corp. v. Behrend*, —U.S. —, 131 S.Ct. 2541, 2551 (2011). The requirements of Federal Rule of Civil Procedure 23(a) are as follows:

(1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)

If Plaintiffs meet this initial burden, they must then show that the proposed class satisfies one of the three requirements set forth in Rule 23(b). *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Because plaintiffs seek money damages, they must meet the requirements of Rule 23(b)(3). Therefore, Plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to all other available methods for fair and efficient adjudication of the controversy (superiority)." Fed. R. Civ. P. 23(b)(3); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 n.5 (7th Cir. 2012). In addition to Rule 23 requirements, plaintiffs must also provide a workable class definition by demonstrating that the members of the class are identifiable. *See Oshana*, 472 F.3d at 513.

The court "must make whatever factual and legal inquiries necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Although *Szabo* stands for the proposition that the court is not free to accept all of the complaint's allegations when deciding whether to certify a class, the decision whether to certify a class is not based on a preliminary assessment of the ultimate merits of Plaintiffs' claims. *Rahim v. Sheahan*, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001).

Rather, the preliminary inquiry is into the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b). *Id.* To base class certification on a prediction of who will win the case would be at odds with *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). *Id.* In the end, the court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011).

## III. ANALYSIS

The issue in this case is whether JCPenney's vacation policy, as applied to PTNMAs, violates the IWPCA. The IWPCA provides the following:

> Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.

820 ILCS § 115/5.

The corresponding Illinois Department of Labor regulations provide the following:

(a) Whenever an employment contract or an employment policy provides for paid vacation earned by length of service, vacation time is earned pro rata as the employee renders service to the employer.

(b) Oral promises, handbooks, memoranda, and uniform patterns of practice may create a duty to pay the monetary equivalent of earned vacation

. . . .

(e) An employment contract or an employer's policy may require an employee to take vacation by a certain date or lose the vacation, provided that the employee is given a reasonable opportunity to take the vacation. The employer must demonstrate that the employee had notice of the contract or policy provision.

6

>> (f) The Department recognizes policies under which:
>>
>>> (1) no vacation is earned during a limited period at the commencement of employment. The employer must demonstrate that the policy is not a subterfuge to avoid payment of vacation actually earned by length of service and, in fact, no vacation is implicitly earned or accrued during that period
>>>
>>> . . . .
>>>
>>> (3) the employer does not have separate arrangements for vacation and sick leave. Under the policy, employees earn a certain amount of "paid time off" that they can use for any purpose, including vacation and sick leave. Because employees have an absolute right to take this time off (unlike traditional sick leave in which using sick leave is contingent upon illness), the Department will treat "paid time off" as earned vacation days.

56 Ill. Admin. Code § 300.520(a), (b), (e), & (f)

The "primary objective of the [IWPCA] is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits." *Swavely v. Freeway Ford Truck Sales, Inc.*, 700 N.E.2d 181, 189 (Ill. App. Ct. 1998) (quoting *Mueller v. Dept. of Labor*, 543 N.E.2d 518, 521 (Ill. App. Ct. 1989)). Plaintiffs allege that the MTO policy is a "length of service" plan, which is a policy that rewards past service and is earned on a *pro rata* basis as the employee performs service for the employer. *Arrez v. Kelly Services, Inc.*, 522 F.Supp.2d 997, 1002 (N.D. Ill. 2007), *citing Golden Bear Family Restaurants, Inc. v. Murray*, 494 N.E.2d 581 (Ill. App. Ct. 1986); *Mueller Co. v. Department of Labor*, 543 N.E.2d 518 (Ill. App. Ct. 1989). Accordingly, "an employer violates [the IWPCA] when it either fails to pay its former employees for their earned but unused vacation time or adopts a policy which provides that an employee loses earned but unused vacation time upon separation." *Prettyman v. Commonwealth Edison Co.*, 653 N.E.2d 65, 68 (Ill. App. Ct. 1995).

Plaintiffs argue that the MTO is unlawful because it conditions the payment of vacation benefits on anniversary dates and average hours worked in specific weeks with an impermissible waiting period, which is contrary to cases interpreting the IWCPA. More specifically, Plaintiffs argue that the MTO requirement that PTNMAs be employed by JCPenney on the first day of the thirteenth month after they have satisfied the 25 hour per week requirement in order to receive their first vacation deposit is contrary to the ruling in *Golden Bear*. 494 N.E.2d at 589 ("If some share of vacation pay is earned daily, it would be both inconsistent and inequitable to hold that employment on an arbitrary date is a condition precedent to the vesting of the right to such pay.") Similarly, Plaintiffs also argue that the requirement of a 25 hour per week average is itself unlawful. *Rosales v. The Placers, Ltd., d/b/a Randstad*, 2011 WL 833359, at *3 (N.D. Ill. 2011) ("Because The Placer's policy is a length-of-service plan where employees earn vacation as they work, the 1,500-hour requirement in a 52-week period merely serves to strip them of their earned vacation. As such, it is impermissible…Thus, the plaintiffs earned pro rata vacation pay.")

