# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GARCIA, et al., | ) | |
| | ) | Case No. 12-CV-03687 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge: Hon. Joan B. Gottschall |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF THE PROPOSED CLASS NOTICE

James C. Kostas
Huffman & Kostas
1441 State Street
San Diego, CA 92101-3421
(619) 544-0880

Sheldon A. Ostroff
Law Offices of Sheldon A. Ostroff
1441 State Street
San Diego, CA 92101-3421
(619) 544-0892

Douglas M. Werman
Werman Salas P.C.
77 W. Washington St., Suite 1402
Chicago, IL 60602
(312) 419-1008

Attorneys for Plaintiffs

## TABLE OF CONTENTS

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II. DESCRIPTION OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  PROCEDURAL AND LITIGATION HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . .  4

IV.  CLAIMS VALUATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

V.  SUMMARY OF THE PROPOSED SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . .  7

    A.  The Settlement Class and Class Period. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    B.  Settlement Amount. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    C.  Amount Available for Distribution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    D.  Plan of Allocation and Distribution of Settlement Payments. . . . . . . . . . . . . . .  7

    E.  *Di Minimis* Payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    F.  No Reversion to JCPenney. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    G.  Dismissal and Releases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    H.  Service Awards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    I.  Attorneys' Fees and Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    J.  Settlement Administrator and Its Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

    K.  Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

    L.  Entire Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

VI.  CLASS ACTION SETTLEMENT PROCEDURE. . . . . . . . . . . . . . . . . . . . . . . . . .  10

VII.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE. . . . . . . . . .  11

    A.  The Settlement Is Fair, Reasonable, and Adequate and Well Within the Range of a Reasonable Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

        1.  The Maximum Settlement Fund Is An Excellent Result . . . . . . . . . . . .  14

        2.  Litigation Through Trial Would Be Complex, Costly and Lengthy. . . .  16

i

3.     The Reaction of the Settlement Class Members. . . . . . . . . . . . . . . . . . . 16

4.     Class Counsels' Opinion Is That This Settlement Is Fair, Reasonable and Adequate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5.     Stage of the Proceedings and the Amount of Discovery Completed. . . . .17

VIII.  CERTIFICATION OF THE RULE 23 CLASS FOR PURPOSES OF SETTLEMENT IS APPROPRIATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . 18

IX.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL......19

X.     THE NOTICE PLAN AND SETTLEMENT PAYMENT DISTRIBUTION PROCESS ARE APPROPRIATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . 19

XI.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..... 20

<u>TABLE OF AUTHORITIES</u>

CASES

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................... 12, 13

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 No. 07 Civ. 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................ ......................12

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
 616 F.2d 305 (7th Cir. 1980) ........................................................................... 11,12,14,17

*Cook v. Niedert*,
 142 F.3d 1004 (7th Cir. 1998) ..................................................................................... 9

*Du Puy v. Director, Office of Workers' Compensation Programs*,
 519 F.2d 536 (7th Cir. 1975), cert. denied, 424 U.S. 965, 96 S.Ct. 1459,
 47 L.Ed.2d 732 (1976) ................................................................................. 12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
 768 F.2d 884 (7th Cir. 1985) ................................................................................. 13, 14

*Eubank v. Pella Corp.*,
 753 F.3d 718 (7th Cir. 2014) ................................................................................. 13

*Felzen v. Andreas*,
 134 F.3d 873 (7th Cir. 1998) ................................................................................. 12

*Gautreaux v. Pierce*,
 690 F.2d 616 (7th Cir. 1982) ................................................................................. 17

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................. 12, 16

*In re Domestic Air Tranp. Antitrust Litig.*,
 148 F.R.D. 297 (N.D.Ga.1993)................................................................................. 15

*In re Gen. Motors Corp. Engine Interchange Litig.*,
 594 F.2d 1106 (7th Cir. 1979) ................................................................................. 14

*In re Mexico Money Transfer Litigation*,
 164 F. Supp. 2d at 1002 (N.D. Ill. 2000) ............................................................. 16, 17

*In re Newbridge Networks Sec. Litig.*,
 1998 WL 765724 (D.D.C. Oct. 23, 1998) ................................................................ 15

*In re Ravisent Techs., Inc. Sec. Litig.*,
 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................................................. 15

*In re Traffic Exec. Ass'n-E. R.R.*,
  627 F.2d 631 (2d Cir. 1980) ..................................................................... 11, 13

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ...................................... 12, 13, 14, 16, 17, 18

