**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GARCIA, et al., | ) | |
| | ) | Case No. 12-CV-03687 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge: Hon. Joan B. Gottschall |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NAMED
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS**

James C. Kostas
Huffman & Kostas
1441 State Street
San Diego, CA 92101-3421
(619)544-0880

Sheldon A. Ostrof
Law Offices of Sheldon A. Ostroff
1441 State Street
San Diego, CA 92101-3421
(619) 544-0881

Douglas M. Werman
Werman Salas P.C.
77 W. Washington St., Suite 1402
Chicago, IL 60602
(312) 419-1008

## TABLE OF CONTENTS

I. BACKGROUND ................................................................................................ 1

   A. Summary of the Litigation ........................................................................ 1

   B. Material Terms of the Settlement ............................................................. 3

       1. Class Period and Definition ................................................ 3

       2. Settlement Amount and Allocation ..................................... 3

       3. *Di Minimis* Payment ........................................................... 4

       4. Direct Pay Without a Reversion ......................................... 4

       5. Scope of Release .................................................................. 4

       6. Administration of Settlement .............................................. 4

II. STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT ............................ 5

III. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...................................... 6

   A. The CAFA Notice Requirement was Satisfied ........................................ 6

   B. A Class of Former PTNMAs May Be Certified for Settlement ...................................... 7

   C. Rule 23(c)(2) Notice Requirements are Satisfied ........................................... 7

   D. The Settlement Satisfies Rule 23(e); It is Fair, Reasonable and
      Adequate ..................................................................................................... 8

       1. The Strength of Named Plaintiffs' Claims....................... 9

       2. Amount of Settlement .................................................. 10

       3. Extent of Discovery/Absence of Collusion..................... 11

       4. Counsels' Opinion ......................................................... 11

       5. Maintaining Class Action Status Through Trial is not Certain....................... 12

       6. The Risk, Expense, and Duration of Further Litigation................................. 13

      7. Requests for Exclusion and Objections ...................................................... 13

i

IV. THE REQUESTED ATTORNEYS' FEES SHOULD BE AWARDED ............................ 14

    A. The "Market Method" is used to Calculate Attorney's Fees in Common Fund Cases in the Seventh Circuit ....................................................... 14

        1. The Requested Fee Award is Supported By the Market Rate and Awards in Other Common Fund Cases ......................................... 15

        2. The Requested Fee Award Satisfies the "Redman Ratio" ............................. 16

        3. The Maximum Settlement Fund Is An Excellent Recovery ..........................18

        4. Quality of Representation ............................................................................. 19

        5. Risk of Nonpayment ...................................................................................... 20

        6. There is No Opposition to the Requested Fee Award.................................... 20

V. CLASS COUNSELS' COSTS AND ADMINISTRATION COSTS ARE REASONABLE AND WERE NECESSARY ..................................................................... 20

VI. SERVICE AWARDS IN THE AMOUNT OF $5,000 EACH ARE APPOPRIATE ........................................................................................................... 21

VII. CONCLUSION ................................................................................................................. 22

<u>TABLE OF AUTHORITIES</u>

CASES

*Armstrong v. Bd. of Sch. Dir. of the City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ................................................................ 5, 8, 12

*Arrez v. Kelly Services, Inc.*,
    522 F.Supp.2d 997 (N.D. Ill. 2007) .............................................................. 9

*Bluetooth Headset Prods. Liabl. Litig*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................ 17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ..................................................................................... 14

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ..................................................................... 21

*Dillworth v. Case Forms Processing, Inc.*,
    5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ................................ 19

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) .................................................................. 5, 13

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ................................................................... 8, 9

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................................... 7

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ......................................................................... 5

*Florin v. Nationsbank of Georgia, N.A.*,
    34 F.3d 560 (7th Cir. 1994) .......................................................................... 14

*Gaskill v. Gordon*,
    160 F3d 361 (7th Cir. 1998) .................................................................. 14, 17

*Golden Bear Family Rest., Inc. v. Murray*,
    144 Ill. App. 3d 616 (1986) ............................................................................ 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................... 6

*Hardaway v. Employbridge of Dallas, inc., et al.,*
    Case No. 11 C 3200, ECF No. 72 (N.D. Ill.)..........................................................16

*Harris v. Vector Mktg.,*
    2011 WL 4831157 (N.D. Cal.)...........................................................................17

*Harris v. Vector Mktg.,*
    2012 WL 381202 (N.D. Cal. 2012) ..................................................................... 7

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Illinois,*
    988 F.Supp. 1130 (N.D. Ill. 1997) 13 ...................................................................13

*In re Apollo Group, Inc. Securities Litig.,*
    2012 WL 1378677 (D. Ariz. 2012) ...................................................................... 7

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) .............................................................................. 17

*In re Dairy Farmers,*
    2015 WL 753946.................................................................................................. 17

*In re Domestic Air Tranp. Antitrust Litig.,*
    148 F.R.D. 297 (N.D.Ga.1993) .......................................................................... 10

*In re Mexico Money Transfer Litig.,*
    164 F. Supp. 2d (N.D. Ill. 2000) ................................................................. 5, 12, 13

*In re Newbridge Networks Sec. Litig.,*
    1998 WL 765724 (D.D.C. Oct. 23, 1998) ........................................................... 10

*In re Online DVD-Rental Antitrust Litig.,*
    779 F3d 934 (9th Cir. 2015) ............................................................................... 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998)................................................................................ 15

*In re Ravisent Techs., Inc. Sec. Litig.,*
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ........................................................ 10

*In re Synthroid Mktg Litig,*
    325 F.3d 974 (7th Cir. 2003) .............................................................................. 14

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) .............................................................................. 14

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ............................................................... 5, 9, 12, 13

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ...................................................................15, 17

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988) ...................................................................12

*Lazy Oil Co. v. Witco*,
  95 F.Supp.2d 290 (W.D. Pa.1997) .................................................................. 10