## A. Rule 23(a) Class Certification Requirements

### i. Class Definition

Plaintiffs seek to represent the following class: All former PTMNAs employed by JCPenney in Illinois and terminated between January 1, 2004 through the date of the certification order. (Pl. Class Cert. Memo. at 7, ECF 173-1.) In denying class certification the first time, this court ruled that the class definition originally proposed by Plaintiffs constituted a "fail-safe" class. (Opinion at 9, ECF No. 158.) A "fail-safe" class is defined so that whether a person qualifies as a member depends on whether he or she has a valid claim, so that individuals with no claim are not bound by the judgment in the class action case. *Messner*, 669 F.3d at 825. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined

out of the class and is therefore not bound by the judgment. *Id.* Plaintiffs' current definition does not suffer from a "fail-safe" problem. Rather, JCPenney argues that the class definition is deficient because it includes PTNMAs who are subject to binding arbitration agreements and, therefore, must be excluded if the court certifies the class. This issue is addressed below.

In addition, Plaintiffs' class definition is ascertainable. *N.B. v. Hamos*, 26 F.Supp.3d 756, 763 (N.D. Ill. 2014) ("[A]scertainability is really a threshold issue—if the class cannot be identified, then courts cannot reliably assess whether an action on behalf of that class satisfies the express requirements of Rule 23.") Ascertainability entails two important elements: (1) the class must be defined with reference to objective criteria; and (2) there must be a reliable and administratively feasibly mechanism for determining whether putative class members fall within the class definition. *Id.* Here, Plaintiffs have satisfied both elements. There are three objective characteristics that define the class: (1) employed as a PTNMA; (2) the PTNMA's employment was terminated; and (3) the termination occurred between January 1, 2004 through the date of this order. Additionally, JCPenney's employment records and computer software database should include information to identify the class members.

**ii. Numerosity**

To meet the numerosity requirement, Plaintiffs must show that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). Although there is no bright-line rule for exactly how many members are enough to establish a class, "[g]enerally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied." *Oplchenski v. Parfums Givenchy, Inc.*,

254 F.R.D. 489, 495 (N.D. Ill. 2008); *see also Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006) ("Sometimes 'even' 40 plaintiffs would be unmanageable."); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (holding that a proposed class of 40 was "a sufficiently large group to satisfy Rule 23(a)").

On March 17, 2014, JCPenney produced data that establishes that there are approximately 33,699 terminated PTNMAs; JCPenney does not dispute this figure. (Pl. Class Cert. Memo. at 12, ECF 173-1.) Numerosity is satisfied.

### iii. Commonality and Typicality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury," which in this case is forfeiture of vacation time. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011). Commonality requires that all of the class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Additionally, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Typicality is closely related to commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Plaintiffs argue that the commonality requirement is satisfied as the claims of the class are based on JCPenney's allegedly unlawful MTO vacation policy. Plaintiffs' entire claim rests on the argument that the MTO policy, as it is applied to PTNMAs, is unlawful. Because every PTNMA is subject to the MTO policy, each class member is harmed by the allegedly unlawful

10

MTO policy. Moreover, there are two components of the MTO vacation policy, specifically, that are unlawful according to Plaintiffs: (1) the minimum average weekly hours that must be worked in order to be eligible for vacation benefits is improper; and (2) the period of time that must elapse before the vacation benefits vest is also improper (employment on the first day of the first month following the 52-week "look back" period). Garcia and Rednour represent each of these claims, respectively.

However, JCPenney argues that the claims of the named representatives are not typical of the claims of certain members of the class. More specifically, JCPenney argues that the claims of Garcia and Rednour are not typical of a certain subset of the proposed class—those PTNMAs who initially qualified for MTO benefits but subsequently lost eligibility (for example, by failing to work the necessary average number of weekly hours in their second or subsequent years of employment). (Def. Resp. at 15, ECF No. 174.) Because neither Plaintiff was affected by the MTO's annual re-qualification requirement, JCPenney argues they have no standing to challenge it and lack commonality and typicality with any putative class members who lost eligibility for MTO benefits in subsequent years.

Typicality can exist "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "Typicality requires 'enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group.'" *Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Division St., Inc.*, No. 11 C 6753, 2015 WL 638522, at *3 (N.D. Ill. Feb. 13, 2015) (quoting *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011)). JCPenney's argument that Plaintiffs have no standing to challenge the MTO's annual re-qualification requirement is

incorrect. The argument ignores the fact that if an employee did not satisfy the annual requalification requirement, then, by default, he was affected by the minimum weekly hours requirement, which is part of the case being made by Plaintiffs.