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
  Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007)............... 12

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988) ...................................................................... 17

*Lazy Oil Co. v. Witco*,
  95 F.Supp.2d 290 (W.D. Pa.1997)...................................................................... 15

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*,
  834 F.2d 677 (7th Cir. 1987) ...................................................................... 15

*McDonald v. Chicago Milwaukee Corp.*,
  565 F.2d 416 (7th Cir. 1977) ...................................................................... 14

*Mirfasihi v. Fleet Mortgage Corp.*,
  356 F.3d 781 (7th Cir. 2004) ...................................................................... 13

*Patterson v. Stovall*,
  528 F.2d 108 (7th Cir. 1976) ...................................................................... 12, 14

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*,
  323 F. Supp. 364 (E.D. Pa. 1970) ...................................................................... 11

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ...................................................................... 17

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002)...................................................................... 16

*Seiden v. Nicholson*,
  72 F.R.D. 201 (N.D. Ill. 1976) ...................................................................... 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ...................................................................... 13

*Taifa v. Bayh*,
  846 F. Supp. 723 (N.D. Ind. 1994)...................................................................... 18

*U.S. v. McInnes*,
  556 F.2d 436 (9th Cir. 1977) ...................................................................... 12

*Weinberger v. Kendrick*,
   698 F.2d 61 (2nd Cir. 1982) ................................................................. 17

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12-3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................ 18

## STATUTES AND RULES

Illinois Wage Payment and Collection Act, 820 ILCS 105/1, *et seq.* ................................. 1, 3, 15

Federal Rule of Civil Procedure 23 ................................................................. *passim*

Federal Rule of Civil Procedure 23(b)(3) ................................................................. 1

Federal Rule of Civil Procedure 23(c)(2)(B) ........................................................ 19, 20

Federal Rule of Civil Procedure 23(c)(3) ................................................................. 19

Federal Rule of Civil Procedure 23(e) ................................................................. 11, 18

Federal Rule of Civil Procedure 23(g) ................................................................. 19

Federal Rule of Civil Procedure 23(g)(1)(A) ........................................................ 19

Federal Rule of Civil Procedure 23(g)(1)(B) ........................................................ 19

Federal Rule of Civil Procedure 23(h) ................................................................. 9

Federal Rule of Civil Procedure 54(d)(2) ................................................................. 9

## MISCELLANEOUS AUTHORITIES

William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions, Sections 13:10, 13:13 and 13:14* (5th ed. 2014) ........................................... 11-13

Manual For Complex Litigation (3d ed.) § 1.46 ........................................... 13

Manual For Complex Litigation (4th ed.) § 21.62 and 21.63 ........................................... 11

# I. INTRODUCTION

Plaintiffs Laura Progo, formerly Laura Garcia, "Progo", "Named Plaintiff" or "Class Representative"), Lore Rednour ("Rednour", "Named Plaintiff" or "Class Representative") (collectively "Named Plaintiffs"), individually and on behalf of the Settlement Class Members[1] that they seek to represent, and Defendant J.C. Penney Corporation, Inc., a Delaware corporation ("JCPenney" or "Defendant"), have resolved Named Plaintiffs' claims for Defendant's alleged violations of the Illinois Wage Payment and Collection Act, 820 ILCS 105/1, *et seq.* ("IWPCA") for an all in direct pay (i.e. non-claims made) settlement of Five Million Dollars ($5,000,000.00), the Maximum Settlement Fund.

The proposed settlement satisfies the criteria for preliminary approval under federal law. Accordingly, Named Plaintiffs request that the Court: 1) grant preliminary approval of the settlement ("Settlement Agreement" or "Agreement") attached to the declaration of James C. Kostas ("Kostas Decl.")[2] as Exhibit "B" as fair, reasonable and adequate with an order in the form attached to the Agreement as Exhibit "1"; 2) conditionally certify the proposed class under Fed. R. Civ. Proc. 23(b)(3) for settlement purposes; 3) appoint James C. Kostas of Huffman and Kostas, Sheldon A. Ostroff of the Law Offices of Sheldon A. Ostroff, and Douglas Werman of Werman Salas, P.C. as Class Counsel: 4) authorize Named Plaintiffs to provide notice to the Settlement Class Members in the form attached to the Agreement as Exhibit "2"; and 5) schedule a final approval or fairness hearing at which time the following will be considered: (i) final approval of the proposed settlement; (ii) entry of the Final Judgment and Order of Dismissal; and (iii) Named

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and have the same meaning herein.