*Lewis v. Epic Systems Corp.*,
  823 F3d 1147 (7th Cir. 2016) ......................................................................... 10

*M. Berenson Co., Inc. v. Fanueil Hall Marketplace, Inc.*,
  671 F.Supp. 819 (D. Mass. 1987) .................................................................... 11

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ......................................................................13

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*,
  834 F.2d 677 (7th Cir. 1987) .......................................................................... 10

*Matter of Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ..........................................................................20

*Montgomery v. Aetna Plywood, Inc.*,
  231 F.3d 712 (7th Cir. 2000) ..........................................................................14

*Morris v. Ernst & Young, LLP*,
  834 F.3d 975 (9th Cir. 2016) .......................................................................... 10

*Mueller Co. v. Dep't of Labor*,
  543 N.E.2d 518 (Ill. App. Ct. 1989) ................................................................. 9

*Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .....................................................................12

*Ortiz v. Manpower, Inc., No. 11-2009*,
  2012 U.S. Dist. LEXIS 59528 (C.D. Ill. April 10, 2012) .................................... 9

*Patterson v. Stovall*,
  528 F.2d 108 (7th Cir. 1976) ........................................................................... 9

*Pearson v. NBTY, Inc.,*
   772 F.3d 778 (7th Cir. 2014) .................................................................... 16, 17

*People ex rel. Wilcox v. Equity Funding Life Ins. Co.,*
   61 Ill.2d 303 (Ill. 1975) ................................................................................. 8

*Peraza v. Dominick's Finer Foods, LLC,*
   Case No. 11 C 8390, ECF No. 52 (N.D. Ill.) ............................................... 16

*Redman v. RadioShack Corp.,*
   768 F.3d 622 (7th Cir. 2014) ................................................................ 16, 17

*Reed v. Gen. Motors Corp.,*
   703 F.2d 170 (5th Cir. 1983) ...................................................................... 12

*Restsky Family Ltd. P'ship v. Price Waterhouse LLP,*
   No. 97-7694, 2001 WL 1568856 ................................................................ 17

*Reynolds v. Beneficial Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002) ...................................................................... 13

*Romo v. Manpower, Inc.,*
   Case No. 09 C 3429, ECF No. 249 ............................................................. 16

*Rosales v. The Placers, Ltd., d/b/a Randstand,*
   No. 09-1706, 2011 U.S. Dist. LEXIS 22036 (N.D. Ill. March 4, 2011) ........... 9, 16

*Rotuna v. W. Customer Mgmt. Grp., LLC,*
   4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ...................... 19

*Rusin v. Chicago Tribune Co.,*
   No. 12 C 1134, ECF No. 41 (N.D. Ill.) ....................................................... 16

*Schmidt v. Smith & Wollensky LLC,*
   Case No. 09-2752, ECF No. 78 (N.D. Ill.) ................................................. 16

*Schulte v. Fifth Third Bank,*
   No. 09 C 6655, 2011 U.S. Dist. LEXIS 83423 (N.D. Ill. July 29, 2011) ......... 17

*Seiden v. Nicholson,*
   72 F.R.D. 201 (N.D. Ill. 1976) .................................................................... 13

*Silverman v. Motorola,*
   2012 WL 1597388 (N.D. Ill. May 7, 2012) ................................................ 15

*Skelton v. Gen. Motors Corp.,*
  860 F.2d 250 (7th Cir. 1988) 14 .................................................................14

*Sutton v. Bernard,*
  504 F.3d 688 (7th Cir. 2007) ...................................................................... 20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
  463 F.3d 646 (7th Cir. 2006) ...................................................................... 5, 8

*Taubenfeld v. AON Corp.,*
  415 F.3d 597 (7th Cir. 2005) ...................................................................... 20

*Wal-Mart Stores, Inc. v. Visa USA, Inc.,*
  396 F.3d 96 (2d Cir. 2005)........................................................................... 14

*Weinberger v. Kendrick,*
  698 F.2d 61 (2nd Cir. 1982)........................................................................ 12

*Williams v. Volt Mgmt. Corp.,*
  Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) .............................................. 16

*Winston v. Speybroeck, No. 3:94-CV-150AS,*
  1996 U.S. Dist. LEXIS 12138 (N.D. Ind. Aug. 2, 1996)........................... 11

*Wong v. Accretive Health, Inc.,*
  773 F.3d 859 (7th Cir. 2014) ...................................................................... 10

## STATUTES AND RULES

Illinois Equal Justice Act, 30 Ill. Comp. Stat. 765/1, *et seq.* ..........................................................4

Illinois Wage Payment and Collection Act, 820 ILCS 115/5 ...................................................1, 9

56 Ill. Admin. Code §300.520(a), (e), (f)(1), (f)(3) ....................................................1,9

Federal Rule of Civil Procedure 23 ................................................................. *passim*

Federal Rule of Civil Procedure 23(a) and (b) ................................................................7

Federal Rule of Civil Procedure 23(c)(1)(C) ................................................................12

Federal Rule of Civil Procedure 23(c)(2) ................................................................7

Federal Rule of Civil Procedure 23(c)(2)(B) ............................................................... 6,7

Federal Rule of Civil Procedure 23(d)................................................................ 12

Federal Rule of Civil Procedure 23(e)(2) ......................................................................... 6

Federal Rule of Civil Procedure 23(h).......................................................................... 14

28 U.S.C. §1715................................................................................................................. 6

**MISCELLANEOUS AUTHORITIES**

William B. Rubenstein, Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions, Sections* §§*13:13 and
  13:15* (5th ed. 2014)............................................................................................. 8

## I.     BACKGROUND

### A.     Summary of the Litigation

J.C. Penney Corporation, Inc.'s ("JCPenney" or "Defendant") "My Time Off" vacation policy ("Vacation Policy") in effect during the Class Period contained vesting conditions.  Laura Progo, formerly Laura Garcia ("Progo", "Named Plaintiff" or "Class Representative") and Lore Rednour ("Rednour", "Named Plaintiff" or "Class Representative") (collectively "Named Plaintiffs") contended these vesting conditions violated 820 ILCS 115/5 and 56 Ill. Admin. Code §300.520(a), (e), (f)(1) and (f)(3) because the Vacation Policy is a length of service look back policy.  As a result, Named Plaintiffs, on behalf of themselves, and other Management Associates and Part-Time Non-Management Associates ("PTNMA"), alleged in the original, first amended, and second amended complaints, that they were entitled to recover vacation pay for the vacation time they did not accrue because of these vesting conditions, as well as, interest, penalties, attorneys' fees and costs.  *ECF*, Nos. 1, 22 and 45. The third amended complaint is the operative complaint and sought relief on the same theory of liability but only on behalf of former PTNMAs. *ECF*, No. 159.