### iv. Adequacy

Plaintiffs must show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are typically two components to the adequacy analysis: (1) the adequacy of the named plaintiff's counsel; and (2) the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members. *Retired Chicago Police Ass'n*, 7 F.3d at 598; *see also Spano*, 633 F.3d at 586-87. In order to be an "adequate representative," the named plaintiff must not have "antagonistic or conflicting claims." *Retired Chicago Police Ass'n*, 7 F.3d at 598. The typicality and adequacy inquiries are linked: "typicality insures the class representative's claims resemble the class' claims to an extent that an adequate representation can be expected." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 429 (N.D. Ill. 2003) (internal citation omitted). Here, the claims of the named plaintiffs are the same as those of the proposed class members— that Plaintiffs' earned vacation time was forfeited by JCPenney's unlawful MTO policy. In addition, there are no individual defenses or other claims that would impede the named plaintiffs' ability to adequately represent the interest of the class members.

It should be noted here that JCPenney devotes a substantial portion of its response in opposition to class certification arguing that a full written version of the MTO policy was readily available to all PTNMAs. JCPenney's argument is in response to assertions made by Plaintiffs that PTNMAs did not receive full copies of the MTO policy and instead received only summaries of it or references to it in other materials that were provided to newly hired PTNMAs.

JCPenney argues that Plaintiffs' assertion that not all PTNMAs received fully copies of the MTO policy defeats certification as the case would turn on each PTNMA's individual knowledge of the policy. However, as JCPenney notes in its response brief, "[a]s a legal matter, whether an associate chose to access the full statement of the MTO Policy online is irrelevant, as the controlling effect of the policy does not depend upon whether any particular associate took the time to review it as long as it was published and available." (Def. Resp. at 11, ECF 174, citing *Hurst v. Dep't of Emp't Sec.*, 913 N.E.2d 1067, 1072 (Ill. App. Ct. 2009)) (emphasis added). Therefore, the MTO policy applied to all PTNMAs, regardless of whether or not they reviewed it.

Finally, there is no reason to doubt that Plaintiffs' counsel will adequately represent the interests of the class members.

v. **Arbitration Agreement**

According to JCPenney, all PTNMAs hired after July 17, 2009 were required to execute individual arbitration agreements (the "Arbitration Agreement"). (Def. Resp. at 16, ECF 174.) The Arbitration Agreement, under the heading titled "Binding Mandatory Arbitration Agreement," states the following:

> [JCPenney] and I voluntarily agree to resolve disputes arising from, related to, or asserted after the termination of my employment through mandatory binding arbitration under the JCPenney Rules of Employment Arbitration. [JCPenney] and I voluntarily waive the right to resolve these disputes in courts.

(Def. Resp. at 17, ECF 174, Ex. E at JCP Garcia 002438.) Moreover, JCPenney contends that the Arbitration Agreement expressly waives the right to participate in class actions. (*Id.*) ("[T]he Rules prohibit multi-party litigation such as class actions.") Based on these provisions, JCPenney asserts that PTNMAs who signed documents containing these provisions must

13

challenge the MTO vacation policy in individual arbitration actions.  In response, Plaintiffs argue that the arbitration issue is speculative, premature and does not defeat class certification.

As noted by the court in *In re Evanston Northwestern Corp. Antitrust Litigation*, 2013 WL 6490152 (N.D. Ill. Dec. 10, 2013), there is no clear rule that requires motions to compel arbitration invariably to be decided after motions for class certification.  Although JCPenney has not filed its motion to compel arbitration,[4] it effectively seeks to bar the alleged signatories to the Arbitration Agreement from joining the instant class.  However, the sensible course in this case is to decide whether to certify the class without considering the possibility of arbitration and then allow JCPenney, if it so chooses, to file its motion to compel arbitration.  *Id.* at *5 (citing *Whittington v. Taco Bell of Am., Inc.*, 2011 WL 1772401, at *5 (D.Colo. May 10, 2011) ("The court finds no procedure or authority under 9 U.S.C. § 4 to compel putative class members, who are not currently before the court and, because a class has not yet been certified, have not even received notice of the litigation, to arbitrate their potential claims against Defendants."); *McLeod v. Ford Motor Co.*, at *3 (C.D.Cal.  Apr. 14, 2005) ("Defendants' argument for a stay of these claims on the basis of putative class members' arbitration agreements is premature. Indeed, if a class is eventually certified on these claims, it possibly may not include any members who reached arbitration agreements with Defendants.").  If it turns out that the PTNMAs hired after July 17, 2009 must arbitrate, the court can always decertify, subclassify, or otherwise alter the class later. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d

---

[4] It is important to note that by not having filed its motion to compel at this stage, JCPenney has not waived its right to enforce its arbitration agreement.  In fact, JCPenney could not have filed its motion to compel arbitration directed at putative class members as they are not parties to the lawsuit. *In re Evanston Northwestern Corp.*, 2013 WL 6490152, at *4 (citing *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (Scalia, J., dissenting) ("Not even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation before the class is certified.")