[2] The declarations of James C. Kostas, Sheldon A. Ostroff, Douglas M. Werman and James R. Lackritz, Ph.D., are attached hereto as Exhibits "1", "2", "3", and "4", respectively.

Plaintiffs' application for attorneys' fees and costs, payment of the costs of administration, and Named Plaintiffs' service awards.

## II. DESCRIPTION OF THE CASE

Named Plaintiffs, for themselves, and on behalf of the class of former part-time non-management associates ("PTNMA") they seek to represent, alleged that the terms of JCPenney's "My Time Off" vacation policy ("Vacation Policy") violates 820 ILCS 115/5 and 56 Ill. Admin. Code §300.520(a), (e), (f)(1) and (f)(3). Named Plaintiffs contend JCPenney's Vacation Policy is a length of service look back policy that contains unlawful vesting conditions.

The Vacation Policy for PTNMAs in effect since 2004 provides, in pertinent part:

Part-Time Non-Management - You become eligible and receive your first deposit on the first day of the month following 12 months of employment if you average 25[3] or more hours during the first 48 weeks of employment. You must qualify each year for MTO deposits.

* * *

MTO is calculated based on your average week, job classification and service months as of December 31[4]. You must be employed on the first day of each month to receive an MTO deposit. Kostas Decl., ¶12.

Vacation policy documents given to new PTMNAs since 2004 also provide:

Part-Time Associate ─ you become eligible and receive your first deposit on the first day of the month following 12 months of employment if you average 25 hours or more hours during the first 48 weeks of employment. Each July after that, JCPenney will look back at the previous 52 weeks to determine your eligibility for MTO for the next year. *Id*.

Every iteration of the "Your New Hire Guide To Benefits" stated in the first sentence under the enlarged headings "Time Away From Work", "My Time Off (MTO)" that:

---

[3] Commencing January 31, 2015, PTNMAs are required to average at least 30 hours each week in the previous year to receive any vacation pay deposits.

[4] Beginning in 2007, the annual calculation of vacation pay was changed to July 1 from December 31.

MTO is a bank of paid time off hours that you earn each month. You may request to use MTO when you want to be off work on a regularly scheduled work day. *Id.*

The New Hire Guide to Benefits also advised PTNMAs in the section "Your Benefits At-A-Glance" that MTO is available "immediately". However, PTNMAs must be employed on the first day of the thirteenth month to receive the first vacation pay deposit and remain employed on the first day of each month thereafter to continue receiving such deposits. If a PTNMA is not employed on the first day of any month, they are not paid any additional vacation pay. *Id.*

Named Plaintiffs alleged that the Vacation Policy is a length of service look back policy that contains impermissible vesting conditions. Specifically, Named Plaintiffs contend that a vacation policy that requires PTNMAs, as a condition of receiving vacation pay, to:

- be employed for more than 12 continuous months;
- average 25 (changed to 30 January 1, 2015) or more hours during the 48 weeks of employment in the first year of employment;
- average 25 (changed to 30 January 1, 2015) or more hours during the 52 week (added in 2004) look back period every year after the first year of employment;
- be employed when vacation pay is calculated on December 31 (changed to July 1 in 2007) of each year or on some other anniversary date;
- be employed on a continuing "anniversary" date ─ the first day of each month in the year after the look back period ─ to continue to receive monthly vacation deposits;
- satisfy these conditions after year; and
- forfeit vacation in the year of termination even though vacation is calculated based on the time worked in the prior year ─ the look back period;

is unlawful under Illinois law. *Id.* at ¶11 and ¶12.

JCPenney generally denied each of the claims and every contention alleged by Named Plaintiffs in this case. JCPenney has repeatedly asserted, and continues to assert, defenses to Plaintiffs' claims, including the prosecution of this case on a class-wide basis, and has expressly denied, and continues to deny, any violation of the IWPCA, or any wrongdoing or legal liability arising out of its Vacation Policy, or any other conduct alleged by Named Plaintiffs.

JCPenney specifically disputes Named Plaintiffs' interpretation of the Vacation Policy, including their characterization of it as a look back length of service policy. JCPenney has maintained throughout this case that its Vacation Policy is an advance payment policy, not a length of service look back policy. JCPenney maintains that the plain language of its Vacation Policy, and its administration of its policy, establishes that the delay in the commencement of accrual of vacation is reasonable; time worked in the prior period is nothing more than a reference point to estimate the payment advanced in the current period, and that its policy is not a subterfuge, but rather a reasonable incentive to retain employees.