The Parties engaged in substantial procedural law and motion practice during the first year after this case was filed. *ECF*, Nos. 1, 8, 11, 13, 25, 26, 29, 40, and 50-54.  Thereafter, the Parties simultaneously conducted substantial certification and merits discovery. *ECF*, Nos. 208-1, p. 7, ¶¶ 13 and 15; 208-2, pp. 4-6, ¶¶8-10.  After resolving the discovery disputes, JCPenney produced voluminous policy documents and employee data.  *ECF*, Nos. 87-96 and 107.

After completing their preliminary investigation, extensive formal and informal discovery, creating a damage model for more than 35,000 employees with the assistance of James R. Lackritz,

1

Ph.D.[1], and conducting many pre-settlement discussions, the Parties participated in a mediation on April 9, 2014, before the Honorable Edward A. Infante, Magistrate Judge (Ret.). The Parties did not reach a settlement at this mediation. *ECF*, No. 208-1, p. 8, ¶18.

On August 14, 2014, Named Plaintiffs filed their motion for class certification and briefing was completed on January 5, 2015. *ECF*, Nos. 125-156. Named Plaintiffs' motion for class certification was denied without prejudice on March 31, 2015. *ECF*, No. 157. On July 2, 2015, Named Plaintiffs filed a second motion for class certification. *ECF*, Nos. 173-182. The Court granted Named Plaintiffs' July 2, 2015 motion for class certification on March 8, 2016, certifying a class of "all former [Part-Time Non-Management Associates] employed by JCPenney in Illinois and terminated between January 1, 2004 and [March 8, 2016]". *ECF*, Nos. 183-184.

At a status conference on April 6, 2016, Named Plaintiffs advised the Court that they were prepared to immediately file a motion for summary judgment. Over JCPenney's objection, the Court set a briefing schedule. *ECF*, No. 190.

Shortly thereafter, the Parties agreed to a stay and vacated the filing date for Named Plaintiffs' summary judgment motion pending the completion of a second mediation. *ECF*, No. 193. The Parties participated in a second mediation on July 29, 2016 before David Rotman, Esq., a prominent labor lawyer and mediator. The Parties did not reach a settlement. Several days later, however, Mr. Rotman tendered a mediator's proposal. The mediator's proposal was accepted by both Parties on September 1, 2016. *ECF*, No. 208-1, p. 8, ¶19.

---

[1] James R. Lackritz, Ph.D., was retained to assist Class Counsel to value the Settlement Class Members' total vacation pay claims, to calculate the amount of vacation pay owed to each Settlement Class Member based on Named Plaintiffs' theory of the case, and to calculate estimated Settlement Payments.

The Parties diligently worked to finalize the terms of the Settlement Agreement. After seven (7) months of negotiations, and many drafts, the Settlement Agreement was signed the first week of March 2017[2]. *ECF*, Nos. 194-202 and 208-1, p. 8, ¶20. After almost six (6) years of litigation, Named Plaintiffs obtained an all in settlement that requires JCPenney to pay $5,000,000, without a reversion or the necessity of filing a claim, to resolve the claims of the 38,465 Settlement Class Members Named Plaintiffs valued at $6,434,075. *ECF*, No. 208-1, pp. 8-9, ¶21.

Named Plaintiffs' unopposed motion for preliminary approval was granted on March 29, 2017, as modified *nunc pro tunc* on April 3, 2017. *ECF*, Nos. 210 and 212. The settlement was administered pursuant to the terms of the Preliminary Approval Order (Ex. 2, Pirrung Decl., ¶ 2), and it is now before the Court for final approval.

### B. Material Terms of the Settlement

#### 1. Class Period and Definition

The Settlement Class includes all former Part-Time Non-Management Associates (i) employed by JCPenney in Illinois in that capacity between January 1, 2004 and October 20, 2016, and (ii) whose employment with JCPenney terminated between January 1, 2004 and October 20, 2016. Exhibit "B", §2.37 and §2.38.

#### 2. Settlement Amount and Allocation

The Maximum Settlement Fund, the most JCPenney is required to pay, is $5,000,000, which includes: 1) all payments to Participating Settlement Class Members; 2) attorneys' fees not to exceed 35% ($1,750,000) of the Maximum Settlement Fund; 3) costs not to exceed $75,000; 4) a $5,000 Service Award to each Named Plaintiff for a total of $10,000; and 5) $84,968.00 for costs

---

[2] The Settlement Agreement is attached to Exhibit 1, the declaration of James C. Kostas ("Ex. 1, Kostas Decl."), as Exhibit "B" and is hereinafter cited as Exhibit "B". Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and have the same meaning herein.

of administration.   The remainder of the $5,000,000, the Net Settlement Fund, is estimated to be $3,080,032.00, and it will be distributed to the Participating Settlement Class Members pursuant to the Plan of Allocation.  Exhibit "B", §2.14, §2.17 and §4.

### 3.   *Di Minimis* Payment

Any Settlement Class Member whose Settlement Payment is calculated to be $10 or less will be paid the Minimum Settlement Class Award, $10.  Exhibit "B", §2.15 and §4.2.2.