890, 896 (7th Cir. 1981); *Messner*, 669 F.3d at 826. Therefore, the arbitration agreement is not grounds for denying class certification.

**B. Rule 23(b) Class Certification Requirements**

In addition to meeting the four Rule 23(a) factors above, plaintiffs must also demonstrate that their proposed class meets the requirements of Rule 23(b)(3), which requires Plaintiffs to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In applying these standards, courts focus on "the substantive elements of plaintiffs' cause of action and inquire into the proof necessary for the various elements." *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981). The Supreme Court has held that "the predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). The court thus must compare the role of common issues of law and fact with the role of individual issues. *Messner*, 669 F.3d at 814. Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Id.*, *quoting* 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011). More simply, common questions can predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir.2006), *quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir.2000). However, individual questions need not be absent. *Messner*, 699 F.3d at 814. The rule requires only that those questions not predominate over the common questions affecting the class as a whole. *Id.*

15

Plaintiffs argue that Rule 23(b)(3)'s predominance requirement is satisfied because the legality of the MTO vacation policy is the entire case. JCPenney has not specifically addressed this issue. Instead, JCPenney's argument against predominance is premised on the notion that different understandings of the MTO vacation policy by the putative class members defeat predominance. However, as explained above, the parties do not dispute that the MTO policy was applied universally to all PTNMAs, and that the policy did not change in any substantive way during the class period. Therefore, a particular PTNMA's understanding of the MTO policy is inconsequential—he or she was bound to it either way. Rather, the question that must be resolved is whether the average hourly requirement and mandatory vesting period were lawful. *Chander v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 ("Both TILA and the Consumer Fraud Act claims lend themselves readily to the finding that a common issue predominates over individual issues, as the principal question presented is whether the disclosure provisions of Southwest's standard retail installment contract provided to Chandler and all the proposed class members violated TILA and/or the Consumer Fraud Act.") Whether the MTO vacation policy violates the IWPCA predominates over any questions affecting only individual members. Further, the Seventh Circuit has long held that individualized damages do not defeat the predominance prong of Rule 23(b)(3). *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

To satisfy Rule 23(b)(3), Plaintiffs must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). JCPenney's main argument against superiority is that the Arbitration Agreement provides a superior method for adjudication. As noted, the court declines to rule on the

16

Arbitration Agreement at this time, but JCPenney may raise the issue again after the class is certified. The superiority requirement is satisfied.

**C. Supplemental Authority**

On December 16, 2015, JCPenney filed a notice of supplemental authority ("notice") with the court. (Supp. Auth., ECF No. 181.) Attached to the notice was a decision by the Southern District of California to decertify the class in *Tschudy v. J.C. Penney Corporation, Inc.*, No. 11 C 1011, 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015). Although not made clear by JCPenney in its notice, the court assumes that JCPenney provided the decision to bolster its argument against class certification. However, the ruling in *Tschudy* does not affect this court's decision. First, *Tschudy* recognized that typicality and adequacy under Rule 23(a)(3) and (4) were not satisfied by including both PTNMAs and Management Associates ("MA") in the class definition. *Id.* at *3. This court came to the same conclusion in its March 31, 2015 ruling. (Opinion at 17, ECF No. 158.) The court in *Tschudy* also found that current employees of JCPenney could not be class members, *Tschudy*, 2015 WL 8484530 at *3, consistent with the ruling of this court. (Opinion at 11, ECF No. 158.) Finally, *Tschudy* ruled that putative class members who signed arbitration agreements upon being hired cannot be included in the class. *Tschudy*, 2015 WL 8484530 at *3-4. At this point, no motion to compel arbitration has been filed.

Plaintiffs have demonstrated that their proposed class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3). Their motion to certify a class for IWPCA claims is granted.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is granted. Plaintiffs' IWPCA claims are certified as a class action. The parties are ordered to meet and confer regarding the names, dates of employment, and other pertinent information for all persons in the class defined by plaintiffs. The parties are also ordered to meet and confer regarding a mutually agreeable notice that is to be submitted to the court on or before April 5, 2016. The matter is set for status on April 6, 2016 at 9:30 a.m.


Date:   March 8, 2016                                         /s/

Joan B. Gottschall
United States District Judge