Finally, JCPenney also disputes Named Plaintiffs' calculation of damages, that the Named Plaintiffs or the Settlement Class Members suffered damages, or that they were actually harmed or injured by the Vacation Policy or JCPenney's alleged conduct. Kostas Decl., ¶26.

### III. PROCEDURAL AND LITIGATION HISTORY

On April 5, 2011, the Named Plaintiffs along with several other plaintiffs who resided in California, filed a putative class action in the Superior Court of California for the County of San Diego entitled *Tschudy v. J.C. Penney Corporation, Inc.* JCPenney removed the case to the United States District Court for the Southern District of California pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). On April 27, 2012, the Southern District of California entered an order transferring the claims of the Named Plaintiffs to this Court. Kostas, Decl., ¶14.

After completing their preliminary investigation, extensive formal and informal discovery, creating a damage model for more than 35,000 employees based on JCPenney's employment records with the assistance of James R. Lackritz, Ph.D.[5], and conducting many pre-settlement

---

[5] James R. Lackritz, Ph.D., was retained to assist Class Counsel to value the Settlement Class Members' total vacation pay claims, to calculate the amount of vacation pay owed to each

discussions, the Parties participated in a mediation on April 9, 2014, before the Honorable Edward A. Infante, Magistrate Judge (Ret.). The Parties did not reach a settlement at this mediation. Kostas, Decl., ¶18.

After completing additional discovery, conducting further investigations, updating the value of the asserted claims, and taking additional depositions, the Named Plaintiffs filed a motion for class certification on August 14, 2014. On March 31, 2015, this Court denied the Named Plaintiffs' motion for class certification without prejudice. Kostas, Decl., ¶15.

On April 14, 2015, the Named Plaintiffs filed a Third Amended Complaint amending the proposed class definition. On May 5, 2015, JCPenney filed an answer. The Third Amended Complaint is the operative complaint. *ECF*, Nos. 159 and 160.

On July 2, 2015, the Named Plaintiffs filed a second motion for class certification. On March 8, 2016, this Court granted the Named Plaintiffs' July 2, 2015 motion for class certification. The Court certified a class consisting of: "all former [Part-Time Non-Management Associates] employed by JCPenney in Illinois and terminated between January 1, 2004 and [March 8, 2016]." Kostas, Decl., ¶17; *ECF*, No. 184.

After conducting further investigations, and again updating the value of the asserted claims, the Parties participated in a second mediation on July 29, 2016 before David Rotman, Esq., a prominent labor lawyer and mediator. The Parties did not reach a settlement at the second mediation. Several days later, however, Mr. Rotman tendered a mediator's proposal. The mediator's proposal was accepted by both Parties on September 1, 2016. Kostas, Decl., ¶19.

The Parties proceeded to diligently work to finalize the terms of the Settlement Agreement.

---

Settlement Class Member based on Named Plaintiffs' theory of the case, and to calculate estimated Settlement Payments.

After seven (7) months of negotiations and many iterations, the Settlement Agreement was signed the first week of March 2017. Kostas, Decl., ¶20.

In sum, after almost six (6) years of litigation, Named Plaintiffs obtained an all in direct pay settlement that requires JCPenney to pay Five Million Dollars ($5,000,000.00) to resolve the claims they have valued at Six Million Four Hundred Thirty-Four Thousand Seventy-Five Dollars ($6,434,075.00). Kostas, Decl., ¶21. The significant terms of the settlement are summarized in Section V below, and as explained Section VII. A. below, this is an excellent recovery for the Settlement Class Members. Kostas, Decl., ¶22.

## IV. CLAIMS VALUATION

The claims were valued based on the Data supplied by JCPenney for each PTNMA terminated during the Class Period. Exhibit "B", §2.6. Plaintiffs calculated the value of vacation pay owed to each Settlement Class Member based on each Class Member's hire date, termination date, time worked, rate of pay, and vacation days taken or paid pursuant to the terms of JCPenney's vacation policy in effect during the Class Period. Lackritz Decl., ¶¶ 3-6. The list of Settlement Class Members, and the vacation pay owed to each Settlement Class Member, is set-forth in an excel spreadsheet that will be provided to the Settlement Administrator. Exhibit "B", §§4.2.1 and 6.1. Lackritz Decl., ¶3. Based on the Data and the calculations performed by Dr. Lackritz, 38,465 Settlement Class Members were not paid a total of Six Million Four Hundred Thirty-Four Thousand Seventy-Five Dollars ($6,434,075.00) in vacation pay at termination. Lackritz Decl., ¶7 and ¶8. After adjusting the individual claim calculation to reflect the Ten Dollar ($10.00) *de minimis* payment discussed in Section V.E. below, the total is increased to Six Million Five Hundred Fifty-Three Thousand Eighty-Four Dollars ($6,553,084.00). Lackritz Decl., ¶9.