### 4.   Direct Pay Without a Reversion

Class Members are not required to file a claim to receive a Settlement Payment.  JCPenney will not retain any part of the Maximum Settlement Fund.  Exhibit "B", §2.14, §2.17, and §4.2.1.  The amount represented by any Settlement Payments that are not cashed within 180 days will be paid to the *cy pres* designee, the Legal Assistance Foundation, (http://www.lafchicago.org/), a non-profit organization that has a principal purpose of promoting or providing services that would be eligible for funding under the Illinois Equal Justice Act, 30 Ill. Comp. Stat. 765/1 *et seq*.;  Exhibit "B", §7.4.5.

### 5.   Scope of Release

Upon final approval of the Settlement Agreement, Class Members who have not opted out of the settlement will be barred from bringing any cause of action or asserting any claim for unpaid vacation pay during the Class Period. Named Plaintiffs have consented to a general release of any and all claims arising during the Class Period. Exhibit "B", §2.24, §2.25, §8.2 and §8.3.

### 6.   Administration of Settlement

The Settlement Administrator, American Legal Claim Services, LLC (ALCS), was responsible for preparing and mailing the Class and CAFA notices.  Exhibit "B", §2.1, §2.32, and §6; Ex. 2, Pirrung Decl., ¶¶2-6.  Class Counsel, with the assistance of their expert, calculated each Settlement Class Member's estimated Settlement Payment and provided it to ALCS.  *ECF*, No.

208-1, p.10, ¶¶23-24.  JCPenney provided ALCS with the last known address for each Settlement

Class Member.  Ex 2, Pirrung Decl., ¶4. The Settlement Administrator used various processes and

search engine databases to update these addresses "to enhance opportunities for delivery through

the use of an intelligent barcode. Ex 2, Pirrung Decl., ¶5.

On March 29, 2017, 51 CAFA notices were mailed.  Ex 2, Pirrung Decl., ¶3. On April 5,

2017, 38,465 Class Notices were mailed. Ex 2, Pirrung Decl., ¶6.

Three thousand two hundred and eighty-four (3,284) Class Notices were returned to ALCS

as undeliverable. Ex 2, Pirrung Decl., ¶8.   ALCS performed address traces and mailed out new

notices; ultimately, 953 Class Notices were undeliverable. Ex 2, Pirrung Decl., ¶¶8-9.

ALCS has not received any objections or requests for inclusion, and only 11 valid requests

for exclusion. Ex 2, Pirrung Decl., ¶¶10,11 and 14.

## II.     STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Approval of a class action settlement is committed to the sound discretion of the trial judge.

*Armstrong v. Bd. of Sch. Dir. of the City of Milwaukee*, 616 F.2d 305, 313-14 (7th Cir. 1980),

*overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). A strong judicial

policy favors settlement of class actions. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In

analyzing a class settlement, the district court must consider the facts in the light most favorable

to the settlement. *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000)

(*citing Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)).  However, a court

has a fiduciary duty to examine the settlement as a whole for overall fairness.  *Synfuel Techs., Inc.*

*v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006).  Neither district courts nor appellate

courts have the power to delete, modify, or substitute terms in the proposed settlement agreement.

"The settlement must stand or fall in its entirety." *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

When evaluating this settlement, the Court should conduct a three step inquiry. First, it will determine whether JCPenney satisfied the CAFA notice requirements. Next, it will determine whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Finally, the Court must determine if this settlement is fair, reasonable, and adequate under Rule 23(e)(2).

## III.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The CAFA Notice Requirement was Satisfied

This action was removed pursuant to CAFA. *ECF*, No. 1. The Settlement Agreement required JCPenney to comply with the CAFA notice requirements. Exhibit B, §2.1. CAFA requires JCPenney to serve notice of the proposed settlement "upon the appropriate State official of each State in which a class member resides and the appropriate Federal official" . . . "[n]ot later than 10 days after [the] proposed settlement . . ." is filed in court. 28 U.S.C. §1715(a) and (d). The Court may not grant final approval of the Settlement Agreement ". . . earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served . . ." with the required notice. 28 U.S.C. §1715(d).

On March 22, 2017, the proposed settlement was filed with the Court. *ECF*, No. 208-1. After reviewing the class list prepared by JCPenney, it was determined that the 38,465 Settlement Class Members resided in 48 different states, the District of Columbia, and the U.S. Virgin Islands. Ex 2, Pirrung Decl., ¶3. On March 29, 2017, JCPenney, through ACLS, sent notice of the settlement to the U.S. Attorney General, 48 state Attorney Generals, and the Attorney Generals for the District of Columbia and the U.S. Virgin Islands. Ex 2, Pirrung Decl., ¶3.

The final approval hearing is scheduled for July 12, 2017, more than 90 days after the CAFA notices were served.

### B.     A Class of Former PTNMAs May Be Certified for Settlement

This Court previously certified a class of former PTNMAs.  *ECF*, No. 184.  The proposed class definition for settlement purposes is:

> [a]ll former Part-Time Non-Management Associates (i) employed in Illinois by JCPenney in that capacity between January 1, 2004 and October 20, 2016, and (ii) whose employment terminated between January 1, 2004 and October 20, 2016.

Exhibit "B", §2.37.

The settlement class definition is substantively identical to the definition approved by the Court.  Thus, the Court need not find anew that the settlement class definition meets the certification requirements of Rules 23(a) and (b).  *Harris v. Vector Mktg.*, 2012 WL 381202 at *3 (N.D. Cal. 2012); *In re Apollo Group Inc. Securities Litig.*, 2012 WL 1378677 at*4 (D. Ariz. 2012).  The Court may reconfirm its order certifying this class.

### C.     Rule 23(c)(2) Notice Requirements are Satisfied

"[I]ndividual notice should be [given] to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2).  *Id.* Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175.  The Preliminary Approval Order approved the form, content, and proposed distribution of the Notice Packet, finding that it satisfied due process, and was the best notice practicable under the circumstances.