6

## V.  SUMMARY OF THE PROPOSED SETTLEMENT

The material terms of the Agreement are summarized here for the convenience of the Court.

### A.    The Settlement Class and Class Period

The settlement class includes all former PTNMAs identified in the Data as employed in Illinois by JCPenney in that capacity between January 1, 2004 and October 20, 2016, and whose employment terminated during that period.  Exhibit "B", §2.37 and §2.38.

### B.    Settlement Amount

The Maximum Settlement Fund is Five Million Dollars ($5,000,000.00). The Maximum Settlement Fund is the maximum amount JCPenney is required to pay pursuant to the terms of the Agreement and includes:  1) all payments to Participating Settlement Class Members; 2)  Class Counsels' attorneys' fees and costs; 3) all Service Awards; 4) withholdings for governmental authorities for the employee portion of any payroll taxes; and 5) Settlement Administration Costs. Exhibit "B", §2.14 and §3.

### C.    Amount Available for Distribution

The amount remaining after subtracting Class Counsels' attorneys' fees and costs, Service Awards, and Settlement Administration Costs is the Net Settlement Fund.  The Net Settlement Fund approximates Three Million Eighty Thousand Thirty-Two Dollars ($3,080,032.00).  Exhibit "B", §2.17. This is the approximate amount available for distribution to Settlement Class Members as and for their Settlement Payment.  Exhibit "B", §2.40.

### D.    Plan of Allocation and Distribution of Settlement Payments

Participating Class Members are not required to submit a claim or take any other action to be paid their Settlement Payment.  Exhibit "B", §§2.40 and 7.4.1.  All Settlement Class Members are, except for the amount of the individual Settlement Payment, treated identically.

The gross amount of each Class Member's Settlement Payment is calculated based on the Data. The amount of each Settlement Payment is calculated as a percentage of his or her total alleged vacation pay claim using a fraction in which the sum of the value of all alleged unpaid vacation days for all Settlement Class Members is the denominator, and the numerator is the Net Settlement Fund as more specifically explained in Dr. Lackritz' declaration. Lackritz Decl., ¶10. For example, if, as here, the numerator is Three Million Eighty Thousand Thirty-Two Dollars ($3,080,032.00) and the denominator is Six Million Five Hundred Fifty-Three Thousand Eighty-Four Dollars ($6,553,084.00), the percentage recovery, after deducting all fees, costs and expenses, and performing a series of calculations, is approximately 47%. *Id.* This percentage is multiplied by the amount of the vacation pay allegedly owed to each Participating Settlement Class Member to determine the gross value of his or her individual Settlement Payment. *Id.* If any Settlement payment is less than Ten Dollars ($10.00), it is increased to that amount, and the remaining Settlement Payments are adjusted to ensure the sum does not exceed the Net Settlement Fund. Exhibit "B", §4. Lackritz Decl., ¶9 and ¶10.

### E. *Di Minimis* Payment

Any Settlement Class Member whose Settlement Payment is calculated to be Ten Dollars ($10.00) or less will be paid the Minimum Settlement Class Award, Ten Dollars ($10.00). Exhibit "B", §2.15 and §4.2.2.

### F. No Reversion to JCPenney

JCPenney will not retain any part of the Maximum Settlement Fund. Settlement Payments that are not cashed will go by *cy pres* to the Legal Assistance Foundation, (http://www.lafchicago.org/), a non-profit organization that has a principal purpose of promoting

or providing services that would be eligible for funding under the Illinois Equal Justice Act, 30 Ill. Comp. Stat. 765/1 *et seq*. Exhibit "B", §7.4.5.

### G. Dismissal and Releases

As of Final Approval the Named Plaintiffs shall provide Released Parties a general release as well as a release from the Released Claims. Participating Class Members who do not exclude themselves shall only release the Released Claims. Exhibit "B", §2.24, §2.25, §8.2 and §8.3. Upon granting final approval of the settlement, the Court shall dismiss the complaint with prejudice, retaining jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Agreement consistent with its terms. Exhibit "B", §10.11 and "B-3".