The Class Notice previously approved by the Court was mailed to all Settlement Class Members on April 5, 2017 to their last known address. Ex 2, Pirrung Decl., ¶¶4-6. As required by the Settlement Agreement, ALCS tried to identify new addresses for all returned mail. Ex 2, Pirrung Decl., ¶¶7-8. When a new address was identified, the returned mail was promptly remailed. Ex 2, Pirrung Decl., ¶6. Ultimately, there were 953 undeliverable Class Notices. Ex 2, Pirrung Decl., ¶¶8-9.

Settlement Class Members were also advised that they could seek assistance at a website established by the Settlement Administrator, by telephone with prompts to answer frequently asked questions, or directly by contacting Class Counsel or the Settlement Administrator. Ex 2, Pirrung Decl., ¶¶12-13.

### D. The Settlement Satisfies Rule 23(e); It is Fair, Reasonable and Adequate

A class action settlement must be "fair and reasonable and in the best interests of all those who are affected by it." *People ex rel. Wilcox v. Equity Funding Life Ins. Co.*, 61 Ill.2d 303, 316 (Ill. 1975). "Among the factors that a district court should consider when it makes this ʹfairnessʹ determination are: a comparison of the strengths of plaintiffs' case versus the amount of the settlement offer; the likely complexity, length, and expense of the litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and, the stage of the proceedings and the amount of discovery already undertaken at the time of the settlement. ʺ *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985) (citing *Armstrong v. Bd. of Sch. Dir. of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) among others; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, *supra,* 463 F.3d at 653; *Newberg,* §§13:14 and 15 at 319-327.

All of these factors support the entry of an order granting final approval.

### 1. The Strength of Named Plaintiffs' Claims

Although the evaluation of the strength of plaintiffs' case on the merits is balanced against the terms of proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson v. Stoval*, 528 F.2d 108, 114 (7th Cir. 1976) (collecting cases). Because "[t]he essence of settlement is compromise," courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *E.E.O.C.*, *supra*, 768 F.2d at 889; *Isby v. Bayh*, *supra*, 75 F.3d at 1200.

Named Plaintiffs alleged that the Vacation Policy violates 820 ILCS 115/5 and 56 Ill. Admin. Code §300.520(a), (e), (f)(1) and (f)(3). Named Plaintiffs contended JCPenney's Vacation Policy is a length of service look back policy that contains unlawful vesting conditions. *Ortiz v. Manpower, Inc.,* No. 11-2009, 2012 U.S. Dist. LEXIS 59528 (C.D. Ill. April 10, 2012); *Rosales v. The Placers, Ltd., d/b/a Randstad,* No. 09-1706, 2011 U.S. Dist. LEXIS 22036 (N.D. Ill. March 4, 2011); *Arrez v. Kelly Services, Inc.,* 522 F. Supp. 2d 997 (N.D. Ill. 2007); *Golden Bear Family Rest., Inc. v. Murray,* 144 Ill. App. 3d 616 (1986); and *Mueller Co. v. Dep't of Labor,* 543 N.E.2d 5I8 (Ill. App. Ct. 1989).

Conversely, JCPenney maintained that its Vacation Policy pays benefits in advance as an inducement for, among other things, continued employment, and that the conditions, if any, in its Vacation Policy, may be lawfully imposed in a forward looking policy. JCPenney also contended that a substantial number of the Settlement Class Members signed an arbitration agreement that prohibits participation in any type of representative or collective action.

Named Plaintiffs believe that based on controlling authority and the evidence obtained through discovery they are more likely than not to prevail on the question of liability. However, they are less certain about the outcome of the issues raised by JCPenney as to the enforcement of

its arbitration agreement[3]. The 77.7% recovery, as explained in subsection 2 below, more than reflects the likelihood of success on the merits in this case. Ex. 1, Kostas Decl., ¶¶12-13, Ex. 3, Werman Decl., ¶18.

## 2.    Amount of Settlement

Named Plaintiffs estimated, based on the Data, the value of the settled claims at $6,434,075, increasing to $6,553,084 after adjusting for the $10 *di minimis* payment. The $5,000,000 Maximum Settlement Fund represents a recovery of approximately 77.7% ($5,000,000/$6,434,075). This is a substantial recovery and much more than is routinely approved. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[4] The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

---

[3] *Lewis v. Epic Systems Corp.*, 823 F3d. 1147 (7th Cir. 2016) and *Morris v. Ernst & Young, LLP*, 834 F3d. 975 (9th Cir. 2016) both held that employee participation in class or collective actions could not be waived in an arbitration agreement. However, certiorari was granted on January 13, 2017 in both cases. (137 S.Ct. 809).

[4] *See also In re Online DVD-Rental Antitrust Litig.*, 779 F3d 934, 950-951 (9th Cir. 2015) ($12.00 gift card sufficient); *Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

### 3.    Extent of Discovery/Absence of Collusion

Nothing remains to be discovered in this case; discovery is complete. *ECF*, No. 112. The documents relating to JCPenney's Vacation Policy were obtained and examined, employment data was obtained and examined, and the Named Plaintiffs, as well as the persons most knowledgeable about the issues raised in this litigation, were deposed. *ECF*, No. 208-1, p. 7, ¶¶13-17; *ECF*, No. 208-2, ¶¶8-10.  The nature and extent of the discovery conducted in this case is confirmed by the content of the pleadings filed during the last six (6) years and the discovery disputes that were submitted to this Court for resolution. *ECF*, No., 87-101 and 109-111. In addition, this resolution was only reached after two (2) mediations with different mediators more than 2 years apart.  *ECF*, No. 208-1, pp.7-8, ¶¶13-19.

Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. "[W]here . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair." *M. Berenson Co., Inc., v. Fanueil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987). In the absence of any evidence of collusion (and there is none here), final approval of the settlement is appropriate.  *Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996).