### H. Service Awards

The Named Plaintiffs, Progo and Rednour, subject to court approval, will be paid a Service Award not to exceed Five Thousand Dollars ($5,000.00) each. Exhibit "B", §2.16, §2.30 and §3.5. This payment is in recognition of their contribution to the successful outcome of the case. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998).

### I. Attorneys' Fees and Costs

Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), along with their motion for final approval of the Settlement Agreement, Class Counsel will also request approval of the attorneys' fees and costs as allowed by the Settlement Agreement. The proposed award of attorney's fees and cost are disclosed in the Class Notice, Exhibit "2" to the Settlement Agreement.

Although not before the Court at this time, Class Counsel will apply in their motion for final approval for an award of attorney's fees and costs necessary to prosecute, settle and

9

administer the Litigation and this Settlement in the amount of thirty-five (35%) of the Maximum Settlement Fund, plus an amount not to exceed Seventy-Five Thousand Dollars ($75,000.00) in costs. Exhibit "B", §§3.2 and 3.3; Kostas Decl., ¶22. Class Counsels' attorneys' fees and costs award shall include all additional time, costs and expenses necessary to conclude this litigation, including, without limitation: (i) obtaining Preliminary Approval; (ii) responding to inquiries from Settlement Class Members regarding the Settlement; (iii) assisting Settlement Class Members as needed; (iv) assisting in resolving any objections; and (v) defending the Settlement and securing the Final Order, including any appeals. Exhibit "B", §3.2.

### J. Settlement Administrator and Its Costs

American Legal Claim Services, LLC, is the third party selected jointly by the Parties to administer the terms of this Settlement. The costs of administering the Settlement shall be paid from the Maximum Settlement Fund. American Legal Claim Services, LLC, has agreed to cap its fee at Eighty-Four Thousand Nine Hundred Sixty-Eight Dollars ($84,968.00). Exhibit "B", §2.33 and §3.4.

### K. Injunctive Relief

JCPenney contends that its vacation policy was lawful at all times during the Class Period. JCPenney has not agreed to any injunctive relief as part of this settlement. Exhibit "B", §10.22.

### L. Entire Agreement

There are no side or separate agreements between the Parties, Class Counsel and or JCPenney's attorneys. Kostas Decl., ¶8. The Settlement Agreement is the entire agreement between the Parties for the resolution of the Released Claims. Exhibit "B", §10.17.

### VI. CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all class members; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* William B. Rubenstein, Alba Conte & Herbert B. Newberg,

*Newberg on Class Actions* ("*Newberg*"), § 13.10 *et seq.* (5th ed. 2014).

This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. With this motion, Named Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement and issue an order in the form attached to the Settlement Agreement as Exhibit "1" ("Preliminary Approval Order").

## VII. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The question presented on a motion for preliminary approval of a class action settlement is whether the proposed settlement is "within the range of possible approval." *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980); *Manual for Complex Litigation,* (4th ed.), §21.62 and §21.63. Preliminary approval is the prerequisite to giving notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970); *Armstrong v. Board of School Directors*, *supra,* 616 F.2d at 314. Approving dissemination of the class notice "is at most a determination that there is what might be termed ´probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads,* 627 F. 2d 631,

634 (2d Cir. 1980); *Armstrong v. Board of School Directors*, *supra*, 616 F.2d at 314, fn. 13; *Newberg*, §13:13 at 310-319. The court does not render a final decision as to whether the proposed settlement is fair, reasonable and adequate until the fairness hearing after the class has had an opportunity to comment on the settlement. *Id.*

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted). It is axiomatic that courts look with great favor upon the voluntary resolution of litigation through settlement. *Du Puy v. Director, Office of Workers' Compensation Programs*, 519 F.2d 536, 541 (7th Cir. 1975), cert. denied, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976); *U.S. v. McInnes,* 556 F.2d 436, 441 (9th Cir. 1977). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012).

Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)) Preliminary approval requires only that the settlement figure is within a "reasonable range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2011 WL 3290302, at *7 (N.D. Ill. July 26, 2011).

To grant preliminary approval, a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d at 634 (quoting Manual For Complex Litigation (3d ed.) § 1.46 n.10) (internal quotation marks omitted); *Newberg*, §13.13 (noting that "a settlement will be preliminarily approved if it is 'is neither illegal nor collusive and is within the range of reasonable approval'") (citations omitted).

### A. The Settlement Is Fair, Reasonable, and Adequate and Well Within the Range of a Reasonable Settlement.

When determining whether a settlement falls within the range of possible final approval, a district court's inquiry is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby v. Bayh*, *supra*, 75 F.3d at 1196 (citations omitted)*; see also E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)).