### 4.    Counsels' Opinion

Class Counsel have collectively served as lead counsel or co-counsel in more than 100 wage and hour class action cases.  Ex. 1, Kostas Decl., ¶7; Ex. 4, Ostroff Decl., ¶6; Ex. 3, Werman Decl., ¶14.  Based on this extensive experience, they have collectively and without reservation concluded that this settlement is fair, reasonable and adequate.  Ex. 1, Kostas Decl., ¶¶12 and 15; Ex. 4, Ostroff Decl., ¶¶6, 12, and 16; Ex. 3, Werman Decl., ¶18.

11

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citations and quotations omitted); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Armstrong v. Bd. of Sch. Dir. of the City of Milwaukee*, *supra*, 616 F.2d at 325; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1982); *In re Mexico Money Transfer Litig.*, *supra,* 164 F. Supp. 2d at 1020.  This is because parties represented by competent counsel are in a better position to produce a settlement that fairly reflects each party's expected outcome in the litigation. *Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996).  Therefore, reliance on Class Counsels' declarations outlining their experience, and the Court's own observations, is appropriate to conclude that this settlement is fair, reasonable and adequate is appropriate.  *Id.*

### 5.    Maintaining Class Action Status Through Trial is not Certain

"An order that grants or denies class certification may be altered or amended before final judgment".  Rule 23(c)(1)(C). "[T]he court may issue orders that...(D) require that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly."  Rule 23(d).

In opposition to Named Plaintiffs' second motion for class certification, JCPenney argued that the nature and scope of the certified class was inappropriate, and as to some of these arguments, the Court indicated that they could be revisited at a later date.  *ECF*, Nos. 183 and 184.  Given JCPenney's prior arguments and the Courts comments, it is almost certain that if this case was not settled, a motion to decertify would be filed. Ex. 1, Kostas Decl., ¶12.

12

### 6.      The Risk, Expense, and Duration of Further Litigation

Continued litigation involves the consideration of the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). "If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort." *Donovan v. Estate of Fitzsimmons, supra,* 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976). The proposed settlement, on the other hand, provides immediate benefits.

By reaching a favorable settlement prior to a motion to decertify, dispositive motions or trial, Named Plaintiffs avoid significant expense and delay, and instead ensure a significant and early recovery for the Settlement Class Members. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, *supra,* 778 F.2d at 309. Although Named Plaintiffs believe their case is strong, it is subject to considerable delay, risks and costs if the case is not settled. The years of additional litigation would unnecessarily increase both the expense of the litigation and the risk for Class Members. *Isby v. Bayh*, *supra*, 75 F.3d at 1199; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).

### 7.      Requests for Exclusion and Objections

An absence of objections by class members is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *See Hispanics United of DuPage Cnty. v. Vill. of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same). "If only a small number of objections are received,

that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

The Settlement Administrator only received 11 requests for exclusion and no objections. Ex 2, Pirrung Decl., ¶¶10 and 14.

## IV. THE REQUESTED ATTORNEYS' FEES SHOULD BE AWARDED

The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of a person other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). The common fund doctrine is based on the notion that all "those who have benefitted from litigation should share its costs." *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 977 (7th Cir. 2003) (*Synthoid II*) (each class member "must bear their portion of the legal expense.").

### A. The "Market Method" is used to Calculate Attorney's Fees in Common Fund Cases in the Seventh Circuit

"When deciding on appropriate fee levels in common fund cases, courts must do their best to award counsel market price for legal services, in light of the risk of nonpayment and the normal rate of payment at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*Synthoid I*). To that end, the court uses the "market place" for legal services to determine a "percentage of the fund" that fully compensates counsel with a reasonable fee as required by Rule 23(h). *Id.; Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 712, 718 (7th Cir. 2000); *Gaskill v. Gordon*, 160 F3d 361, 363 (7th Cir. 1998). The Seventh Circuit recognizes the advantages of the percentage of the fund method, including its objectivity and ease of application. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). Indeed, the use of a multifactor

14

test such as "a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Silverman v. Motorola,* 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (citing *Will v. General DynamicsCorp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010).

Class Counsel request attorneys' fees in the amount of $1,750,000 ─ 35% of the $5,000,000 Maximum Settlement Fund.  The requested fee is authorized by the Settlement Agreement, supported by the "market place", the result obtained, and is reasonable.  Ex. 1, Kostas Decl., ¶¶16-21; Ex. 4, Ostroff Decl., ¶18; and Ex. 3, Werman Decl., ¶¶14-16.

### 1. The Requested Fee Award is Supported By the Market Rate and Awards in Other Common Fund Cases

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998).

The fees requested approximate the attorney's fees awarded in other employment class actions.  Ex 3, Werman Decl., ¶16; *Sanchez v. Roka Akor Chicago LLC*, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017) (in IMWL class action, awarding fees equivalent to 39.5% of the common fund and stating such an award is "consistent with the market in the Northern District of Illinois."); *Furman v. At Home Stores LLC*,  2017 WL 1730995, at *4 (N.D. Ill. May 1, 2017) (in FLSA collective action, awarding one-third of common fund and stating that "is the standard contingent

percentage that employment lawyers in the Northern District of Illinois charge individual clients.")[5]

## 2. The Requested Fee Award Satisfies the "Redman Ratio"

The Seventh Circuit instructs district courts to examine the ratio of the fee requested to the fee plus what class members received to assess the reasonableness of the requested fee award  and to deter collusive results when a "clear sailing" agreement is present.  *See Redman v. RadioShack Corp.,* 768 F.3d 622, 630 (7th Cir. 2014); *accord Pearson v. NBTY, Inc.,* 772 F.3d 778, 781 (7th Cir. 2014).[6]