In making this determination, the court considers five factors: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *Newberg*, §§13:14 and 15 at 319-327. All of these factors weigh in favor of preliminary approval of the Settlement Agreement.

### 1.    The Maximum Settlement Fund Is An Excellent Result

In evaluating the strength of plaintiffs' case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby v. Bayh*, *supra*, 75 F.3d at 1200; *see also Armstrong v. Board of School Directors*, *supra*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979) (stating that "the essence of a settlement is a bilateral exchange" and that "'[t]he inherent nature of a compromise is to give up certain rights or benefits in return for others'" (quoting *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 429 (7th Cir. 1977))). Parties to a settlement benefit by resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (internal citations omitted).

In this case, JCPenney agreed to settle this case for Five Million Dollars ($5,000,000.00). Settlement Class Members are not required to file a claim to receive a Settlement Payment, and nothing reverts to JCPenney if there are any Settlement Payment checks that are not cashed.   The Five Million Dollars ($5,000,000.00) Maximum Settlement Fund, when compared to Six Million Four Hundred Thirty-Four Thousand Seventy-Five Dollars ($6,434,075.00), the unadjusted total

value of the Settlement Class Members' claims, represents a 77.7% recovery of the vacation pay not paid at termination. Kostas Decl., ¶22. This is a substantial recovery and much more than is routinely approved. *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial).[6]

This recovery is also compelling since Named Plaintiffs must defend the anticipated motion to decertify, prevail on the issue of liability, prove damages, and prevail on any appeal, if this settlement is not approved. Therefore, a larger recovery would be attained only if Named Plaintiffs succeed on all fronts in the face of a determined Defendant, the quixotic nature of testimonial evidence, and the risks associated with any trial and appeal. Named Plaintiffs and the Settlement Class Members should not be exposed to the risk of decertification, in whole or part, a finding that JCPenney has not violated the IWPCA, or that the Settlement Class Members have not suffered damages equal to the Maximum Settlement Fund, or at all[7]. As a result, this factor strongly weighs in favor of preliminary approval.

---

[6]  *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving settlement amounting to 5.35% of damages for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

[7] This risk should not be underestimated. In *Tschudy v. J.C. Penney, Case No. 3:11-CV-01011-JM*), JCPenney successfully decertified a class of former PTNMAs and prevailed on the issue of liability where the same vacation policy was at issue and in a jurisdiction with similar labor laws. The adverse ruling in the California case was appealed.

### 2. Litigation Through Trial Would Be Complex, Costly and Lengthy

By reaching a favorable settlement prior to a motion to decertify, dispositive motions or trial, Named Plaintiffs avoid significant expense and delay, and instead ensure a significant and early recovery for the Settlement Class Members. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Fitzsimmons*, 778 F.2d at 309. Although Named Plaintiffs believe their case is strong, it is subject to considerable delay, risks and costs if the case is not settled. The years of additional litigation would unnecessarily increase both the expense of the litigation and the risk for Class Members. *Isby v. Bayh*, *supra*, 75 F.3d at 1199; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).

As to continued delay, continued litigation also carries with it a decrease in the time value of money; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The Settlement Agreement, on the other hand, provides substantial immediate benefits. Therefore, this factor also weighs in favor of preliminary approval.

### 3. The Reaction of the Settlement Class Members

The analysis of this factor is premature. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 349 (N.D. Ill. 2010). The Court should analyze this factor after the Class Notice is sent and the Settlement Class Members have had an opportunity to comment on the Settlement Agreement, including filing a Request for Exclusion or an objection.

16

**4.  Class Counsels' Opinion Is That This Settlement Is Fair, Reasonable and Adequate**

Many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *Armstrong v. Board of School Directors*, *supra*, 616 F.2d at 325; *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1982); *In re Mexico Money Transfer Litigation*, *supra,* 164 F. Supp. 2d at 1020.  In fact, courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Board of School Directors*, *supra,* 616 F.2d at 325); *Isby v. Bayh*, *supra*, 75 F.3d at 1200.