---

[5]  See also, *Briggs v. PNC Financial Services, Inc.*, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016) (awarding one-third of maximum $6,000,000 common fund in FLSA collective action for owed overtime pay); *McDonnell v. Groupon, Inc.*, Case No. 14-9028, ECF No. 100 (N.D. Ill. Nov. 11, 2016) (awarding one-third of $2,500,000 common fund in FLSA and IMWL collective and class action for owed overtime pay); *Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249 (N.D. Ill.) (awarding one-third of $8,000,000 common fund in IWPCA vacation pay forfeiture class action); *Ortiz v. Manpower*, Case No. 12 C 5248, ECF No. 63 (N.D. Ill.) (awarding requested 30% of $11,000,000 common fund); *O'Toole v. Sears Roebuck, and Co*., Case No. 11 C 4611, ECF 274 (awarding one-third of $5,000,000 common fund); *Beatty v. Capital One Financial Corporation*, Case No. 12-cv-434, ECF No. 75 (N.D. Ill.) (awarding one-third of $3,200,000 in FLSA collective action); *Williams v. Volt Mgmt. Corp*, Case No. 10 C 3927, ECF No.  52 (N.D. Ill.) (awarding one-third of $2,500,000 common fund in IWPCA vacation pay forfeiture class action);  *Hardaway v. Employbridge of Dallas, Inc., et al.,* Case No. 11 C 3200, ECF No. 73 (N.D. Ill.) (awarding one-third of $1,500,000.00 common fund in IWPCA, IDTLSA, and IMWL unpaid wage class action); *Peraza v. Dominick's Finer Foods, LLC,* Case No. 11 C 8390, ECF No. 52 (N.D. Ill.) (awarding one-third of $1,450,000 common fund in IMWL overtime pay class action); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation pay forfeiture class action); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill) (awarding one-third of common fund in IMWL minimum wage and overtime pay case); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation pay forfeiture class action); *Rusin v. Chicago Tribune Company,* No. 12 C 1135, ECF No. 41 (N.D. Ill.) (awarding one-third of common fund in IMWL class action).

[6] These cases also confirm that the reasonableness of an attorneys' fee award must be evaluated in the context of "what it buys," and not how "hard and efficiently [] [Class Counsel] say they worked." *Redman*, *supra,* 768 F.3d at 633. "[I]n determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for

Under *Redman*, the "ratio that is relevant" in determining reasonable attorney's fees "... is the ratio of (1) the fee to (2) the fee plus what the class members received" and the "attorney's fees awarded to class counsel should not exceed *a third or at most a half of the total amount of money going to class members*." *Redman,* 768 F.3d at 630; *Pearson, supra,* 772 F.3d at 781-82; see also, *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (the "usual range for contingent fees is between 33 and 50 percent."); *In re Dairy Farmers*, 2015 WL 753946 at *3 (in class actions, "usual range for contingent fees is between 33 and 50 percent"); *Restsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-7694, 2001 WL 1568856 at * 4 (N.D. Ill. Dec. 10, 2001) (a "customary contingency fee would range from 33 1/3% to 40% of the amount recovered"); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("the typical contingent fee contract is between 33 and 40 percent …"); *Kirchoff, supra,* 786 F. 2d at 323 ("40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial).

The concern about "clear sailing" agreements expressed by the *Redman* Court has been addressed by other courts with similar approaches to ensure that such provisions are not the result of a collusive agreement. Specifically, the court may assess 1) whether class counsel is receiving a disproportionate distribution of the settlement, and 2) whether fees not awarded revert to defendants. *Bluetooth Headset Prods. Liabl. Litig*, 654 F.3d 935, 947 (9th Cir. 2011)($800,000 for attorneys' fees and no monetary award for the class); *Harris v. Vector Mktg. Corp.*, 2011 WL

---

the members of the class rather than how much effort class counsel invested in the litigation." *Id.* *Schulte v. Fifth Third Bank*, No. 09 C 6655, 2011 U.S. Dist. LEXIS 83423, at *103, n. 27 (N.D. Ill. July 29, 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive.")

4831157 (N.D. Cal.)(rejecting $4,000,000 in attorneys' fees and $1,000,000 to the class).

Here, Class Counsel's proposed attorney's fee equals the low end of the *Redman* ratio: *i.e.*, 35% of the Maximum Settlement Fund, all of which will be distributed, with no requirement that Settlement Class Members submit claim forms to receive their *pro rata* share of the Net Settlement Fund. *Sanchez, supra,* 2017 WL 1425837 at *6. In addition, Settlement Class Members are receiving substantially more than Class Counsel ($3,082,032 v. $1,750,000), and no money reverts to JCPenney. Any money that remains as a result of Settlement Payments that are not cashed within 180 days will be paid to the *cy pres* designee, the Legal Assistance Foundation. Exhibit "B", §7.4.5.

### 3. The Maximum Settlement Fund Is An Excellent Recovery

Class Counsel recovered approximately 77% on the maximum vacation forfeiture sustained by the Settlement Class Members. Ex. 1, Kostas Decl., ¶13. The distribution of the Net Settlement Fund was initially estimated to be:

| Settlement Payment | No. of Settlement Class Members | Percent | Dollar Value |
|---|---|---|---|
| $ 10.00 | 17,955 | 46.77% | $ 179,550 |
| $ 10.00 - $ 20.00 | 4,129 | 10.7% | $ 60,547 |
| $ 20.01 - $ 50.00 | 5,887 | 15.3% | $ 190,355 |
| $ 50.01 - $ 100.00 | 3,874 | 10.1% | $ 278,790 |
| $ 101.00 - $ 200.00 | 3,260 | 8.5% | $ 459,898 |
| $ 201.00 - $ 500.00 | 2,400 | 6.2% | $ 723,461 |
| $ 501.00 - $1,000.00 | 584 | 1.5% | $ 391,754 |
| >$1,000.00 | 376 | 1.0% | $ 795,676 |
| Totals | 38,465 | 100% | $3,080,032[7] |

---

[7] After the Court approved attorneys' fees, costs and Service Awards are known, a final calculation of Settlement Payments will, if necessary, be performed based on the Net Settlement Fund if it has changed.