In this case, Class Counsel are experienced in class action litigation.  This case was vigorously litigated over an extended period of time before it was settled. Kostas Decl., ¶¶13-17 and Ostroff Decl., ¶¶8-10.  A resolution was only reached after six (6) years of litigation, two (2) motions for class certification, and two mediations spanning more than 2 (two) years.  Kostas Decl., ¶¶18-21. These factors, as well as the result, compel the conclusion that the Settlement Agreement is a result arms-length negotiations, and not collusion. *See Isby v. Bayh*, *supra,* 75 F.3d at 1200.  It is the collective opinion of Class Counsel that this settlement is fair, reasonable and adequate. Kostas Decl., ¶10 and ¶22. Ostroff Decl., ¶¶7-10; and Werman Decl., ¶¶19-21.

**5.  Stage of the Proceedings and the Amount of Discovery Completed**

The stage of the proceedings at which this settlement was reached favors preliminary approval, and ultimately final approval.  The Settlement Agreement did not occur until (1) a successful motion for class certification, (2) extensive discovery, including the examination of the employment records for more than 35,000 PTNMAs, and (3) two (2) mediations spanning more than 2 (two) years.

Courts regularly approve settlements at earlier stages of discovery than in this case. *See Taifa v. Bayh*, 846 F. Supp. 723, 728-29 (N.D. Ind. 1994), *aff'd sub nom. Isby v. Bayh*, 75 F.3d 1191 (approving settlement early in case where the parties had conducted a thorough investigation of the background and facts pertinent to the claims). Courts also encourage parties to settle class actions early, without expending unnecessary resources. *See Yuzary v. HSBC Bank USA, N.A.,* No. 12-3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

In sum, the issues presented by this case, relevant documents, and the employment records produced by JCPenney, have been reviewed, examined and re-examined. Class Counsel believe that no further investigation, discovery and/or analysis would change Class Counsels' evaluation of this case or their opinion about this settlement. Accordingly, the Settlement Agreement is ready for preliminary approval based on the terms and conditions that have been reached for the full and final resolution of this case. Kostas Decl., *passim*.

## VIII.   CERTIFICATION OF THE RULE 23 CLASS FOR PURPOSES OF SETTLEMENT IS APPROPRIATE

Named Plaintiffs seek to certify a class for settlement purposes under Federal Rule of Civil Procedure 23(e). Specifically, Named Plaintiffs respectfully request that the Court conditionally certify a Rule 23 Settlement Class defined as:

> Former Part-Time Non-Management Associates (i) employed in Illinois by JCPenney in that capacity between January 1, 2004 and October 20, 2016, and (ii) whose employment terminated between January 1, 2004 and October 20, 2016.

The proposed class definition for settlement purposes is substantively identical to the class definition that was proposed by Named Plaintiffs in their second motion for class certification and approved by this Court. *ECF*, No. 184. As a result, the Rule 23 requirements are presumptively

18

satisfied, and the unopposed class definition for settlement purposes only should be preliminarily approved.

## IX.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g) governs the appointment of class counsel for a certified class. Rule 23(g) sets forth the factors the district court must consider in evaluating the adequacy of proposed class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

Class Counsel satisfy this criteria. As explained in their declarations, they have a wealth, individually and collectively, of class action experience, their conduct to date establishes their knowledge about, and willingness to, litigate the issues in this case, and they have expressly stated that they are willing to commit, and have committed, the resources necessary to litigate this case to completion. Kostas Decl., ¶30; Ostroff Decl., ¶¶8-10; and Werman Decl., ¶¶13-17.

## X.    THE NOTICE PLAN AND SETTLEMENT PAYMENT DISTRIBUTION PROCESS ARE APPROPRIATE

Pursuant to Rule 23(c)(2)(B), the class notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice, attached to the Settlement Agreement as Exhibit "2", complies with due process and Federal Rule of Civil Procedure 23. Although simply stated and concise, the detailed information in the proposed Class Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B). Kostas Decl., ¶¶27-28.

To ensure that the Class Notice reaches as many Settlement Class Members as possible, the Settlement Agreement requires the Settlement Administrator to run a national change of address update and send by first-class mail, postage prepaid a copy of the Class Notice to each Settlement Class Member at their last known address. The Agreement also requires the Settlement Administrator to skip trace Settlement Class Members' addresses, and research and resend, if possible, all Notice Packets that are returned without a forwarding address. Exhibit "B", §§6.1 and 6.2.

## XI. CONCLUSION

For the reasons set forth above, Named Plaintiffs respectfully request that the Court grant their unopposed Motion for Preliminary Approval of the Settlement Agreement and enter the Proposed Order submitted to the Court's proposed order email address.

Dated: March 22, 2017

Respectfully submitted,

s/ Douglas M. Werman
One of Named Plaintiffs' Attorneys

20