The revised distribution by the Settlement Administrator after the value of the Settlement Awards ($53,570.56) for the 953 Class Members who could not be located and the 11 requests for exclusion ($771.51) is reallocated to the remaining 37,501 Class Members is:

| Settlement | | No. of Settlement Class Members |
|---|---|---|
| $       0    -    $      10.00 | | 17,339 |
| $     10.01  -    $    100.00 | | 13,546 |
| $   100.01   -    $    250.00 | | 4,062 |
| $   250.01   -    $ 1,000.00 | | 2,173 |
| $1,000.00  -    $16,050.00 | | 381 |
|       Total | | 37,501 (38,465-964) |

Ex 2, Pirrung Decl., ¶¶15-16.

This recovery is above the range of reasonable recoveries in most settled class actions. See, *Rotuna v. W. Customer Mgmt. Grp., LLC,* 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund and describing recovery of 25% to 75% of claimed wages as "exceptional."); *Dillworth v. Case Farms Processing, Inc.,* 5:08-CV-1694, 2010 WL 776933, *8 (N.D. Ohio Mar. 8, 2010) (awarding one-third of common fund as fee in wage case and describing recovery of one-third of claimed wages as "exceptional"). This settlement provides a significant recovery. After deducting all costs, more than 4,000 Settlement Class Members will receive more than $100, and more than 6,000 Settlement class Members will receive more than $500, with 381 receiving more than $1,000.

### 4.        Quality of Representation

As outlined in section I above, this case was vigorously litigated over a six (6) year period. Class Counsel faced two well-staffed, capable firms with significant expertise in wage and hour class actions. This case was defended by multiple partners and associates, as well as in house counsel. Virtually every issue was litigated and relitigated. Ex. 1, Kostas Decl., ¶¶9-10, 12-13, 15, and 21.

5.      **Risk of Nonpayment**

Class Counsel should be compensated for litigating difficult cases with tenacity, and not for settling simple cases for small amounts. In accepting difficult cases where the defendant is represented by well-staffed and competent counsel, there is a substantial risk of nonpayment. The opportunity cost of nonpayment, or inadequate payment, is compounded when attorneys, as Class Counsel, have small firms and only work on a handful of cases at any one time. Ex.1, Kostas Decl., ¶7; Ex 4, Ostroff Decl., ¶5; Ex 3, Werman Decl., ¶15. As a result, Class Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Named Plaintiffs. *Taubenfeld v. AON Corp.*, 415 F.3d 597 at 600 (7th Cir. 2005) (approving of district court's reliance on this factor in evaluating attorneys' fees); *Sutton v. Bernard*, 504 F.3d 688, 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). As the Seventh Circuit has noted, plaintiffs' counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.). These facts support Class Counsel's fee request.

6.      **There is No Opposition to the Requested Fee Award**

The attorney's fees request was disclosed in the Class Notice, and not one Settlement Class Member objected. Ex. 1, Kostas Decl., ¶14; Ex. 4, Ostroff Decl., ¶12; Ex. 2, Pirrung Decl., ¶14. For the reasons explained above, the requested award is appropriate in this case.

**V.      CLASS COUNSELS' COSTS AND ADMINISTRATION COSTS ARE REASONABLE AND WERE NECESSARY**

Class Counsel may recover reasonable costs incurred, not to exceed $75,000. Exhibit "B", §3.3. The itemized costs of $38,541.80 are reasonable and were necessary. Ex.1, Kostas Decl., ¶21, Ex. 3, Werman Decl., ¶17. The proposed award of costs is disclosed in the Class Notice, and not one Settlement Class Member objected. Exhibit "B-1"; Ex. 1, Kostas Decl., ¶22; Ex. 2, Pirrung

Decl., ¶14. Therefore, Class Counsel requests that the Court award $38,541.80 for the reasonable costs they incurred prosecuting this case.

Class Counsel obtained several bids for the administration of this case. Ex. 1, Kostas Decl., ¶24. Class Counsel proceeded to negotiate with the interested parties and ultimately accepted a fixed price bid from ACLS for $84,968, the lowest price for the services required by the Settlement Agreement. *Id*. Therefore, $84,968 should be awarded to ACLS for the reasonable and necessary costs it incurred in administering this case.

## VI.  SERVICE AWARDS IN THE AMOUNT OF $5,000 EACH ARE APPROPRIATE

The Settlement Agreement provides a Service Award of $5,000 payable to each Named Plaintiff, for a total sum of $10,000. Exhibit "B", §3.5. The proposed Service Awards represent .002, or approximately less than one quarter of one percent of the $5,000,000 Maximum Settlement Fund. The proposed Service Awards are disclosed in the Class Notice, and not one Settlement Class Member objected. Exhibit "B-1"; Ex.1, Kostas Decl., ¶23; Ex. 2, Pirrung Decl., ¶14.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* All of the factors support payment of the proposed Service Awards.

This case was commenced on April 5, 2011. The Settlement Agreement was signed in March 2017. During this time Named Plaintiffs spent a significant amount of time on this case. They travelled for their depositions, reviewed transcripts, consulted with Class Counsel as

21

necessary, assisted in the preparation of and responses to discovery, made themselves available when the two (2) mediations were conducted, and reviewed and approved the Settlement Agreement. Garcia and Rednour estimated that they spent approximately 64, and 61 hours, respectively, on this case. Ex. 5, Garcia Decl., ¶6; Ex. 6, Rednour Decl., ¶6.

## VII.    CONCLUSION

Named Plaintiffs respectfully request that the Court grant their unopposed Motion for Final Approval, attorneys' fees and costs ($1,750.000 and $38,541.80), Service Awards ($10,000), administration costs ($84,968), and enter the Proposed Order.


Dated: June 30, 2017                              Respectfully submitted,


                                                  s/ Douglas M. Werman_____
                                                  One of Named Plaintiffs' Attorneys