**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GARCIA, et al., | ) | |
| | ) | Case No. 12-CV-03687 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge: Hon. Joan B. Gottschall |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**INDEX OF EXHIBITS TO MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF NAMED PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, SERVICE AWARDS,
AND ATTORNEYS' FEES AND COSTS**

Declaration of James C. Kostas In Support Of Named Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, and Attorneys' Fees and Costs ...Exhibit 1

    A) List of Kostas' Past and Present Class Actions
    B) Class Action Settlement Agreement
        1) Proposed Order Preliminarily Approving Settlement, Scheduling
            Hearing for Final Approval and Approving Proposed Class Notice.
        2) Proposed Class Notice.
        3) Proposed Order Granting Final Approval of Class Settlement.
        4) Implementation Schedule.

Declaration of Jeffrey L. Pirrung
(American Legal Claim Services, LLC Settlement Administration)................................Exhibit 2

Declaration of Douglas M. Werman ................................................................................Exhibit 3

Declaration of Sheldon A. Ostroff In Support Of Named Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, and Attorneys' Fees and Costs ...Exhibit 4

      A) Curriculum Vitae

Declaration of Laura Progo f/k/a Laura Garcia in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, and Attorneys' Fees and Costs ................................................................................................Exhibit 5

Declaration of Lore Rednour in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, and Attorneys' Fees and Costs........................Exhibit 6

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARCIA, et al., | ) | |
| | ) | Case No. 12-CV-03687 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge: Hon. Joan B. Gottschall |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JAMES C. KOSTAS IN SUPPORT OF NAMED PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS**

1.     I am one of the attorneys of record for the Named Plaintiffs in the above-captioned action and have personal knowledge, unless otherwise indicated, of each of the facts set forth herein, and if called upon as a witness could and would testify competently thereto.

2.     I am a member in good standing of the California State Bar. I was admitted on December 3, 1984. I am a principal in Huffman & Kostas, a partnership of professional corporations.

3.     I am eligible to appear before the California Supreme Court, all of the United States District Courts in California, and the United States Court of Appeals for the Ninth Circuit.

4.     I am also eligible to appear before this Court *Pro Hac Vice* and I am in good standing. I have complied with Supreme Court Rule 707. My registration number with the Attorney Registration and Disciplinary Commission is 6311803.

5.     Local counsel is Douglas M. Werman. I am informed that Mr. Werman is a member in good standing of the Illinois State Bar and a principal in Werman Salas P.C.

6.     The undersigned, California co-counsel Sheldon A. Ostroff, and Mr. Werman,

1

represent the Named Plaintiffs in this class action lawsuit.

7.     Virtually 100% of my work involves consumer class actions. We have a small office and I only work on a select few class actions (3 to 5) at any time. I have acted as Class Counsel in more than seventy-five (75) class actions and a representative list of those cases is attached to this declaration as Exhibit "A".

8.     I am submitting this declaration in support of Named Plaintiffs' unopposed motion for final approval of this class action settlement, as well as, an award of attorney's fees, costs (Counsels and administrative), and Named Plaintiffs' Service Awards[1].

9.     This case was jointly prosecuted with co-counsel Sheldon A. Ostroff and Douglas M. Werman. Although I participated in all phases of this litigation, the majority of my time, as set forth in paragraph 14 below, was spent obtaining the documents and data necessary to analyze and evaluate the claims in this case through informal and formal discovery, including several protracted discovery disputes, working with Names Plaintiffs' expert to analyze data and prepare damage models as required, extensive law and motion practice, including summary judgments and motions for class certification and decertification, preparing the data and briefs for the two (2) mediations and attending those mediations, negotiating and drafting the settlement agreement and related exhibits, preparing and revising the preliminary approval documents, monitoring, analyzing and ensuring that the case was administered consistent with the terms of the Settlement Agreement, and preparing and revising the final approval documents.

---

[1]The Settlement Agreement is attached as Exhibit "B" and provides that 1) Class Counsel may, subject to court approval, be paid $1,750,000 for attorneys' fees, 2) up to $75,000 for costs incurred in prosecuting this case, costs of administration of $84,968 may be paid, and that the Named Plaintiffs may, subject to Court approval, be paid a Service Award of $5,000 each.

10.     The history of this case and the basis for and nature of the settlement has been set forth in detail in the memorandum of points and authority filed in support of this motion and the unopposed motion for preliminary approval (*ECF,* No. 208), the undersigned's declaration filed herewith and in support of the motion for preliminary approval (*ECF,* No. 208-1), the declaration of Sheldon A. Ostroff filed herewith and in support of the motion for preliminary approval (*ECF,* No. 208-2), the declaration of Douglas M. Werman filed herewith and in support of the motion for preliminary approval (*ECF*, No. 208-3), the declaration of James R. Lackritz filed in support of the motion for preliminary approval (*ECF*, No. 208-4), the declarations of Named Plaintiffs, and the declaration of Jeffery Pirring of American Legal Claim Services, LLC, the Settlement Administrator.

11.     I will not restate the entire history of the case, or the facts surrounding the settlement, except for the summary set forth below and to state that I have read the above-referenced declarations, and that I concur with the statements contained in those declarations except as otherwise qualified in this declaration.

12.     Based upon my thirty-three (33) years of experience, it is my opinion that an excellent result was negotiated in this case.   This case was vigorously litigated for more than six (6) years, and the claims and defenses fully vetted.   JCPenney was represented by national law firms, and this case was staffed with senior attorneys well versed in wage and hour cases.   This case was only settled after a certification order was entered and with a mediator's proposal after two (2) mediations by different mediators more than two (2) years apart. That said, if this case was not settled, Named Plaintiffs would be compelled to defend the anticipated motion for decertification, establish liability and damages at trial or with a dispositive motion, and defend any appeals. As a result, and without reservation, this settlement, when juxtaposed with the current status of this case,

3

and the additional years of litigation that will be required to prevail, is an exceptional result. In the undersigned's experience, most cases settle for much less than 77% recovery.

13. The calculation of the approximate 77% recovery is based on the $5,000,000 Maximum Settlement Fund divided by Named Plaintiffs' theory of the case that estimated unpaid vacation at termination in the amount of $6,434,075 ($5,000,000/$6,434,075)[2]. After subtracting attorney's fees and the maximum allowed costs ($1,750,000 and 75,000, respectively), costs of administration ($84,968), and two $5,000 Service Awards ($10,000), the remaining Net Settlement Fund, estimated to be $3,080,032, will be distributed to the Settlement Class Members who were not required to file a claim to receive a Settlement Payment, and no money will revert to JCPenney.

14. The Settlement Class Members were afforded due process. The Settlement Administrator states in his declaration that the settlement was administered pursuant to the terms of the Settlement Agreement and the Preliminary Approval Order. The Settlement Administrator also reports in his declaration in paragraphs 9 and 13 that not one Settlement Class Member objected to these settlement terms and only 11 Settlement Class Member(s) filed a request for exclusion.

15. Based upon the foregoing, the declarations that were submitted in support of the unopposed motion for preliminary approval, the declarations submitted in support of this motion, and the administration of this settlement consistent with this Court's preliminary approval order, the undersigned submits that the settlement terms are fair, reasonable and adequate, and that an order granting final approval should be entered at this time.

16. The undersigned also submits the requested attorneys' fees and cost, Service Awards, and cost of administration are warranted based on the history of this case, are

---

[2] After adjusting for the *di minimis* payment, the value of the settled claims increases to $6,553,084. (*ECF*, No. 208-4, ¶8-9.)

reasonable, and should be approved.

17. This case, as all class actions, was prosecuted on a contingent fee basis. Named Plaintiffs could not have afforded to retain counsel on any basis other than a contingent fee to prosecute this case.

18. Class Counsel took the risk that they would obtain no recovery at all. After more than six (6) years of litigation Class Counsel obtained an excellent result and, as permitted by the Settlement Agreement, request 35% of the Maximum Settlement Fund as their attorneys' fee award.

19. The requested fee award is within the range received by the undersigned over the last 15 years, as well as the percentage generally received in contingent fee cases (25% to 40%). I am informed by Mr. Werman that his experience in the Illinois market place is similar. Werman Decl., ¶¶15-16.

20. The requested percentage of the fund is also at the low end of the *Redman* ratio, and in absolute terms, the Settlement class Members are receiving substantially more than Class Counsel (e.g., $3,080,032 v. $1,750,000).

21. The requested percentage of the fund is also appropriated based on:

    a.    the recovery (77.7%);
    b.    the nature and scope of the litigation [e.g., the case was not settled until it was fully vetted, discovery was complete (*ECF*, No. 112), and a class was certified (*ECF*, Nos. 183-184)];
    c.    the duration of the litigation (e.g., more than 6 years);
    d.    the experience, expertise and skill of Class Counsel; and
    e.    the absence of any objection.

22. My firm and Mr. Werman's firm have paid or incurred all of the expenses in this case. The total expenses paid or incurred are $38,541.80 and $381.87, respectively, for a total sum of $38,922.87. The expenses paid or incurred by the unsigned and are set forth in Exhibit "C"

attached hereto. Pursuant to the terms of the Settlement Agreement, up to $75,000 may be paid to Class Counsel for the expenses they have reasonably incurred in prosecuting this case. The requested litigation cost reimbursement was disclosed to the Settlement Class Members and not one Settlement Class Member objected. Class Counsel request that the Court authorize the payment of $38,922.87 for reasonable costs incurred.

23.     The $5,000 Service Awards requested for each of the Named Plaintiffs are appropriate. As explained the declarations of Sheldon A. Ostroff, Ms. Progo and Ms. Rednour, Class Counsel could not have prosecuted this case without their assistance. As further explained in the Named Plaintiffs' declarations, the time they spent, the inconvenience they incurred, the duration of the litigation, and the risks they took, amply justify the requested Service Awards in the amount of $5,000 each. The requested Service Awards were disclosed to the Settlement Class Members and the Settlement Administrator reports that not one Settlement Class Member objected to the payment of the requested Service Awards.

24.     Class Counsel discussed the administration of this case with several service providers. Class Counsel then narrowed the field to two (2) entities. The scope of service and price were discussed further. The initially bids were then revised several times. Ultimately, American Legal Claim Services provided the most service for the lowest price. The Settlement Administrator has diligently performed the services necessary to administer this settlement, and this Court should authorize payment to it in the amount of $84,968.

I declare under penalty of perjury under the laws of the United Sates and the State of California that the foregoing is true and correct.

Executed on June 22, 2017 in San Diego, California.

_____

James C. Kostas

6



# BIOGRAPHY

**James C. Kostas, Partner:  Huffman & Kostas**
<u>Practice Areas:</u> Consumer class actions, representative actions, employment law
<u>Admitted:</u> 1984, California; All state and federal California courts
<u>Education:</u> University of California San Diego (1979); University of San Diego School of Law (1984)

**Cases in which James C. Kostas has acted as lead counsel or co-lead counsel.**

*Stevens v. Robinsons-May* - Settled
San Diego Superior Court Case No. 729301
Unfair Business Practice - Labor

*King v. Nordstrom, Inc.* - Settled
San Diego Superior Court Case No. 731580
Unfair Business Practice - Labor

*Hahn v. Circuit City Stores, Inc.* - Settled
San Diego Superior Court Case No. GIC741306
Unfair Business Practice - Labor

*Delperdang v. Qwest Communications Corp.* - Settled
San Diego Superior Court Case No. GIC741310
Unfair Business Practice - Labor

*Raasch v. Orkin Exterminating Company, Inc.* - Settled
San Diego Superior Court Case No. GIC757801
Unfair Business Practice - Labor

*Villavicencio v. The TJX Companies, Inc.* - Settled
San Diego Superior Court Case No. GIC758206
Unfair Business Practice - Labor

*Jones v. The Explorer Insurance Company* - Settled
San Diego Superior Court Case No. GIC767188
Unfair Business Practices - Insurance

*Robinson v. J.C. Penney Company, Inc.* - Settled
San Diego Superior Court Case No. GIC741927
Unfair Business Practice - Labor

***Richardson v. Tenet Healthcare Corporation*** - Settled
San Diego Superior Court Case No. GIC744954
Unfair Business Practice - Labor

***Citizens v. The Limited Stores, Inc.*** - Settled
San Diego Superior Court Case No. GIC772694
Unfair Business Practice - Labor

***Citizens v. American Manufacturing Mutual Insurance Co.*** - Settled
San Diego Superior Court Case No. GIC794464
Unfair Business Practices - Violation of Insurance Code §11580.2

***Ostroff v. Kohler*** - Litigated
San Diego Superior Court Case No. GIC786054
Unfair Business Practice - Consumer Product

***Thornburg v. Bactes Imaging Solution, Inc.*** - Settled Following Appeal
Imperial County Superior Court Case No. L-01410
Unfair Business Practice - Violation of Evidence Code § 1158

***Gift Card Cases II (JCCP-Coordinated)*** - Settled
San Diego Superior Court JCCP No. 4362
Unfair Business Practice - CC § 1749.5

***Barksdale v. Wells Fargo Bank, N.A.*** - Resolved
San Diego Superior Court Case No. GIC798607
Unfair Business Practice - Labor

***Danford v. U.C. Media*** - Settled
San Diego Superior Court Case No. GIC785717
Unfair Business Practice - Unruh Act

***Molina v. New York Life*** - Settled
San Diego Superior Court Case No. GIC821137
Unfair Business Practice - Labor

***Gambini v. Regents of the University of California*** - Settled
San Diego Superior Court Case No. GIC824765
Unfair Business Practice - Violation of Evidence Code § 1158

***Rulla v. State Farm*** - Settled
San Diego Superior Court Case No. GIC 805951
Unfair Business Practice - Violation of Insurance Code § 11580.2

**Stone v. Bush Entertainment Corporation** - Settled
San Diego Superior Court Case No: GIC 837803
Unfair Business Practice - Labor

**Johnson v. Bank of America** - Settled
San Diego County Superior Court Case No: GIC857397
Unfair Business Practice - Labor

**Stanley v. Kelly Services, Inc.** - Settled
U.S. District Court, Case No. 06 CV 0690 LAB Wmc
Unfair Business Practice - Labor

**Adler v. Interactive Voice Media Sacramento Corp.** - Settled
Sacramento Superior Court Case No. 04AS01936
Unfair Business Practice - Unruh Act

**Citizens Against Unfair Treatment, Inc. v. Compaq Computer Corporation** - Settled
San Diego County Superior Court Case No. GIC 800679
Unfair Business Practice - Labor

**Alvarez v. Limited Express, LLC** - Settled
San Diego County Superior Court Case No. GIC856639
Unfair Business Practice - Labor

**Ghafour v. Wawanesa General Insurance Company** - Settled
San Diego County Superior Court Case No: GIC857012
Unfair Business Practice - Labor

**Collins v. Allstate Indemnity Company** - Litigated
San Diego County Superior Court Case No: GIC857011
Unfair Business Practice - Labor

**Delanzo v. Allstate Insurance Company** - Litigated
San Diego County Superior Court Case No: GIC856166
Unfair Business Practice - Labor

**Fimbrez v. Mercury Insurance Company** - Litigated
San Diego County Superior Court Case No: GIC857013
Unfair Business Practice - Labor

**Montpetit v. Interinsurance Exchange of the Automobile Club** - Litigated
San Diego County Superior Court Case No: GIC856160
Unfair Business Practice - Labor

**Northcote v. Hartford Casualty Insurance Company** - Litigated
San Diego County Superior Court Case No: GIC856165
Unfair Business Practice - Labor

**Olson v. Mercury Casualty Insurance Company** - Litigated
San Diego County Superior Court Case No: GIC856164
Unfair Business Practice - Labor

**Philips v. Farmers Insurance Exchange** - Litigated
San Diego County Superior Court Case No: GIC856161
Unfair Business Practice

**Quintana v. 21st Century Insurance Company** - Litigated
San Diego County Superior Court Case No: GIC857010
Unfair Business Practice

**Jerome v. Coast National Insurance Company** - Litigated
San Diego County Superior Court Case No: GIC857009
Unfair Business Practice

**Butts v. USAA Casualty Insurance Company** - Settled
U.S. District Court - Case No: 05CV2291 DMS (BLM)
Unfair Business Practice

**Chong v. State Farm Mutual Automobile Insurance Company** - Settled
U.S. District Court - Case No: 05CV2241 W (AJB)
Unfair Business Practice

**Ziman v. Liberty Mutual Fire Automobile Insurance Company** - Settled
U.S. District Court - Case No: 05CV2344 W (AJB)
Unfair Business Practice

**Casiple v. Medrec Services, Inc., et al.** - Settled
Orange County Superior Court - Case No: 06CC00075
Unfair Business Practice - Violation of Evidence Code § 1158

**Dall v. Medamerica Billing Services, et al.** - Settled
San Diego County Superior Court - Case No: GIC864291
Unfair Business Practice - Violation of Evidence Code § 1158

**Del Campo v. Per-Se Technologies, Inc., et al.** - Settled
Imperial County Superior Court - Case No: ECU03004
Unfair Business Practice - Violation of Evidence Code § 1158

**Herbers v. Smart Document Solutions, LLC, et al.** - Settled
Orange County Superior Court - Case No: 06CC00074
Unfair Business Practice - Violation of Evidence Code § 1158

**Peralta v. HRA Medical Management, Inc. et al.** - Settled
San Diego County Superior Court - Case No: GIC864244
Unfair Business Practice - Violation of Evidence Code § 1158

**Ramirez v. Correspondence Management Specialists, et al.** - Settled
San Diego County Superior Court - Case No: GIC864242
Unfair Business Practice - Violation of Evidence Code § 1158

**Reece v. Chart One, Inc.** - Settled
San Diego Superior Court Case No: GIC864290
Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158

**Sullivan v. Diversified Medical Records Services, Inc.** - Settled
San Diego County Superior Court - Case No: GIC864288
Unfair Business Practice - Violation of Evidence Code § 1158

**Tapia v. Healthcare Management Partners, LLC, et al.** - Settled
San Diego County Superior Court - Case No: GIC864289
Unfair Business Practice - Violation of Evidence Code § 1158

**Hlavac v. Citigroup Global Markets, Inc.** - Settled
San Diego Superior Court Case No: GIC 831641
Nature of Case: Unfair Business Practice - Labor

**Ramos v. Cedars-Sinai Medical Center** - Settled
Los Angeles Superior Court Case No: BC345281
Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158

**Stone v. Busch Entertainment Corporation** - Settled
San Diego Superior Court Case No: GIC837803
Unfair Business Practice - Labor

**Schaeffer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.** - Settled.
San Diego Superior Court, #GIC 796812
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time

**Machucho v. Volt Information Sciences, Inc.** - Settled
San Diego County Superior Court - Case No: 37-2008-00076583-CU-OE-CTL
Unfair Business Practice - Labor

**Gomez v. Lennar Corporation** - Settled
San Diego County Superior Court - Case No: 37-2007-00083630-CU-OE-CTL
Unfair Business Practice - Labor

**Piccirilli v. Hertz Local Edition Corp.** - Settled
U.S. District Court, Southern District of California - Case No: 07-CV-1370 JAH (RBA)
Unfair Business Practice - Labor

**Whyte v. The May Dept. Stores** - Settled
San Diego County Superior Court - Case No: GIC 873468
Unfair Business Practice - Labor

**Shin v. First Republic Bank** - Settled
San Diego County Superior Court - Case No: 37-2007-00067206-CU-OE-CTL
Unfair Business Practice - Labor

**Maninang v. Randstad** - Settled
San Diego Superior Court - Case No: 37-2010-00093130-CU-BT-CTL
Unfair Business Practice - Labor

**Johnson v. Robert Half International, Inc.** - Settled
San Diego Superior Court - Case No: 37-2009-00084135-CU-MC-CTL
Unfair Business Practice - Labor

**Harris v. Manpower, Inc.** - Settled following Ninth Circuit Appeal
United States District Court - Case No: 09-CV-2368-BEN-JMA
Unfair Business Practice - Labor

**Rodriguez v. Enterprise Holding, Inc.** - Settled
San Diego Superior Court - Case No: 37-2010-00103735-CU-BT-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

**Interbitzen v. Bank of America Corporation** - Settled
San Diego Superior Court - Case No: 37-2010-00099388-CU-BT-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

**Tschudy, Raymond v. J. C. Penney Corporation, Inc.** - In Litigation
San Diego Superior Court - Case No: 37-2011-00088964-CU-BT-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Exhibit "A"

**Huizar v. Bank of America Corporation - Settled.**
San Diego Superior Court - Case No: 37-2012-00095579-CU-BT-CTL
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

**Garcia v. J. C. Penney Corporation, Inc. - In Litigation**
United States District Court, Northern District of Illinois, Case No: 12-CV-03687
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

**Wright, et al. v. Kmart Stores of Illinois, Inc. - In Litigation**
Circuit Court of Cook County, Illinois, County Department, Chancery Division,
Case No: No. 2013CH07579
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

**Morris, et al. v. Sears, Roebuck and Co., et al. - In Litigation**
U.S. District Court for the Northern District of Illinois, Case No: 1:13-cv-00129
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

**Paprock v. First Transit, Inc. - On Appeal.**
San Diego Superior Court - Case No: 37-2010-00055583-CU-OE-NC
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

**Knatt and Lowe v. J.C. Penney Corporation, Inc. - In Litigation.**
U.S. District Court, Southern District of California
Case No: 3:15-CV-2516 (JM)(KS)
Unfair Business Practices - Labor
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| GARCIA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-03687 |
| | ) | |
| J.C. PENNEY CORPORATION, INC., et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is made and entered into by and between Named Plaintiffs Laura Progo, formerly Laura Garcia ("Progo", "Named Plaintiff" or "Class Representative"), Lore Rednour ("Rednour", "Named Plaintiff" or "Class Representative"), members of the Settlement Class as defined herein (the "Settlement Class Members")", and Defendant J.C. Penney Corporation, Inc., a Delaware corporation ("JCPenney" or "Defendant").

TABLE OF CONTENTS

Section 1.  RECITALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Section 2.  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Section 3.  PAYMENTS FROM THE MAXIMUM SETTLEMENT FUND . . . . . . . . . . . 12

Section 4.  PLAN OF ALLOCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 5.  COURT APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Section 6.  CLASS NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Section 7.  OBJECTIONS, REQUESTS FOR EXCLUSION, ADMINISTRATION AND
            OTHER DUTIES OF THE SETTLEMENT ADMINISTRATOR . . . . . . . . . . 18

Section 8.  RELEASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Section 9.  NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Section 10.  GENERAL TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## 1. RECITALS

These Recitals are an integral part of this Settlement Agreement.

1.1    J.C. Penney Corporation, Inc. ("JCPenney"), the defendant herein, owns and operates retail stores throughout the United States, including locations throughout the State of Illinois.

1.2    On April 5, 2011, the Named Plaintiffs Progo (formerly known as Garcia) and Rednour, along with several other named plaintiffs who resided in California (including named Plaintiff Raymond Tschudy), filed a putative class action in the Superior Court of California for the County of San Diego entitled *Tschudy v. J.C. Penney Corporation, Inc.* JCPenney removed the case to the United States District Court for the Southern District of California pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d). On April 27, 2012, the Southern District of California entered an order transferring the claims of the Illinois Named Plaintiffs to the United States District Court for the Northern District of Illinois, Eastern Division ("Court"). At the time of entry of the transfer order, the operative complaint was the Second Amended Complaint ("SAC").

1.3    The Named Plaintiffs alleged in the SAC that JCPenney's "My Time Off" vacation pay policy ("Vacation Pay Policy") violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq.*,  the Illinois Department of Labor ("IDOL") regulations, and Illinois common law and sought recovery of unpaid vacation pay, interest, penalties, attorneys' fees and costs on behalf of themselves and a putative class of certain JCPenney employees in Illinois.

1.4    After the case was transferred to this Court, the Parties engaged in significant written discovery, demanded and received a large amount of relevant documents and data.

including the employment history of all putative class members, took and defended depositions, and informally investigated the facts surrounding the claims settled by this Settlement Agreement.

1.5     After completing substantial investigation, extensive formal and informal discovery, and pre-settlement discussions, the Named Plaintiffs and JCPenney participated in a mediation before the Honorable Edward A. Infante, Magistrate Judge (Ret.).   The Parties did not reach a settlement at this mediation.

1.6     After completing additional discovery, conducting further investigations, updating the value of the asserted claims, and taking additional depositions, the Named Plaintiffs filed a motion for class certification on August 14, 2014.

1.7     On March 31, 2015, this Court denied the Named Plaintiffs' motion for class certification without prejudice.

1.8     On April 14, 2015, the Named Plaintiffs filed a Third Amended Complaint ("TAC") amending the proposed class definition.  On May 5, 2015, JCPenney filed its answer to the TAC.  The TAC is the operative complaint.

1.9     On July 2, 2015, the Named Plaintiffs filed a second motion for class certification.

1.10    On March 8, 2016, this Court granted the Named Plaintiffs' July 2, 2015 motion for class certification.  The Court certified a class consisting of: "all former [Part-Time Non-Management Associates] employed by JCPenney in Illinois and terminated between January 1, 2004 and [March 8, 2016]."  Dkt. 184 at 2.

1.11    After conducting further investigations and again updating the value of the asserted claims, the Parties participated in a second mediation on July 29, 2016 before David Rotman, Esq., a prominent labor lawyer and mediator.

1.12    The Parties did not reach a settlement at the second mediation.  Several days later, however, Mr. Rotman tendered a mediator's proposal.  The mediator's proposal was accepted by both Parties on September 1, 2016.

1.13    The Named Plaintiffs and Class Counsel (as defined below) believe that the Settled and Released Claims (as defined below) have merit and that the evidence developed to date supports their claims. However, the Named Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the claims through trial, appeals and any ancillary proceedings.  The Named Plaintiffs and Class Counsel also recognize the risk and uncertainty inherent in continuing this litigation, as well as the difficulties and delays that would result from any appeal.  When these factors are balanced with the terms of the Settlement, the Named Plaintiffs and Class Counsel believe that this Agreement confers substantial benefits upon the Class Members and is a fair, reasonable and adequate resolution of the Settled Claims.  As a result, the Named Plaintiffs and Class Counsel have concluded that the settlement set forth in this Settlement Agreement is in the best interest of the Settlement Class Members.

1.14    JCPenney has denied, and continues to deny, all liability with respect to any and all of the Settled and Released Claims and the facts alleged in support thereof, and further denies all charges of any wrongdoing or liability against it arising out of or relating to any conduct, acts, or omissions alleged, or that could have been alleged, in the Class Action.   JCPenney's willingness to resolve the Settled and Released Claims on the terms and conditions set forth in this Settlement Agreement is based on, among other things: (1) the time and expense associated with litigating the Settled and Released Claims through trial and any appeals; (2) the benefits of resolving the Settled and Released Claims, including limiting further expense, inconvenience and

distraction, by disposing of burdensome and protracted litigation, and permitting JCPenney to conduct its business unhampered by this litigation; and (3) the uncertainty and risks inherent in any litigation.

1.15    Based on the foregoing, and the definitions and terms and conditions set forth hereinafter, the Parties, for purposes of this Settlement only, conditionally stipulate and agree that the requisites for establishing class certification are met with respect to the Settlement Class and stipulate to certification of the class that is defined in subsection 2.36 below.

1.16    The Settlement Agreement is a result of adversarial, non-collusive, and arm's-length negotiations. Counsel for the Parties vigorously pursued their positions and the rights of their respective clients through extended legal and factual analysis, discovery, and exchanges of information over the course of the litigation.  There are no undisclosed side agreements between the Parties or their counsel.   The Settlement Agreement that follows contains the entire agreement between the Parties and their respective counsel.

## 2. DEFINITIONS

2.1    "CAFA Notice" means and refers to the notice required by 28 U.S.C. §1715(b).

2.2    "Class Action" means and refers to this lawsuit against JCPenney entitled *Garcia et al. v. J.C. Penney Corporation, Inc.*, No. 12-CV-03687 (N.D. Ill.).

2.3    "Class Counsel" means and refers to James C. Kostas, Huffman & Kostas; Sheldon A. Ostroff, the Law Offices of Sheldon A. Ostroff; and Douglas Werman, Werman Salas P.C.

2.4    "Class Notice" or "Notice Program" means and refers to the "Summary Notice of Class Action Settlement" attached hereto as Exhibit "2" that will be mailed to all Class Members at their last known address by U. S. Mail, first class postage prepaid.

2.5     "Court" means and refers to the United States District Court for the Northern District of Illinois, Eastern Division.

2.6     "Data" and/or "Settlement Class List" means and refers to the complete list of all Settlement Class Members that JCPenney has diligently and in good faith compiled from its records and provided to Plaintiffs' Counsel.  The Data is formatted in Microsoft Excel and includes each Settlement Class Member's (1) full name; (2) most recent mailing address; (3) most recent telephone number; (4) last four digits of his/her Social Security number; and (5) employment history data, which includes (a) dates of employment, (b) hours worked, (c) hourly rates of pay, and (d) vacation days usage and/or vacation days paid pursuant to the Vacation Pay Policy during the Settlement Class Period.  The Data and Settlement Class List are protected by the Confidentiality provision of Section 10.9 of this Settlement Agreement.

2.7     "Effective Date" means and refers to the latter of:  (1) if no timely objections are filed, or if any timely objections are filed but withdrawn prior to final approval, the date upon which the Court enters an order granting final approval of the Settlement Agreement; or (2) if timely objections are filed and not withdrawn, either the final resolution of any appeals timely filed, or the expiration of the time for filing or noticing any such appeals, provided that the Settlement Agreement is granted final approval.

2.8     "Excluded Class Member" means and refers to any Settlement Class Member who timely returns a Request for Exclusion that is completed pursuant to the terms of this Settlement Agreement.

2.9     "Final Approval Hearing" means and refers to the hearing at which the Named Plaintiffs will request that the Court: (1) approve the fairness, reasonableness, and adequacy of

the terms and conditions of this Settlement Agreement; (2) enter the Final Approval Order; (3) award Class Counsel attorneys' fees and costs; (4) award the Named Plaintiffs the requested Service Awards; (5) authorize the payment of Settlement Class Awards; (6) authorize the payment of the Settlement Administrator's costs; (7) enter an order permanently enjoining all Settlement Class Members who have not timely opted out from this Settlement Agreement from pursuing, or seeking to reopen, any of the Settled Claims; and (8) take other appropriate or necessary action as described herein.

2.10    **"Final Approval Order"** means and refers to the order or judgment entered by the Court at or contemporaneous with the Final Approval Hearing. The Parties shall submit a proposed order of Final Approval in the form attached hereto as Exhibit "3" setting forth, among other things, the terms of this Settlement Agreement, by incorporation or otherwise, for execution and entry by the Court. Upon entry of the Final Approval Order, the Parties agree to waive all rights to appeal, except that the Named Plaintiffs may appeal the award of Class Counsel's fees and/or costs if the sum awarded by the Court is less than the requested amount.

2.11    **"Implementation Schedule"** means and refers to the agreed upon dates for implementing the Settlement Agreement set forth herein and summarized in Exhibit "4" hereto. The terms of the Settlement Agreement shall control any ambiguity or inconsistency in the Implementation Schedule or between the Implementation Schedule and the Settlement Agreement.

2.12    **"JCPenney"** means and refers to J.C. Penney Corporation, Inc.

2.13    **"JCPenney's Counsel"** means and refers to the attorneys who have appeared in this Class Action on behalf of JCPenney, whether directly employed by or retained by JCPenney, including Gibson Dunn & Crutcher LLP.

2.14  "Maximum Settlement Fund" means and refers to the maximum amount of money JCPenney will be required to fund pursuant to this Settlement Agreement. The Maximum Settlement Fund is $5,000,000.00. The Maximum Settlement Fund shall include: (1) all payments to Participating Settlement Class Members; (2) Class Counsel's attorneys' fees and costs; (3) all Service Awards; and (4) all Settlement Administration Costs.

2.15  "Minimum Settlement Class Award" means and refers to the minimum amount that must be paid from the Net Settlement Fund (as defined below) to each Participating Settlement Class Member. The Minimum Settlement Class Award is $10.00.

2.16  "Named Plaintiffs" means and refers to Laura Progo and Lore Rednour.

2.17  "Net Settlement Fund" means and refers to the portion of the Maximum Settlement Fund remaining after deducting: (1) Class Counsel's attorneys' fees and costs, (2) all Settlement Administration Costs, and (3) the Named Plaintiffs' Service Awards. The Net Settlement Fund will be distributed to Participating Settlement Class Members. The amount to be deducted from the Maximum Settlement Fund currently approximates $1,919,968.00 ($1,750,000.00 + $75,000.00 + $10,000.00 + 84,968), and the Net Settlement Fund currently approximates $3,080,032.00.

2.18  "Notice Packet" means and refers to the "Class Notice" or "Notice Program" that will be mailed to each Class Member, substantially in the form attached hereto as Exhibit "2". Each Notice Packet will provide: (1) information regarding the nature of the Class Action; (2) a summary of the Settlement Agreement's principal terms; (3) the Settlement Class definition; (4) each Class Member's estimated individual Settlement Payment (as defined below); (5) the dates included by the Settlement Class Period; (6) instructions on how to submit Requests for Exclusion or Notices of Objection; (7) the deadlines by which the Settlement Class Member

must postmark or email Requests for Exclusion, or postmark Notices of Objection to the Settlement; and (8) the claims to be released.

2.19   **"Opt-Out Period"** means and refers to the period of time between the commencement of the Notice Program and the Response Deadline.

2.20   **"Participating Settlement Class Members"** means and refers to Settlement Class Members who do not file a Request for Exclusion before the expiration of the Opt-Out Period in the form specified in this Settlement Agreement and excludes Settlement Class Members who do not have an address known to or discovered by the Settlement Administrator after complying with Section 6.2 below.

2.21   **"Parties"** means and refers to the Named Plaintiffs and JCPenney.

2.22   **"Preliminary Approval Date"** means and refers to the date on which the Court enters an order preliminarily approving this Settlement Agreement and its attached Exhibits.

2.23   **"Preliminary Approval Order"** means and refers to the Order of the Court in a form attached hereto as Exhibit "1" granting preliminary approval of this Settlement Agreement, or as may be modified by subsequent mutual agreement of the Parties in writing and approved by the Court.

2.24   **"Released Claims"** means and refers to all claims, judgments, liens, losses, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, arising out of or relating to the causes of action asserted or which could have been asserted in the Class Action, including (and notwithstanding the theory on which such causes of action were, or could be, based) any and all claims for vacation pay, interest, penalties, attorneys'

fees, costs, and any other damages arising under the IWPCA, IDOL regulations, common law, or any equitable theory, known or unknown, that arise from or are based on JCPenney's alleged failure to pay Class Members all earned vacation at termination during the Settlement Class Period, or JCPenney's alleged failure to permit Class Members to earn vacation days during the Settlement Class Period pursuant to the Vacation Pay Policy.

2.25   **"Released Parties"** means and refers to JCPenney, JCPenney's current or former affiliates, parents, subsidiaries, holding companies, investors, divisions, employee benefit plans, or other related entities, as well as all of its and their past or present officers, directors, shareholders, partners, principals, agents, insurers, employees, attorneys, advisors, accountants, auditors, representatives, vendors, fiduciaries, insurers, reinsurers, trusts, trustees, heirs, executors, administrators, predecessors, successors or assigns of any of the foregoing, and each of them, both individually and in their official capacities.

2.26   **"Release Period"** means and refers to the period of January 1, 2004 through October 20, 2016.

2.27   **"Releasing Parties"** means and refers to the Named Plaintiffs and Settlement Class Members, and any agents, partners, affiliates, predecessors, successors, spouses, heirs, assigns, insurers, and any other persons or entities claiming by or through any of them.

2.28   **"Response Deadline"** means and refers to the deadline by which Settlement Class Members must postmark or email Requests for Exclusion to the Settlement Administrator or file Notices of Objection with the Court. The Response Deadline will be thirty (30) calendar days after the initial mailing date of the Notice Packet by the Settlement Administrator, unless the 30th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service maintains operations. Compliance

with the Response Deadline will be determined by the date of the postmark on the Request for Exclusion. To be timely and effective, a Settlement Class Member must submit a Request for Exclusion or a written objection to the Settlement Agreement before the Response Deadline.

2.29 **"Request for Exclusion"** means and refers to a timely written request that a Settlement Class Member must submit to the Settlement Administrator in order to be excluded from this Settlement. The Request for Exclusion must: (1) set forth the name, address, telephone number and last four digits of the Social Security Number of the Settlement Class Member requesting exclusion; (2) be signed by the Settlement Class Member; (3) be returned to the Settlement Administrator; (4) clearly state that the Settlement Class Member does not wish to be included in the Settlement; and (5) be postmarked on or before the Response Deadline.

2.30 **"Service Award"** means and refers to a payment from the Maximum Settlement Fund to the Named Plaintiffs in recognition of their service to the Class. Class Counsel shall seek Court approval of the Service Award for Progo and Rednour in the amount of Five Thousand Dollars ($5,000.00) each.

2.31 **"Settlement Account"** means and refers to the segregated account established and controlled by the Settlement Administrator in which the amount constituting the Maximum Settlement Fund will be deposited and from which any amounts are paid from the Maximum Settlement Fund. No other funds shall be comingled within the Settlement Account.

2.32 **"Settlement Administrator"** refers to American Legal Claim Services, LLC, the third party selected jointly by the Parties to administer the terms of this Settlement.

2.33 **"Settlement Administration Costs"** means and refers to all costs payable from the Class Settlement Amount to the Settlement Administrator for administering this Settlement Agreement, including, but not limited to: printing, distributing, and tracking documents for this

Settlement Agreement; tax reporting, distributing the Maximum Settlement Fund, and providing necessary declarations and reports, as requested by the Parties. Based on an estimated Settlement Class of approximately 38,645 Settlement Class Members, the Settlement Administration Costs are currently estimated to be $84,968.00.

2.34 **"Settlement Agreement"** means and refers to this Settlement Agreement and its exhibits.

2.35 **"Settlement Class"** means and refers to all Settlement Class Members except those who submit a valid Request for Exclusion.

2.36 **"Settlement Class Definition"** means and refers to all former Part-Time Non-Management Associates (i) employed by JCPenney in Illinois in that capacity between January 1, 2004 and October 20, 2016, and (ii) whose employment with JCPenney terminated between January 1, 2004 and October 20, 2016.

2.37 **"Settlement Class Members"** means and refers to the former Part-Time Non-Management Associates identified in the Data (as defined below) as (i) having been employed in Illinois by JCPenney in that capacity between January 1, 2004 and October 20, 2016, and (ii) whose employment terminated between January 1, 2004 and October 20, 2016.

2.38 **"Settlement Class Period"** means and refers to January 1, 2004 through October 20, 2016.

2.39 **"Settlement Orders"** means and refers to any orders entered to implement the terms of this Agreement, including, but not limited to, the Preliminary Approval Order and the Final Approval Order in the forms attached hereto as Exhibits "1" and "3", respectively.

2.40 **"Settlement Payment"** means and refers to that portion of the Net Settlement Fund paid to a Participating Class Member pursuant to the terms of this Settlement Agreement.

Settlement Payments shall be calculated pursuant to Section 4 below. The Settlement Payment amount will reflect a gross amount before deductions for the Participating Class Members' income, payroll, or other taxes required to be withheld and paid from the wage component of the Settlement Payments. The amount that remains after subtracting the employee's share of applicable state and federal tax withholdings, applicable payroll deductions, and other deductions required by state and local law and social security withholdings will be paid to Participating Settlement Class Members. JCPenney shall pay from its own funds the employer's tax obligations associated with each Settlement Class Award paid to Participating Class Members.

2.41    **"Settlement Termination"** means and refers to the election by JCPenney to exercise its right to terminate this Agreement pursuant to Section 10.29 below.

## 3. PAYMENTS FROM THE MAXIMUM SETTLEMENT FUND

3.1    **Funding Source.** JCPenney shall make a one-time deposit in the amount of the Maximum Settlement Fund to the Settlement Administrator on or before the tenth (10th) business day after the entry of final approval of the Settlement Agreement by the Court. The Maximum Settlement Fund shall be deposited into the Settlement Account and shall remain in that segregated account until disbursed, pursuant the terms of this Settlement Agreement.

3.2    **Class Counsel's Attorneys' Fees.** Class Counsel shall file a motion for approval of an award of attorneys' fees in an amount not to exceed $1,750,000.00, or 35% of the Maximum Settlement Fund, with the motion for final approval. JCPenney agrees not to oppose or impede such request. Subject to Court approval and the occurrence of the Effective Date, the Settlement Administrator shall pay from the Maximum Settlement Fund the sum of $1,750,000.00, or such lesser amount as may be awarded by the Court, within five (5) business days after receipt of the Maximum Settlement Fund from JCPenney. The Settlement

Administrator shall disburse such amount to Class Counsel by wire, as instructed by Class Counsel. Such attorneys' fees shall be distributed among Class Counsel in such proportions as Class Counsel shall in good faith determine represents each such counsel's contribution to the prosecution and resolution of the Class Action. Class Counsel agree that the amount of attorney's fees awarded by the Court shall constitute all attorneys' fees Class Counsel shall be entitled to be paid in this Class Action, and Class Counsel shall not make any further application for an award of attorneys' fees. Notwithstanding the foregoing, the Parties agree that Class Counsel may appeal any award that is less than $1,750,000.00.

    3.3    **Class Counsel's Costs.** Class Counsel shall also request approval in its motion for attorneys' fees of an award of actual and reasonable costs in an aggregate amount that does not exceed $75,000.00. JCPenney agrees not to oppose or impede such request. Subject to Court approval and the occurrence of the Effective Date, the Settlement Administrator shall pay from the Maximum Settlement Fund the sum of $75,000.00, or such lesser amount as may be awarded by the Court, as compensation for Class Counsel's actual and reasonable costs within five (5) business days after receipt of the Maximum Settlement fund from JCPenney. The Settlement Administrator shall disburse such amount by wire as directed by Class Counsel. The payment for costs shall be distributed among Class Counsel in such proportions as such costs were incurred by Class Counsel. Class Counsel agree that the amount of costs awarded by the Court shall constitute all costs Class Counsel shall be entitled to be paid in this Class Action, and Class Counsel shall not make any further application for an award of costs. Notwithstanding the foregoing, the Parties agree that Class Counsel may appeal any cost award that is less than $75,000.00, or the actual costs incurred, whichever is less.

    3.4    **Costs of Administration.** The costs of administration are currently estimated to

be $84,968.00. The Settlement Administration Costs will be paid from the Maximum Settlement Fund. The Settlement Administrator shall pay itself from the Maximum Settlement Fund an amount not to exceed $84,968.00, or such lesser amount as may be approved by the Court, within five (5) calendar days after receipt of the Maximum Settlement Fund from JCPenney, for work performed, subject to prior written approval by the Parties. Other than the amount described in this section, no Party, Settlement Class Member, or Counsel shall be responsible for the payment of any additional cost of administration. If the Settlement Agreement does not receive final approval, JCPenney shall be liable for all costs of administration incurred by the Settlement Administrator through the date of termination of the Settlement Agreement unless the Representative Plaintiffs cause the Settlement Agreement to be terminated, in which case, the Representative Plaintiffs shall be liable for the payment of administrative costs incurred through the date of termination.

     3.5    **Service Awards**. Class Counsel shall request Service Awards payable to the Named Plaintiffs, Progo and Rednour, in the amount of Five Thousand Dollars ($5,000.00) each. The Service Awards shall compensate the Named Plaintiffs for the additional efforts that they undertook on behalf of and for the benefit of all Class Members, and are in addition to any Settlement Payments they may receive pursuant to this Agreement. JCPenney agrees not to impede or oppose such request. The Settlement Administrator shall pay from the Maximum Settlement Fund an amount not to exceed Five Thousand Dollars ($5,000.00) each, or such lesser amount as may be awarded by the Court, for payment to Named Plaintiffs no later than eighteen (18) calendar days after receipt of the Maximum Settlement Fund from JCPenney. Service Awards approved by the Court shall be made payable to the Named Plaintiffs and provided to Huffman & Kostas, Attn: James C. Kostas for delivery to Named Plaintiffs. The Settlement

Administrator shall report the Service Awards as non-wage income on an IRS Form 1099. Other than any reporting of this payment as required by this Settlement Agreement or law, the Named Plaintiffs shall be solely responsible for the reporting and payment of any federal, state and/or local income or other form of tax on any payment made pursuant to this Section.

3.6     **Settlement Payments.** The Settlement Administrator shall mail the Settlement Payments to Participating Settlement Class Members, less any required employee payroll and withholding taxes, no later than eighteen (18) calendar days after receipt of the Maximum Settlement Fund from JCPenney.

3.7     **Employment Taxes.** All individual Settlement Payments paid to Participating Settlement Class Members will be paid in a net amount after deducting that individual's applicable state and federal tax withholdings, applicable payroll deductions, any other deductions required by state and local law, and social security withholdings.

3.8     **Employer's Share of Employment Taxes.** Within ten (10) business days of receiving the amounts calculated for individual Settlement Payments from Class Counsel, the Settlement Administrator shall provide JCPenney with a report detailing the amounts to be paid to each Participating Settlement Class Member. The employer's share of any payroll taxes or other required taxes or withholdings attributable to the wage component of the Settlement Payments shall be paid by JCPenney from its general assets.

3.9     **Tax Allocation.** For income and payroll tax purposes, the Parties agree that Settlement Payments shall be allocated as 1/3 wages, 1/3 penalties, and 1/3 interest. Other than withholding and reporting responsibilities to be completed by the Settlement Administrator and/or JCPenney as to the wage component of the Settlement Payments, Named Plaintiffs and

Participating Class Members shall be solely responsible for the payment of any federal, state and/or local income or other taxes on the Settlement Payments and Service Awards.

## 4. PLAN OF ALLOCATION

4.1 **General Requirements.** Each Participating Settlement Class Member shall receive a Settlement Payment from the Net Settlement Fund that represents a percentage of the total amount of alleged un-earned and/or unpaid vacation days that he or she might have claimed was owed to him or her at the time of termination under Plaintiffs' theory of the case. Participating Settlement Class Members are not required to submit a claim, or take any action, to receive a Settlement Payment.

4.2 **Settlement Payments.**

4.2.1 **Calculation.** The gross value of each Class Member's Settlement Payment will be calculated by Class Counsel based on the Data. The amount awarded to each Participating Settlement Class Member shall be calculated as a pro rata portion of his or her total alleged vacation pay claim using a fraction in which the sum of the value of all alleged unpaid vacation days for all Settlement Class Members is the denominator, and the numerator is the Net Settlement Fund. For example, if the numerator is $3,000,000.00 and the denominator is $6,550,000.00, the percentage recovery, after deducting all fees, costs and expenses, is approximately 46%. This percentage is multiplied by the amount of the vacation pay allegedly owed to each Participating Settlement Class Member to determine the gross value of his or her individual Settlement Payment. The wage component, one-third of the Settlement Payment, will be subject to applicable state and federal tax withholdings, applicable payroll deductions, any other deductions required by state and local law, and social security withholdings as calculated

by the Settlement Administrator, subtracted from the Settlement Payment, and the remainder will be paid to the Participating Settlement Class Member.

4.2.2 **De minimis Claims.** Notwithstanding Section 4.2.1 above, any Participating Settlement Class Member whose Settlement Payment amount is calculated to be less than or equal to $10.00 shall be paid $10.00.

## 5. COURT APPROVAL

5.1 **Preliminary Approval.** The Parties shall jointly move the Court for an order granting preliminary approval of this Settlement Agreement, including the proposed Class Notice, on or before the date specified in the Implementation Schedule attached hereto as Exhibit "4" with a mutually acceptable proposed Preliminary Approval Order substantially in the form attached hereto as Exhibit "1".

5.2 **Objections, Requests for Exclusion and Claims.** The Preliminary Approval Order shall specify, among other things, that Class Members shall have 30 calendar days from the date the Notice Packets are mailed (the "Response Deadline") to file and serve objections to the approval of this Settlement Agreement or request to be excluded from this Class Action.

5.3 **Final Approval.** If the Agreement has not been terminated in accordance with Section 10.29 below, the Parties shall, on or before the date specified in the Implementation Schedule attached hereto as Exhibit "4", file a motion for final approval with a mutually acceptable proposed Final Approval Order substantially in the form attached hereto as Exhibit "3".

## 6. CLASS NOTICE

6.1 **Mailed Notice.** The Settlement Administrator will verify the most recent mailing address information contained in the Data by (i) processing the Class List through the United

States Postal Service's National Change of Address ("NCOA") database; and (ii) performing address searches using Accurint, or a similar search engine or database. The Settlement Administrator shall furnish this information to Class Counsel. Class Counsel shall calculate individual Settlement Payment amounts and shall furnish this information to the Settlement Administrator before the hearing on the motion for preliminary approval. Within seven (7) calendar days of an order granting preliminary approval of the settlement, the Settlement Administrator shall send by first class mail, postage prepaid, the Notice Packet approved by the Court to each Class Member. Within ten (10) business days after the Response Deadline, the Settlement Administrator will provide to Class Counsel and JCPenney the list of Participating Settlement Class Members, which shall exclude individuals who filed a timely Request for Exclusion.

6.2 **Returned Mail.** Any Notice Packet returned to the Administrator as non-deliverable shall be sent to the forwarding address, if any, provided with the returned Notice Packet. If there is no forwarding address provided, the Settlement Administrator shall utilize commercially reasonable means to obtain a current address and, if a current address is located, promptly re-mail the Notice Packet. If the procedures in this paragraph are followed, and the Notice Packet is still returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall be deemed to have satisfied its obligation to provide the Class Notice to the Settlement Class Member, and the intended recipient shall nevertheless remain a Class Member and will be bound by all the terms of the Settlement Agreement and Final Approval Order.

## 7. OBJECTIONS, REQUESTS FOR EXCLUSION, ADMINISTRATION AND OTHER DUTIES OF THE SETTLEMENT ADMINISTRATOR

7.1 **Objections.** The Class Notice shall inform Class Members that if they wish to object to the Settlement Agreement they must provide a written statement to the Court and serve

it on Counsel for the Parties before the Response Deadline. To object to the Settlement Agreement, a Class Member must file a valid Notice of Objection with the Court and serve it on the Parties on or before the Response Deadline. The Notice of Objection must be signed by the Class Member and must contain all information required by this Settlement Agreement. The filing date will be deemed the exclusive means for determining whether the Notice of Objection is timely. No Class Member shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the Settlement Agreement, and no written objections or briefs submitted by any Class Member shall be received or considered by the Court at the Final Approval Hearing, unless written notice of the Class Member's intention to appear at the Final Settlement Hearing, and copies of any written objections or briefs, have been filed with the Court and served on Counsel for the Parties on or before the Response Deadline. Class Members who fail to file and serve timely written objections as required by this Settlement Agreement shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement or the Final Approval Order. At no time will any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement Agreement or appeal from the Order and Judgment.

7.2 **Request for Exclusion (Opt Out).** The Class Notice shall inform Class Members that they may exclude themselves from the Settlement Agreement. If a Class Member elects to opt out, the Class Member must submit a timely, written Request for Exclusion (as defined above) on or before the Response Deadline. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine if a Request for Exclusion is timely. Any Class Member who requests exclusion from the Class Action will not be entitled to

any Settlement Payment, will not be bound by the Settlement Agreement, and will not have any right to object, appeal or comment on the Settlement. Class Members who fail to submit a valid and timely Request for Exclusion on or before the Response Deadline shall be bound by all terms of the Agreement and the Final Approval Order. If a complete and properly executed Request for Exclusion is not timely received by the Settlement Administrator, then that Class Member will have forever waived his or her right to opt out of this Class Action. No later than ten (10) business days after the expiration of the Response Deadline, the Settlement Administrator shall provide Counsel for the Parties with a complete list of all Class Members who submitted Requests for Exclusion.

     7.3    **Request for Inclusion in Class.** If an individual does not receive the Class Notice but communicates with Class Counsel or the Settlement Administrator on or before the Response Deadline to inquire about whether they are a Settlement Class Member, or asserts that they are a Settlement Class Member, Class Counsel or the Settlement Administrator shall notify JCPenney about the communication within three (3) business days of the communication. JCPenney shall review its records to determine whether the employee is or is not a Settlement Class Member and inform Class Counsel within five (5) business days of its determination and the reasons for its decision. If the Parties are unable to reach agreement on whether the employee is a Settlement Class Member, the Settlement Administrator shall make the final binding determination based on information provided by JCPenney, Class Counsel, and the employee.

     7.4    **Claims Administration.** The Settlement Administrator shall administer this Settlement as follows:

Case: 1:12-cv-03687 Document #: 203-1 Filed: 05/22/17 Page 45 of 139 PageID #:3059

**7.4.1   Direct Payment of Settlement Awards to Participating Settlement Class Members.** Participating Settlement Class Members are not required to submit a claim, or take any action, to receive a Settlement Award.

**7.4.2   Disputed Settlement Payments.** Each Class Notice will specify the amount of the Settlement Class Member's estimated Settlement Payment. If the Settlement Class Member disagrees with the estimated amount, he or she will be required to provide documentation to the Settlement Administrator supporting his/her assertion.  If the Settlement Class Member does not submit documentation to support his/her assertion, it shall be conclusively presumed that the estimated Settlement Payment on the Class Notice prepared by the Settlement Administrator is correct.  If the Class Member provides documentation to support his/her contention that the estimated Settlement Payment is incorrect, the Settlement Administrator shall examine payroll records maintained by JCPenney with regard to the Settlement Class Member and decide the dispute. The Settlement Administrator's decision will be final.

**7.4.3   Notification of Proposed Settlement Payments.**  Within fourteen (14) calendar days after the Response Deadline, the Settlement Administrator shall send a report to Counsel for the Parties indicating the Settlement Payments to be paid from Net Settlement Fund and to whom the payments are being paid. The report shall also provide a final list of all Settlement Class Members who file a timely Request for Exclusion.

**7.4.4   Payment of Settlement Payments.** Settlement Payments shall be paid by the Settlement Administrator no later than  eighteen (18) calendar days after JCPenney deposits the Maximum Settlement Fund in the Settlement Account.  The Settlement Payments shall be mailed using the procedure set forth in Section 6.2 above.  The Settlement Administrator is not

required to mail a Settlement Payment to any Class Member whose Notice Packet was returned as undeliverable after complying with Section 6.2 above. If any Settlement Payments are returned as undeliverable, the Settlement Administrator shall comply with the procedure set forth in Section 6.2 above. Any Settlement Payments that remain undeliverable shall be treated the same as a "failure to cash" after the expiration of one hundred eighty (180) calendar days from the date of issuance.

      7.4.5 **Failure to Cash.** A Participating Class Member must present his or her Settlement Award check for payment within one hundred eighty (180) calendar days from the date the Settlement Payment check was issued. The amount of any Settlement Payment checks that are not negotiated within 180 days of being issued shall be distributed to the Legal Assistance Foundation (http://www.lafchicago.org/), a non-profit organization that has a principal purpose of promoting or providing services that would be eligible for funding under the Illinois Equal Justice Act, 30 Ill. Comp. Stat. 765/1 *et seq*. Thereafter, the Settlement Administrator shall terminate the Settlement Fund.

      7.4.6 **Tax Liability, Withholding, Payment and Reporting.** Concurrently with its calculation of Settlement Class Members' portions of applicable taxes, the Settlement Administrator shall calculate the employer's portion of the payroll tax and shall notify JCPenney of that amount on the date the Notice Packets are mailed. JCPenney shall be solely and exclusively responsible for the payment of the employer's portion of the payroll tax relating to the Settlement Payments from the Maximum Settlement Fund. The Settlement Administrator shall also calculate each Settlement Class Member's portion of the payroll and other tax withholdings and deductions (Federal income taxes, State income taxes, employee's share of FICA taxes and other State-specific statutory deductions) from the wage component of the

Settlement Payments, deduct such amounts from the Settlement Payments, and pay such amounts to the appropriate federal, state, and/or local authorities in connection with those Settlement Payments that are cashed by Participating Settlement Class Members. The Settlement Administrator shall timely report each Settlement Payment on an IRS Form W-2 and IRS Form 1099 to each Participating Class Member who cashes his or her Settlement Payment. The Settlement Administrator shall also timely report on an IRS Form 1099 any non-wage payments, including the Service Award and Class Counsel's attorneys' fees and costs. Other than withholding and reporting responsibilities to be completed by the Settlement Administrator, Participating Settlement Class Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on non-wage payments received pursuant to this Settlement.

7.4.7 **Final Accounting.** No later than sixty (60) calendar days after the expiration of the one hundred eighty (180) calendar days set forth in Section 7.4.6 above, the Settlement Administrator shall submit to the Parties and file with the Court a final written accounting under oath of all monies paid from the Maximum Settlement Fund to certify the completion of the administration of the Settlement Agreement.

7.4.8 **Maintenance of Records.** In addition to any other specific requirement in this Agreement, the Settlement Administrator shall maintain complete, accurate, and detailed records regarding the administration of the Maximum Settlement Fund, including, but not limited to, requests for correction or supplementation, dispute resolutions, employee and withholding tax calculations, IRS and state tax forms, including W-2s and 1099s, and any and all receipts by and disbursements from the Maximum Settlement Fund. The Settlement Administrator shall make such records available to Counsel for the Parties or to their designee upon reasonable request and

at reasonable times. Upon request, the Settlement Administrator shall provide such records to Counsel for the Parties in electronic form. The Settlement Administrator shall provide Counsel for the Parties with weekly reports of the number of valid Requests for Exclusion and Objections to the Settlement. The Settlement Administrator shall maintain all records for a period of not less than four (4) years following the expiration of the Effective Date.

## 8. RELEASES

8.1     **Exception.** The releases in this Agreement do not apply to the obligations and rights created by this Agreement.

8.2     **Named Plaintiffs.** Upon the Effective Date, in addition to the claims being released by all Participating Settlement Class Members, the Named Plaintiffs release and forever discharge the Released Parties, to the fullest extent permitted by law, from any and all claims, known and unknown, asserted and not asserted, which they have or may have against the Released Parties as of the date of execution of this Settlement Agreement. The releases include, but are not limited to, all disputes relating to or arising out of any state, local, or federal statute, ordinance, regulation, order, or common law, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.; the Civil Rights Act of 1866, as amended, 42 U.S.C. Sections 1981, et seq.; the Equal Pay Act, as amended, 29 U.S.C. § 206(d); the Fair Labor Standards Act of 1939, as amended, 29 U.S.C. § 201, et seq. and Code of Federal Regulations; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. § 12100, et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. and any state law equivalent; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.; the National Labor Relations Act, as amended, 29 U.S.C. § 151; other statutory and common law claims; statutory or common

24

law rights to attorneys' fees and costs, penalties/fines, and/or punitive damages; any action based on contract, quasi-contract, quantum meruit, implied contract, tort, wrongful or constructive discharge, breach of the covenant of good faith and fair dealing, defamation, libel, slander, immigration issues, infliction of emotional distress, negligence, assault, battery, conspiracy, harassment, retaliation, discrimination on any basis prohibited by statute or public policy, conversion, any interference with business opportunity or with contract or based upon any other theory; and/or similar causes of action. In exchange for this General Release, JCPenney shall pay Progo and Rednour each a Service Award and their Settlement Payments as set forth in this Settlement Agreement and approved by the Court.

8.3    **Settlement Class Members.** All Settlement Class Members who do not file a Request for Exclusion by the Response Deadline release on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, and forever discharge the Released Parties from the Released Claims.

## 9. NOTICES

9.1    **Designated Recipients.** Unless otherwise specified in this Settlement Agreement or agreed to in writing by the Party receiving such communication, all notices, requests, or other required communications hereunder shall be in writing and shall be sent by one of the following methods: (a) first class mail, postage prepaid; (b) by facsimile, with the original by first class mail; or (c) by personal delivery (including by Federal Express or other courier service). All such communications shall be sent to the undersigned persons at their respective addresses as set forth herein below:

> <u>Class Counsel</u>
> Sheldon A. Ostroff
> LAW OFFICES OF SHELDON A. OSTROFF, APC
> 1441 State Street

San Diego, California 92101
Telephone: (619) 544-0881
Fax: (619) 544-0892

James C. Kostas
HUFFMAN & KOSTAS, APC
1441 State Street
San Diego, California 92101
Telephone: (619) 544-0880
Fax: (619)544-0892

JCPenney's Counsel
Catherine A. Conway
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
Fax: (213) 229-7520

9.2    **Changes in Designated Recipients**. Any Party may re-designate the person to receive notices, requests, demands, or other communications required or permitted by this Settlement Agreement by providing written notice to the other Party and the Settlement Administrator.

## 10. GENERAL TERMS

10.1    **Admissibility.**   This Settlement Agreement, any negotiations or proceedings related hereto, the implementation hereof, and any papers submitted in support of the motions for approval of this Settlement Agreement, shall not be construed as, nor deemed to be evidence of, any admission or concession by any of the Parties or any other person regarding liability, defenses, or the appropriateness of class treatment, and shall not be offered or received in evidence in any action or proceeding for any purpose whatsoever other than to obtain Settlement Orders or to implement or enforce this Settlement Agreement, or any of the terms of this Settlement Agreement.

10.2    **Assignment.**   The Named Plaintiffs represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer,

Case: 1:12-cv-03687 Document #: 203-1 Filed: 05/22/17 Page 46 of 139 PageID #:3256

or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged, except as set forth in this Settlement Agreement.

10.3 **Authority**. Counsel for the Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement and to take all action required or permitted to be taken by such Parties pursuant to this Settlement Agreement and to execute any other documents to effectuate the terms of this Settlement Agreement. The person(s) signing this Settlement Agreement on behalf of JCPenney represent and warrant that he/she are authorized to sign this Settlement Agreement on behalf of JCPenney.

10.4 **Beneficiaries**. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto.

10.5 **CAFA Notice**. JCPenney shall be responsible for ensuring that notice of this proposed settlement (to which a copy of the Settlement Agreement is attached) is effectuated as required by 28 U.S.C. §1715(b) within ten (10) days after the filing of the motion for preliminary approval.

10.6 **Captions and Interpretations**. Section titles or captions contained in this Agreement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision.

10.7 **Choice of Law**. This Settlement Agreement shall be interpreted, enforced and governed by and under the laws of the State of Illinois and any action that is commenced to interpret or enforce this Settlement Agreement shall be brought before this Court.

10.8 **Class Counsel Signatories**. The Class Members are so numerous it is impossible or impractical to have each Settlement Class Member execute this Settlement Agreement. Instead, the Class Notice will advise all Settlement Class Members of the binding nature of this

Settlement Agreement and the releases being provided by Settlement Class Members as set forth in this Settlement Agreement. Excepting only the Settlement Class Members who timely submit a Request for Exclusion, the Class Notice shall have the same force and effect as if this Settlement Agreement was executed by each Settlement Class Member.

10.9 **Confidentiality.** Neither JCPenney, JCPenney's Counsel, the Named Plaintiffs, nor Class Counsel shall issue, authorize, or contribute to the preparation or dissemination of any press release or statement to anyone other than the Court or Class Members concerning the Class Action or this Settlement Agreement, or any of its terms, other than as necessary to effectuate the terms of this Settlement Agreement or as required by law, without the prior written approval of counsel for the other Party. The Parties agree that the Agreed Confidentiality Order entered by the Court on March 13, 2013 (Dkt. 90), remains in effect throughout the administration of this Settlement Agreement. The Parties further agree that they will keep the Data used to calculate Settlement Payment amounts, Settlement Class Member contact information, and any other information produced by JCPenney pursuant to the terms of this Settlement Agreement confidential, will take appropriate precautions to protect such information, and shall not use or disclose it for any purpose whatsoever other than solely for the purposes of effectuating this Settlement Agreement.

10.10 **Construction.** Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement. Hence, any construction of this Settlement Agreement shall not be construed against any of the Parties. Before declaring any provision of this Settlement Agreement invalid, the Court shall first attempt to construe the provisions as valid to the fullest extent possible consistent with applicable precedent so as to render all provisions of this Settlement Agreement valid and enforceable.

10.11 **Continuing Jurisdiction.** The Court shall retain jurisdiction to interpret, implement and enforce the terms of this Settlement Agreement, and all orders and judgments entered in connection therewith.

10.12 **Continuing Liability.** No person shall have any claim against JCPenney or any of the Released Parties, JCPenney's Counsel, the Named Plaintiffs, Class Members, or Class Counsel based on distributions or payments made in accordance with this Settlement Agreement.

10.13 **Costs of Administration.** Administrative Costs shall be paid pursuant to Section 3.4 above. Class Counsel and/or JCPenney's Counsel shall not have any responsibility or liability for any Administrative Costs.

10.14 **Counterparts.** This Settlement Agreement may be executed in one or more counterparts without affecting its enforceability. A facsimile or scanned signature shall have the same effect as an original signature and shall not affect the enforceability of this Settlement Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that Counsel for the Parties to this Settlement Agreement shall exchange among themselves signed counterparts.

10.15 **Data Reasonably Accurate.** The computation of claims and Settlement Payments is based on the Data supplied by JCPenney. JCPenney represents that, to the best of its knowledge and belief, all data supplied is reasonably accurate, and JCPenney further understands and acknowledges that this representation is a material term of this Settlement Agreement.

10.16 **Effect of Settlement Payments and Service Awards.** Neither the terms of this Settlement Agreement, nor any of the Settlement Payments or Service Awards paid to the Named Plaintiffs and/or any Participating Class Members, to the extent permitted by law, shall

Case: 1:12-cv-03687 Document #: 205-1 Filed: 05/22/17 Page 49 of 139 PageID #:3259

create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

10.17 **Entire Agreement**. This Settlement Agreement supersedes and replaces any and all other prior agreements and all negotiations leading up to the execution of this Settlement Agreement, whether oral or in writing, between the Parties with respect to the Settled and Released Claims. The Parties acknowledge that no representations, inducements, promises, or statements, oral or otherwise, have been made or relied upon by any of the Parties, or by anyone acting on behalf of the Parties, which are not embodied or incorporated by reference herein, and further agree that no covenant, representation, inducement, promise or statement not set forth in this Settlement Agreement shall be of any force or effect.

10.18 **Exhibits**. The terms of this Settlement Agreement include the terms set forth in any of the attached Exhibits "1" though "4", which are incorporated by this reference as though fully set forth herein. The Exhibits to this Settlement Agreement are an integral part of the Settlement Agreement. In the event of any conflict between the Settlement Agreement and the Exhibits, the terms of the Settlement Agreement shall control.

10.19 **Fair, Adequate, and Reasonable Settlement**. The Parties agree that, considering all of the facts and procedural and legal issues, the Settlement Agreement is fair, adequate, and reasonable, and will so represent to the Court.

Case: 1:12-cv-03687 Document #: 208-1 Filed: 03/22/17 Page 50 of 139 PageID #:2660

10.20 **Further Acts.** The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement Agreement, the Parties may seek the assistance of the Mediator or Court to resolve such disagreement.

10.21 **Implementation Schedule.** The Parties agree that the Implementation Schedule attached hereto as Exhibit "4" governs the implementation of the Settlement Agreement, and that the dates set forth in the Implementation Schedule shall only be continued based on (i) the mutual consent of the Parties, or (ii) unavoidable delays due to the Court's schedule or claims administration issues, and then, only to the extent of those delays. Notwithstanding the foregoing, if a date set forth in the Implementation Schedule is different than the date set forth in this Settlement Agreement, the date in the Settlement Agreement shall control.

10.22 **Injunctive Relief.** JCPenney contends that its Vacation Pay Policy was lawful at all times during the Class Period. JCPenney will not be required to agree to any injunctive relief as part of this Settlement Agreement.

10.23 **Lapse.** If this Settlement Agreement is not approved, or is terminated, rescinded, canceled, or fails to become effective for any reason, and the Effective Date does not occur, then no funds shall be paid from the Maximum Settlement Fund except for Administrative Costs, subject to Section 3.4 above, incurred to that point by the Settlement Administrator, and any previously paid monies, except such Administrative Costs, shall be returned to JCPenney by the person or entity who received such payment.

10.24 **Liability.** Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed as, or deemed to be, an admission of liability, culpability, negligence, or wrongdoing on the part of JCPenney. Each of the Parties has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, risk, and expense. This Settlement Agreement is a settlement document and shall be inadmissible as evidence in any proceeding except in an action or proceeding to approve, interpret, or enforce this Settlement Agreement.

10.25 **Modifications.** This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties and approved by the Court. No rights under this Settlement Agreement may be waived except in writing. However, if the Court refuses to enter orders granting Preliminary or Final Approval of this Settlement Agreement, the Parties will meet and attempt in good faith to reach an agreement to resolve the issues identified by the Court as the basis for withholding any such approval. If the Parties are unable to reach an agreement that is acceptable to the Court, this Settlement Agreement shall become void and shall be of no further effect, and JCPenney shall be entitled return of any monies paid or transferred as part of the Maximum Settlement Fund, or otherwise, except for Administration Costs incurred as of the date it is determined that this Settlement Agreement is a nullity.

10.26 **Named Plaintiffs' Duties.** The Named Plaintiffs agree to (1) sign this Settlement Agreement and by signing this Settlement Agreement are bound by its terms, (2) not file a Request for Exclusion, and (3) not object to any of the terms of this Settlement Agreement. Any violation of these duties shall be void and of no force and effect.

10.27 **Right of Appeal.** Class Members may not appeal from any Settlement Order unless a timely objection to this Settlement Agreement is filed. In addition, JCPenney and Class Counsel agree to waive the right to appeal from any Settlement Order with the sole exception that Class Counsel may appeal the award of attorneys' fees and costs if such award is less than the amounts set forth in Sections 3.2 and 3.3 above.

10.28 **JCPenney's Costs.** All of JCPenney's attorney's fees and costs incurred in the Class Action shall be borne by JCPenney from JCPenney's separate funds and not paid from the Maximum Settlement Fund , by any Class Member, the Named Plaintiffs, or by Class Counsel.

10.29 **Settlement Termination.** JCPenney, at its sole discretion, shall have the right but not the obligation, to revoke this Settlement Agreement if 5% or more of the Class Members timely file Requests for Exclusion from the Settlement Agreement. If JCPenney elects to terminate this Settlement Agreement, it must notify Class Counsel and the Settlement Administrator by 5:00 p.m. Pacific Standard Time on the tenth (10th) business day after it receives the final list of Excluded Class Members from the Settlement Administrator. If JCPenney does not provide the written notice required by this Section, it shall be deemed to have conclusively and forever waived the option to terminate this Settlement Agreement.

10.30 **Stay.** The Parties agree to stay all proceedings, except such proceedings as may be necessary to implement and complete the Settlement Agreement, pending the Final Approval Hearing.

10.31 **Tax Advice.** The Parties warrant, represent and agree that no Party has provided tax advice to another Party regarding responsibility or liability for any tax matters relating to any payments made under this Settlement Agreement including, but not limited to, the withholding of, or reporting of income.

10.32  **Judgment and Continued Jurisdiction.**  Upon final approval of the Settlement by the Court, the Parties will present the Judgment to the Court for its approval.  The Judgment will dismiss the case with prejudice.  After entry of the Judgment, the Court will have continuing jurisdiction solely for the purposes of addressing: (i) the interpretation and enforcement of the terms of the Settlement Agreement; (ii) Settlement administration matters; and (iii) such post-Judgment matters as may be appropriate under court rules or as set forth in this Settlement Agreement.

**AGREED TO AND ACCEPTED.**

Dated: 3-1-17

_____
LAURA PROGO, formerly LAURA GARCIA
Named Plaintiff

Dated: _____

_____
LORE REDNOUR
Named Plaintiff

Dated: _____

J.C. PENNEY CORPORATION, INC.

By:_____
Its:_____

**ATTORNEYS FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS:**

Dated: _____

HUFFMAN & KOSTAS

By:_____
James C. Kostas

Dated: _____

LAW OFFICES OF SHELDON A. OSTROFF

By:_____
Sheldon A. Ostroff

10.32 Judgment and Continued Jurisdiction. Upon final approval of the Settlement by the Court, the Parties will present the Judgment to the Court for its approval. The Judgment will dismiss the case with prejudice. After entry of the Judgment, the Court will have continuing jurisdiction solely for the purposes of addressing: (i) the interpretation and enforcement of the terms of the Settlement Agreement; (ii) Settlement administration matters; and (iii) such post-Judgment matters as may be appropriate under court rules or as set forth in this Settlement Agreement.

AGREED TO AND ACCEPTED.

Dated:

LAURA PROGO, formerly LAURA GARCIA
Named Plaintiff

Dated: _March 15t_
_2017_

_Lore Rednour_
LORE REDNOUR
Named Plaintiff

Dated:

J.C. PENNEY CORPORATION, INC.

By:_____
Its:_____

ATTORNEYS FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS:

Dated:

HUFFMAN & KOSTAS

By:_____
James C. Kostas

Dated:

LAW OFFICES OF SHELDON A. OSTROFF

By:_____
Sheldon A. Ostroff

10.32 **Judgment and Continued Jurisdiction.** Upon final approval of the Settlement by the Court, the Parties will present the Judgment to the Court for its approval. The Judgment will dismiss the case with prejudice. After entry of the Judgment, the Court will have continuing jurisdiction solely for the purposes of addressing: (i) the interpretation and enforcement of the terms of the Settlement Agreement; (ii) Settlement administration matters; and (iii) such post-Judgment matters as may be appropriate under court rules or as set forth in this Settlement Agreement.

AGREED TO AND ACCEPTED.

Dated: _____     _____
                                LAURA PROGO, formerly LAURA GARCIA
                                Named Plaintiff

Dated: _____     _____
                                LORE REDNOUR
                                Named Plaintiff

Dated: _____     J. C. PENNEY CORPORATION, INC.

                                By: _____
                                Janet Link
                                Its: EVP, General Counsel

ATTORNEYS FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS:

Dated: _____     HUFFMAN & KOSTAS

                                By: _____
                                James C. Kostas

Dated: _____     LAW OFFICES OF SHELDON A. OSTROFF

                                By: _____
                                Sheldon A. Ostroff

10.32  **Judgment and Continued Jurisdiction.**  Upon final approval of the Settlement by the Court, the Parties will present the Judgment to the Court for its approval.  The Judgment will dismiss the case with prejudice.  After entry of the Judgment, the Court will have continuing jurisdiction solely for the purposes of addressing: (i) the interpretation and enforcement of the terms of the Settlement Agreement; (ii) Settlement administration matters; and (iii) such post-Judgment matters as may be appropriate under court rules or as set forth in this Settlement Agreement.

**AGREED TO AND ACCEPTED.**

Dated: _____

_____
LAURA PROGO, formerly LAURA GARCIA
Named Plaintiff

Dated: _____

_____
LORE REDNOUR
Named Plaintiff

Dated: _____

J.C. PENNEY CORPORATION, INC.

By:_____
Its:_____

ATTORNEYS FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS:

Dated: 3-2-17

HUFFMAN & KOSTAS

By:_____
James C. Kostas

Dated: 3/2/17

LAW OFFICES OF SHELDON A. OSTROFF

By:_____
Sheldon A. Ostroff

34

Dated: March 1, 2017

WERMAN SALAS P.C.

Douglas M. Werman

ATTORNEYS FOR DEFENDANT:

Dated:

GIBSON, DUNN & CRUTCHER LLP

By:_____
Catherine A. Conway

_____
Douglas M. Werman

ATTORNEYS FOR DEFENDANT:

Dated:                                    GIBSON, DUNN & CRUTCHER LLP

                                          By: _____
                                          Catherine A. Conway

Case: 1:12-cv-03687 Document #: 203-1 Filed: 03/22/17 Page 59 of 139 PageID #:8269

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARCIA, et al.                    )
                                  )
                                  )    Case No.12-CV-03687
                                  )
          Plaintiffs,             )    Judge: Hon. Joan B. Gottschall
                                  )
     v.                           )
                                  )
J.C. Penney Corporation, Inc.     )
                                  )
          Defendant.              )

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT,
SCHEDULING HEARING FOR FINAL APPROVAL, AND
APPROVING PROPOSED CLASS NOTICE**

WHEREAS, Plaintiffs Laura Progo (formerly, Laura Garcia) and Lore Rednour (the "Named Plaintiffs") and Defendant J.C. Penney Corporation, Inc. ("JCPenney") (collectively, the "Parties") have jointly made application for an order preliminarily approving the settlement of this Class Action as identified and defined in the Class Action Settlement Agreement ("Settlement Agreement"), which, together with the exhibits attached thereto, sets forth the terms and conditions for a proposed settlement of the Class Action and for dismissal of the Class Action upon the terms and conditions set forth therein;

WHEREAS, the Court has read and considered the Settlement Agreement, the exhibits attached thereto, and the briefing and declarations submitted in support of preliminary approval of the Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    The definitions contained in the Settlement Agreement attached to the Declaration of James C. Kostas as Exhibit 2 in support of the motion for preliminary approval of the Settlement in this Class Action are incorporated herein by reference.

2.    The Court hereby preliminarily approves the Settlement Agreement and the Settlement set forth therein as being fair, reasonable and adequate. The Settlement Agreement is the result of arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues presented in the instant Class Action in particular.

3.    The Court finds, solely and exclusively for the purposes of the proposed Settlement Class, that with regard to the claims asserted by the Named Plaintiffs: (i) the number of Settlement Class Members is so numerous that joinder is impracticable; (ii) common questions of fact and law exist; (iii) the Named Plaintiffs' claims are typical of the Settlement Class Members' claims, and (iv) the Named Plaintiffs and Class Counsel adequately represent the interests of the Settlement Class Members. In addition, the Court finds that with regard to the Settlement Class Members, questions of law or fact common to the class predominate over questions affecting individual members, and a class action is superior to other available methods. Certification of the Named Plaintiffs' claims for settlement purposes is the best means for protecting the interests of all of the Class Members.

4.    The Court has considered the pleadings and arguments made by the Parties in support of the motion for preliminary approval of the Settlement Agreement, as well as the declarations submitted in support thereof, and finds that the proposed class defined in the Settlement Agreement is proper and should be certified for settlement purposes as defined herein

below. Solely for purposes of the proposed Settlement, a settlement class is hereby conditionally certified pursuant to Fed. R. Civ. Proc. 23 as follows:

> All former Part-Time Non-Management Associates (i) employed by JCPenney in Illinois in that capacity between January 1, 2004 and October 20, 2016, and (ii) whose employment with J.C. Penney terminated between January 1, 2004 and October 20, 2016.

5. After reviewing the qualifications of the applicants for appointment of Class Counsel, the Court does hereby approve James C. Kostas of Huffman and Kostas, Sheldon A. Ostroff of the Law Offices of Sheldon A. Ostroff and Douglas M. Werman of Werman Salas P.C. as Class Counsel for the Settlement Class.

6. The Court is satisfied that the Named Plaintiffs do not have any conflicts of interest with the absent Class Members and will be able to fairly and adequately protect the interests of the Class Members and therefore approves Laura Progo (formerly Laura Garcia) and Lore Rednour as Named Plaintiffs and class representatives for the Settlement Class.

7. The Court appoints American Legal Claim Services, LLC, as Settlement Administrator. The costs of settlement administration shall be paid pursuant to the terms of the Settlement Agreement.

8. The Court approves, as to form and content, the Class Notice attached as Exhibit 2 to the Settlement Agreement and finds that the distribution of the Class Notice as set forth in Section 6 of the Settlement Agreement: (1) meets the requirements of federal law and due process; (2) is the best notice practicable under the circumstances; and (3) shall constitute due and sufficient notice to all individuals entitled thereto. Notice of the proposed Settlement shall be provided in accordance with the Settlement Agreement. Non-substantive changes may be made to the Class Notice by agreement of the Parties without further order of this Court.

9.     All Class Members who do not opt out of the Settlement Class as described in the Class Notice shall be bound by all determinations and the judgment in this Class Action concerning the Settlement, whether favorable or unfavorable to the Settlement Class Members.

10.     Settlement Class Members shall not be required to submit a claim form to participate in the Settlement and receive a Settlement Award.

11.     Within thirty (30) days of the mailing of the Settlement Class Notice, Settlement Class Members objecting to the terms of the Settlement Agreement must do so in writing in accordance with the Settlement Agreement. The written objection must be served on the Parties' counsel of record and filed with the Clerk of the Court in accordance with the Settlement Agreement.

12.     Within thirty (30) days of the mailing of the Class Notice, Class Members who wish to exclude themselves from the Settlement must submit a written request for exclusion to the Settlement Administrator in accordance with the Settlement Agreement.

13.     Any Settlement Class Member may enter an appearance in the Class Action, at his or her own expense, individually or through counsel of his or her own choice. Any Settlement Class Member who does not enter an appearance or opt out of the Settlement Class will be represented by Class Counsel.

14.     A hearing, for purposes of determining whether the Settlement Agreement should be finally approved, shall be held before this Court on [insert date], 2017, at____ __.m., in Room 2325 of the U.S. District Court, 219 S. Dearborn Street, Chicago, Illinois 60604. At the hearing, the Court will hear arguments concerning whether the proposed Settlement of the Class Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable and adequate and should be approved by the Court. The Court will also hear at that time any

objections submitted by Class Members. The Court will also consider Class Counsels' request for an award of attorneys' fees and costs, the Service Awards to be paid to the Named Plaintiffs, and the payment to American Legal Claim Services, LLC, for administering the Settlement.

15.    Any member of the Settlement Class may appear at the final approval hearing and show cause, if any, why: (1) the proposed Settlement of the Class Action should or should not be approved as fair, reasonable, and adequate; (2) a judgment should or should not be entered thereon; (3) attorneys' fees and/or costs should or should not be awarded to Class Counsel; and/or (4) the Named Plaintiffs should or should not receive Service Awards. However, no Settlement Class Member, or any other person, shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement Agreement, or, if approved, the Judgment to be entered thereon approving the same, or, if awarded, compensation for the Named Plaintiffs, attorneys' fees, and/or costs awarded to Class Counsel, unless that person has, no later than thirty (30) days after mailing of Class Notice to the Settlement Class Members, served by hand or by first class mail on the Clerk of the Court and Class Counsel written objections and copies of any papers and briefs in support thereof explaining the basis of the objection in accordance with the Settlement Agreement. All timely filed and served objections shall be considered and ruled upon by the Court at the final approval hearing. Any Settlement Class Member who does not timely file and serve his or her objection in accordance with the Settlement Agreement shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlement contained in the Settlement Agreement, any award of attorneys' fees and costs awarded to Class Counsel, and any Service Award to the Named Plaintiffs, unless otherwise ordered by the Court.

16.    The Parties shall file all papers in support of final approval of the Settlement no later than ten (10) days prior to the final approval hearing.

17.    Class Counsel shall file their motion for an award of attorneys' fees and costs as part of the motion for final approval of the Settlement no later than ten (10) days prior to the final approval hearing.

18.    At the final approval hearing, the Court shall determine whether the proposed Settlement, any application for attorneys' fees or reimbursement of costs, the Named Plaintiffs' Service Awards, and the costs of the settlement administration shall be approved.

19.    The Court reserves the right to adjourn the date of the final approval hearing without further notice to the Settlement Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.


DATED: _____        _____
                                HON. JOAN A. GOTTSCHALL, U.S. DISTRICT
                                COURT JUDGE

EXHIBIT "2"

## NOTICE OF CLASS ACTION SETTLEMENT: J.C. PENNEY CORPORATION, INC.

**If you worked in Illinois for JCPenney as a Part-Time Non-Management Associate between January 1, 2004 and October 20, 2016, a class action settlement may affect your rights.**

## YOU ARE NOT REQUIRED TO APPEAR IN COURT OR TO MAKE A CLAIM TO RECEIVE THE BENEFITS OF THE SETTLEMENT.

A settlement has been proposed in a class action lawsuit filed against J.C. Penney Corporation, Inc. ("JCPenney"). The lawsuit, *Garcia, et al., v. J.C. Penney Corporation, Inc.,* Case No. 12-CV-03787, alleges that JCPenney violated the Illinois Wage Payment and Collection Act ("IWPCA") and Illinois Department of Labor regulations ("IDOL") by failing to pay all earned vacation pay to associates at termination under its "My Time Off" vacation policy. JCPenney denies all liability relating to this lawsuit.

You are receiving this notice because JCPenney's records reflect that you are a former JCPenney associate who worked as a Part-Time Non-Management Associate in Illinois between January 1, 2004 and October 20, 2016. JCPenney denies all liability but has agreed to make funds available to settle this action, and you are entitled to a share of that settlement amount. The United States District Court for the Northern District of Illinois (the "Court"), has authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to grant final approval of the Settlement.

### Who Is Included in the Settlement?

This class action settlement includes all former JCPenney associates who were employed by JCPenney in Illinois as Part-Time Non-Management Associates between January 1, 2004 and October 20, 2016 (the "Settlement Class Period") and whose employment with JCPenney ended during the Settlement Class Period.

### What Is this Lawsuit About?

The lawsuit claims that JCPenney failed to pay Illinois Part-Time Non-Management Associates all earned vacation pay at termination. You can ask questions about the lawsuit or review the Settlement Agreement by contacting Class Counsel, Law Offices of Sheldon A. Ostroff or Huffman & Kostas, 1441 State Street, San Diego, California 92101, (619) 544-0880, or by contacting the Settlement Administrator, American Legal Claim Services, LLC, at [address, telephone, email]. You may also review the Settlement Agreement on-line at [insert].

### What does the Settlement Provide?

The Parties estimate that after subtracting attorneys' fees and costs, administration costs, and the Named Plaintiffs' Service Awards, about $3,080,032.00 will be available for distribution to Class Members on a pro rata basis. If the pro rata amount of your Settlement Award is less than or equal to $10.00, you will receive $10.00. **Your Settlement Award is $▓▓▓▓. One-third of this amount is designated as wages from which payroll taxes and other required withholdings will be deducted.** Your estimated payment was calculated using JC Penney's employee records. For

a full explanation of how the payments are calculated, call Class Counsel or the Settlement Administrator, American Legal Claim Services, LLC, at [address, telephone, email], or review Section 4 of the Settlement Agreement on-line at [ insert].

Unless you exclude yourself from the Settlement by following the procedures explained below, you will release and forever discharge any and all claims that were pleaded in the Class Action, including, but not limited to, claims for wages, interest, penalties, attorneys' fees and costs, and damages arising under the Illinois Wage Payment and Collection Act, Illinois Department of Labor regulations, common law, or any equitable theory, and any related claims, known or unknown, that arise from or are based on JCPenney's alleged failure to pay all earned vacation pay at termination during the Class Period or JCPenney's alleged failure to permit Class Members to earn vacation during the Settlement Class Period.

### What Are My Options?

**YOU ARE NOT REQUIRED TO MAKE A CLAIM TO RECEIVE THE BENEFITS OF THE SETTLEMENT.** If the Court grants final approval of the Settlement, you will be mailed your Settlement Award and will not incur any legal fees.

If you do not want to be legally bound by the Settlement, you must exclude yourself by [insert date 30 days from mailing]. To do so, you must mail a written request for exclusion to the Settlement Administrator at the address below that states, in effect: "I worked for JCPenney in Illinois as a Part-Time Non-Management Associate. I request to be excluded from the settlement in Garcia v. JCPenney, Case No. 12-CV-03687, U.S. District Court for the Northern District of Illinois." The request must also include your full name, address, last four digits of your social security number, and telephone number, and you must personally sign the request. If you exclude yourself, you will not receive money from this Settlement, but you will retain your legal rights regarding any claims that you may have for allegedly unpaid vacation.

You may also object to the Settlement by [insert date 30 days from mailing]. If you want to object to the Settlement, you must file a written statement with the Court and mail a copy to the Parties' counsel by [insert date 30 days from mailing]. No Settlement Class Member shall be entitled to be heard at the Final Approval hearing or to object to the Settlement unless written notice of the Settlement Class Member's objection and intention to appear has been filed with the Court and mailed to the Counsel for the Parties by the deadline listed above. Notice to Class Counsel should be mailed to Law Offices of Sheldon A. Ostroff or Huffman & Kostas, 1441 State Street, San Diego, California 92101. Notice to JCPenney's counsel should be mailed to

Catherine A. Conway, Gibson, Dunn & Crutcher LLP, 333 South Grand Ave., Los Angeles, California 90071.

### How do I update my Address?

You must notify the Settlement Administrator of any changes in your mailing address so that your Settlement Award will be sent to the correct address. To update your mailing address, contact the Settlement Administrator, American Legal Claim Services, LLC, at [address, telephone, email] or Class Counsel, Law Offices of Sheldon A. Ostroff or Huffman & Kostas, 1441 State Street, San Diego, California 92101, (619) 544-0880.

### When is the Final Approval Hearing?

The Court will hold a hearing in this case on _____, 2017, at __ a.m., in Courtroom 2325, U.S. District Court for the Northern District of Illinois, 5985 Dearborn Street, Chicago, Illinois 60602. At that time, the Court will consider whether: (1) to approve the Settlement in the amount of $5,00,000.00; (2) to approve a request for a Service Award for Named Plaintiffs Laura Progo, formerly Laura Garcia, and Lore Rednour for their service to the Settlement Class Members in the amount of $5,000.00 each; (3) to approve a request by Class Counsel for an award of attorneys' fees of $1,750,000.00, and reasonable costs incurred of no more than $75,000.00incurred in litigating this Class Action; and (4) administration costs of the Settlement of approximately $84,968.00. You may appear at the hearing, but you are not required to do so.

**EXCEPT AS PROVIDED ABOVE, PLEASE DO NOT CONTACT THE COURT, DEFENDANT, OR DEFENDANT'S COUNSEL ABOUT THIS NOTICE**

Case: 1:12-cv-03687 Document #: 206-1 Filed: 06/22/17 Page 69 of 139 PageID #:3279

# EXHIBIT "3"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARCIA, et al.                              )
                                            )
                                            )     Case No. 12-CV-03687
                                            )
            Plaintiffs,                     )     Judge: Hon. Joan A. Gottschall
                                            )
    v.                                      )
                                            )
J.C. PENNEY CORPORATION, INC.               )
                                            )
                                            )
            Defendant.                      )

## [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT

This Court, having granted Preliminary Approval of the Settlement of the claims asserted

in the above-captioned matter on [ insert date] (ECF No. [insert]), having reviewed all filings in

connection with the Named Plaintiffs' Motion for Final Approval of Settlement Agreement of

Class Action Claims, and For an Award of Attorneys' Fees and Costs and other related materials

submitted by the Parties, as well as the presentation of Plaintiffs Laura Progo (formerly Laura

Garcia) and Lore Rednour (the "Named Plaintiffs") and Defendant J.C. Penney Corporation, Inc.

("JCPenney") (collectively, the "Parties") at the Hearing on Final Approval, and being fully

informed and good cause appearing therefore,

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1.      This Court has jurisdiction over the subject matter of this action and over all

Parties to this action pursuant to 28 U.S.C. § 1332(d)(2), including all Settlement Class Members

of the class preliminarily certified for settlement purposes only by the Order dated [insert] (ECF

No. [ insert], and defined as follows:

All former Part-Time Non-Management Associates (i) employed by JCPenney in

Illinois in that capacity between January 1, 2004 and October 20, 2016, and (ii) whose employment with J.C. Penney terminated between January 1, 2004 and October 20, 2016.

2.     The Court finds that the Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3). The Court certifies the Settlement Class defined hereinabove and in Section 2.36 of the Parties' Settlement Agreement for purpose of settling this Class Action.

3.     The Court finds that the Notice of Class Action Settlement ("Class Notice") satisfies Rule 23(c)(2)(B) and Rule 23(e)(1).   The Class Notice, sent to the Class Members via First Class Mail, adequately informed the Settlement Class Members of (1) the terms of the Settlement Agreement, (2) their estimated recovery, (3) that no action was required to receive a settlement payment, (4) their right to request exclusion from the Settlement and pursue their own remedies, and (5) their opportunity to file written objections and to appear and be heard at the hearing on final approval of the Settlement Agreement.   The Class Notice also adequately informed the Settlement Class Members of additional resources available for further information, including the telephone numbers of Class Counsel and the Settlement Administrator, as well as a website from which Class Members could obtain additional information and view documents regarding this action and the settlement.

4.     The Settlement was reached pursuant to arm's-length negotiations between the Parties and has the support of Class Counsel and Counsel for Defendant, both of whom have significant experience representing parties in complex class actions. The absence of any objections to the Settlement by the Class Members likewise supports approval of the Settlement. Finally, the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the Settlement.

5. The Maximum Settlement Fund in the amount of $5,000,000.00, as set forth in the Settlement Agreement, is a fair, reasonable and adequate settlement of the settled and Released Claims.

6. The Court finds that the Settlement is fair, reasonable, and adequate to all Class Members and hereby grants final approval of the proposed Settlement Agreement. The Court further finds that the strength of the Named Plaintiffs' case on the merits, weighed against Defendant's defenses, and the complexity, length, and expense of further litigation, support final approval of the Settlement Agreement at this time.

7. Within ten (10) business days of this Order, Defendant shall transfer the Maximum Settlement Fund of $5,000,000.00 to the Settlement Administrator.

8. Within eightteen (18) calendar days after receipt of the Maximum Settlement Fund, the Settlement Administrator shall mail all Participating Settlement Class Members their Settlement Awards from the Net Settlement Fund (the amount that remains after subtracting Court-awarded attorneys' fees and costs, the Settlement Administrator's fee, and Named Plaintiffs' Service Awards). Pursuant to the terms of the Settlement Agreement, one-third (1/3) of each Settlement Award shall be allocated as wages, one-third (1/3) shall be allocated as penalties, and one-third (1/3) shall be allocated as interest.

9. The deadline for the Named Plaintiffs and Participating Settlement Class Members to cash settlement checks shall be one-hundred eighty (180) days from the date of the settlement checks. The total value of any settlement checks that are not negotiated within 180 days of the date of such checks shall be distributed to the Legal Assistance Foundation (http://www.lafchicago.org/), a organization mutually selected by the Parties. The Legal Assistance Foundation has a principal purpose of promoting or providing services that are

eligible for funding under the Illinois Equal Justice Act, 30 Ill. Comp. Stat. 765/1 *et seq.* The Settlement Administrator shall identify the name of each Participating Class Member whose Settlement Award was distributed to the Legal Assistance Foundation and the amount of each such Participating Class Member's Settlement Award.

10.    Class Counsel is awarded $1,750,000.00, thirty-five percent (35%) of the Maximum Settlement Fund, for attorneys' fees, and $[insert- not to exceed $75,000.00] for reasonable costs incurred. The Settlement Administrator shall pay Class Counsel's attorney's fees and costs within five (5) business days after receipt of the Maximum Settlement Fund from Defendant in accordance with the terms of Settlement Agreement.

11.    The Court approves Service Awards to Named Plaintiffs Laura Progo, formerly Laura Garcia, and Lore Rednour in the amount of $5,000.00 each, for assisting Class Counsel with the prosecution of this Class Action, including conferring with Class Counsel, providing deposition testimony, answering written discovery, producing documents, and providing sworn declarations. Within eighteen (18) calendar days after receipt of the Maximum Settlement Fund, the Settlement Administrator shall mail checks to Class Counsel payable to Laura Progo and Lore Rednour for their Service Award in accordance with the terms of the Settlement Agreement.

12.    The Court approves the costs of administration incurred by American Legal Claim Services, LLC, the Settlement Administrator appointed by the Court, in the amount of $84,968.00. Within five (5) calendar days after receipt of the Maximum Settlement Fund, the Settlement Administrator is authorized to pay itself the sum of $84,968.00 for the cost of administering this settlement in accordance with the terms of the Settlement Agreement.

13.    The Court further orders that all Settlement Class Members who did not timely exclude themselves from the Settlement hereby fully release and discharge Defendant as set forth in the Settlement Agreement from any and all Released Claims as defined in the Settlement Agreement.

14.    Based on the declaration of [insert name/title], filed on [insert], the Court finds that [insert names] filed timely requests to be excluded from the Settlement. As a result, the Court finds that [insert names] is/are excluded from the Settlement Class certified herein, is/are not bound by the terms of the Settlement Agreement, and is/are not entitled to receive any payment as a result of this Settlement. The timely requests for exclusion represent [insert %] of the Class Members.

15.    Based on the declaration of [insert name/title] filed on [insert], the Court finds that no objections [or number of objections and disposition if applicable] were filed.

16.    The Court grants final approval of the Settlement. This Court retains jurisdiction for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms. Upon satisfaction of the terms of the Settlement Agreement, the Settlement Administrator shall terminate the Settlement Account and serve and file its final report, and the Parties shall submit a joint motion to enter a judgment dismissing the Class Action with prejudice.

ORDERED this _____ day of [insert month/year] in Chicago, Illinois.

_____
THE HONORABLE JOAN A. GOTTSCHALL
UNITED STATES DISTRICT JUDGE

Case: 1:12-cv-03687 Document #: 206-1 Filed: 03/22/17 Page 66 of 824 PageID #:6928

# EXHIBIT "4"

*Garcia, et al., v. J. C. Penny Corporation, Inc.* Case No. 12- CV-03687

## IMPLEMENTATION SCHEDULE

| DEADLINE | ACTIVITY |
|---|---|
| | Prior to the hearing on the Motion for Preliminary Approval: Defendant provides Settlement Administrator a current list of Class Members' last known addresses, employee identification numbers and the last four digits of their social security number. (S.A. §§2.6) |
| | Prior to the hearing on the Motion for Preliminary Approval: Class Counsel provides Settlement Administrator with Class Counsel's calculation of the value of each Class Member's Settlement Payment. (S.A. §6.1) |
| | The Parties file joint motion for preliminary approval (S.A. §5.1) |
| | Court conducts Preliminary Approval Hearing |
| | Court enters Preliminary Approval Order |
| | Within 7 calendar days after entry of the Preliminary Approval Order: the Settlement Administrator mails the Notice Package to Class Members. (S.A. §6.1) |
| | Thirty (30) days after the Settlement Administrator mails the Notice Package: Deadline for mailing/filing Requests for Exclusion and Objections (the "Response Deadline"). (S.A. §§2.28, 7.1, and 7.2) |
| | Within 10 business days after the Response Deadline: the Settlement Administrator provides Defendant and Class Counsel a list of all Opt-Out Class members (§§2.28, 7.2) |
| | Within fourteen (14) calendar days after the Response Deadline: the Settlement Administrator provides Defendant and Class Counsel a list of proposed Settlement Payments and to whom they are being paid. (S.A. §§2.28 and 7.4.3) |
| | Within ten (10) calendar days after receipt of list of Opt-Out Settlement Class Members: Last day for JCPenney to revoke settlement based on number of Opt-Outs. (§10.29) |
| | Deadline for Class Counsel to file Motion for Final Approval (S.A. §5.3) |
| | Court conducts Final Approval hearing |

| DEADLINE | ACTIVITY |
|---|---|
|  | Court enters final Judgment. |
|  | Within five (5) calendar days after receipt of the Maximum Settlement Fund from Defendant: Settlement Administrator pays itself costs of Administration. (S.A. §3.4) |
|  | Within ten (10) business days after the entry of the Final Approval Order: Defendant funds the Maximum Settlement Fund (S.A. § 3.1) <br><br> Within five (5) business days of receipt of the Maximum Settlement Fund: the Settlement Administrator disburses attorneys' fees and costs to Class Counsel. (S.A. §§ 3.2 and 3.3) |
|  | Within eighteen (18) calendar days of receipt of the Maximum Settlement Fund: the Settlement Administrator mails Settlement Payments to Participating Settlement Class Members. (S.A. §§ 3.6 and 7.4.4) |
|  | Within eighteen (18) calendar days after receipt of the Maximum Settlement Fund: the Settlement Administrator mails Service Awards to Class Counsel for delivery to Named Plaintiffs. (S.A. § 3.5) |
|  | Within sixty (60) calendar days after 180 calendar days after the issuance of settlement checks: Settlement Administrator provides a final accounting to Defendant and Class Counsel. (S.A.§§ 7.4.5 and 7.4.7) |



**Huffman & Kostas**

1441 State Street
San Diego, CA 92101-3421

Telephone (619) 544-0880
Facsimile (619) 544-0892

Ms. Laura Garcia
c/o Huffman & Kostas
1441 State Street
San Diego, CA 92101

PAGE 1
BILLING DATE:    06/22/17
ACC'T NO.:    CA-100-130C

RE:    Garcia, Laura v. J.C. Penney Corporation

(Illinois class action)

| DATE | EXPENSE | AMOUNT |
|---|---|---|
| 05/23/12 | Clerk of the Illinois District Court (fee for pro hac vice motion for JCK) | 50.00 |
| 05/23/12 | Clerk of the Illinois District Court (fee for pro hac vice motion for SAO) | 50.00 |
| 05/31/12 | Copies (May 2012) | 18.00 |
| 06/30/12 | Copies (June 2012) | 15.00 |
| 07/31/12 | Copies (July 2012) | 4.50 |
| 08/30/12 | Copies (August 2012) | 6.90 |
| 09/30/12 | Copies (September 2012) | 16.50 |
| 10/31/12 | Copies (October 2012) | 12.60 |
| 11/30/12 | Copies (November 2012) | 3.60 |
| 12/31/12 | Copies (December 2012) | 10.80 |
| 01/31/13 | Copies (January 2013) | 10.50 |
| 02/28/13 | Copies (February 2013) | 9.60 |
| 03/27/13 | Knox Attorney Services (copies of discovery documents produced by Defendant on disk, Bates Nos. 1 thru 1283) | 138.56 |
| 03/30/13 | Copies (March 2013) | 12.00 |
| 04/30/13 | Copies (April 2013) | 67.50 |
| 09/12/13 | Supreme Court of Illinois (annual registration for Kostas) | 107.31 |
| 09/12/13 | Supreme Court of Illinois (Ostroff annual registration) | 171.31 |
| 09/30/13 | Copies (September 2013) | 5.10 |
| 10/31/13 | Copies (October 2013) | 0.30 |
| 11/03/13 | Travel expenses for depositions of Representative Plaintiffs (Flights, Hotel, Taxi, Meals) | 1,780.24 |

### Huffman & Kostas
1441 State Street
San Diego, CA 92101-3421

Telephone (619) 544-0880
Facsimile (619) 544-0892

Ms. Laura Garcia
c/o Huffman & Kostas
1441 State Street
San Diego, CA 92101

PAGE 2
BILLING DATE:     06/22/17
ACC'T NO.:     CA-100-130C

| | | |
|---|---|---:|
| 12/04/13 | Federal Express to Lore Ann Rednoor | 36.39 |
| 12/20/13 | Federal Express depo transcript to client | 54.54 |
| 12/27/13 | JAMS mediation fee (1/2) | 3,137.50 |
| 04/09/14 | Travel expenses for mediation (Flights, Hotel, Taxi, Meals) (1/2) | 935.46 |
| 08/29/14 | Copies (August 2014) | 375.00 |
| 11/03/14 | Copies (October 2014) | 318.00 |
| 04/30/15 | Copies (April 2015) | 24.00 |
| 05/29/15 | Copies (May 2015) | 21.60 |
| 07/02/15 | Federal Express to Attorney Werman | 98.95 |
| 07/13/15 | Travel expenses for depositions of persons most knowledgeable (Flights, Hotel, Taxi, Meals) (1/2) | 884.19 |
| 07/30/15 | Copies (July 2015) | 162.60 |
| 08/28/15 | Copies (August 2015) | 332.70 |
| 05/03/16 | Copies (April 2016) | 45.00 |
| 07/01/16 | Copies (July, 2016) | 97.50 |
| 07/25/16 | Mediation Fee (David A. Rotman) (1/2) | 5,375.00 |
| 07/25/16 | Expert Fee (James Lackritz) | 21,362.50 |
| 07/28/16 | Travel expenses for mediation (Flights, Hotel, Taxi, Meals) (1/2) | 967.23 |
| 05/31/17 | Copies (May 2017) | 78.00 |
| 06/22/17 | Copies (June 2017) | 135.60 |
| 07/12/17 | Travel for Final Approval hearing (flights - $839.92, hotel - $619.80, taxis and meals - $150.00) | 1,609.72 |

**Total of New Expenses:**                                          **38,541.80**

# Huffman & Kostas

1441 State Street
San Diego, CA 92101-3421

Telephone (619) 544-0880
Facsimile (619) 544-0892

Ms. Laura Garcia
c/o Huffman & Kostas
1441 State Street
San Diego, CA 92101

PAGE 3
BILLING DATE:        06/22/17
ACC'T NO.:        CA-100-130C

---

**ACCOUNT SUMMARY**

| | |
|---|---|
| PREVIOUS BALANCE: | $0.00 |
| NEW SERVICES: | $0.00 |
| NEW EXPENSES: | $38,541.80 |
| NEW PAYMENTS: | $0.00 |
| TOT. CURRENT PERIOD: | $38,541.80 |
| **CURRENT BALANCE:** | **$38,541.80** |

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | | |
|---|---|---|
| GARCIA et al., | ) | |
| | ) | |
| | ) | Case No. 12-CV-03687 |
| | ) | |
| Plaintiffs, | ) | Judge: Hon. Joan B. Gottschall |
| | ) | |
| v. | ) | |
| | ) | |
| J.C. Penney Corporation, Inc. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF AMERICAN LEGAL CLAIM SERVICES, LLC
SETTLEMENT ADMINISTRATION**

I, Jeffrey L. Pirrung, declare as follows:

1. I am a competent adult, over the age of eighteen, and this declaration is based on my personal knowledge.

2. I am an employee of American Legal Claim Services, LLC ("ALCS"). ALCS was appointed by the Court to serve as the Settlement Administrator to administer the terms of the Settlement Agreement. I was principally responsible for overseeing the dissemination of notice to the Class; establishing and maintaining a telephone and email assistance program; and processing requests for inclusion and exclusion.

**Noticing**

3. On March 22, 2017, the proposed settlement was filed with the Court. ECF, No. 208-1. On March 29, 2017, ALCS mailed Notice of Proposed Class Action Settlement Under 28 U.S.C. § 1715 ("CAFA Notice") to the attorneys general of 48 states plus the District of Columbia, the US Virgin Islands and the Attorney General of the United States via certified mail through the US Postal Service. A list of recipients is attached hereto as Exhibit A. The CAFA Notice package contained a copy of the letter attached hereto as Exhibit B as well as a CD-Rom that included the following: 1) the Complaint, First Amended Class Action Complaint, Second Amended Class Action Complaint, and Third Amended Class Action Complaint, along with all materials filed therein; 2) a copy of the proposed Notice to Class Members of Proposed Settlement of Class Action that was attached as Exhibit 2 to the Settlement Agreement; 3) Motion for Preliminary Approval and Settlement Agreement and Release (with exhibits); and 4) an order from the related case Tschudy v. J.C. Penney Corporation, Inc., Case No. 11cv1011 JM (KSC) (S.D. Cal.) granting JCPenney's motion to sever the Illinois Plaintiffs and transfer venue of their claims to Illinois, along with a letter from the Southern District of California's

Clerk of Court effecting the same; and a list of states in which Class Members reside along with estimated share of the settlement by state.

4.  Class Counsel provided ALCS with a list of Class Members and their respective distribution amounts. Subsequently, counsel for the Defendant provided a list of the class members along with their mailing addresses and social security numbers. From these two lists, ALCS prepared the final mailing list that was used to send the Class Notice. The preparation for mailing by ALCS included running the list against multiple commercially reasonable means available to assist in locating current addresses, standardizing addresses, etc.

5.  The Class List was specifically processed using the United States Postal Service ("USPS") National Change of Address database. Names and addresses were also processed using skip trace methodologies and other search engine databases. Addresses were finally processed using USPS approved software, which standardizes the addresses and enhances opportunities for delivery through the use of an intelligent mail barcode.

6.  Pursuant to the Settlement Agreement, on April 5, 2017 ALCS mailed the Class Notice, substantially in the form attached to the Settlement Agreement as **Exhibit 2**, via USPS first-class mail postage prepaid, to all 38,465 Class Members.

7.  ALCS processed all mail returned by the USPS. Any Class Notice returned to the Administrator as non-delivered was re-mailed to the forwarding address affixed thereto. If no forwarding information was provided by the USPS, ALCS utilized commercially reasonable means to obtain a current address and promptly re-mailed Class Notices where updated current addresses were found. If an updated address was not found or if the re-mailed package was returned by the USPS a second time it was not re-mailed a third time and was deemed undeliverable.

8.  Of the 38,465 Notice Packages initially mailed, 3,284 were returned by the USPS and processed by ALCS, as of June 7, 2017. 3,232 had forwarding information attached or an updated address was found using commercially reasonable means. ALCS re-mailed the Notice Packages to the forwarding address. 953 Class Notices were deemed undeliverable per ¶ 6.2 of the Settlement Agreement. Although ALCS continues to receive undeliverable Class Notices and anticipates that the total number deemed undeliverable to increase, for purposes of distribution, any claimant whose Class Notice is deemed undeliverable after June 7, 2017 will not be excluded from the distribution process.

9.  The following is a summary of the noticing associated with this Class, as of June 7, 2017:

    ▪  Number initially mailed: 38,465
    ▪  Number re-mailed: 3,284
    ▪  Total number of Class Notices deemed undeliverable (including re-mailed Class Notices): 953[1]
    ▪  Percentage of Class Notices deemed undeliverable: 2.5%[1]

**Request for Exclusion**

_____

[1] ALCS continues to receive and process mail, for which no forwarding address is available. The number of pieces of this type of mail will likely increase and the presumed delivery rate will be reduced as processing continues.

10. Per ¶ 7.2 of the Settlement Agreement, the Class Notice informed Class Members that they may exclude themselves from the Agreement. It further stated that Class Members who wish to exclude themselves must submit a written statement requesting exclusion, the request must be signed and include name, address, telephone number, and the last 4 digits of the Social Security number or employee identification number. The postmark deadline for valid Requests for Exclusion was June 5, 2017. As of June 7, 2017, 11 valid Requests for Exclusion were received and processed by ALCS.

**Request for Inclusion in Class**

11. As of June 7, 2017, ALCS did not receive any requests from individuals, who were not included in the class list, to be included in the settlement.

**Telephone and Email Assistance Program**

12. ALCS established a dedicated toll-free phone number to provide answers to Class Member questions. The toll-free number provided a voice response unit listing of questions and answers to frequently asked questions and the option to leave a message for follow up by a live agent. As of June 7, 2017, ALCS received 261 calls regarding the Settlement.

13. ALCS also established a case specific email account to provide Class Members a means of submitting questions in writing. As of June 7, 2017, 83 emails were received by Class Members. ALCS agents reviewed the emails and responded to each within a reasonable amount of time.

**Objections**

14. The Class Notice informed Class Members that if they wish to object to the Agreement they must provide a written statement to the Court and serve it upon Counsel for the Parties before the deadline of June 5, 2017. As of the date of this declaration there have been no known Objections filed with the Court or served upon Counsel to the Parties.

**Distribution Model**

15. The following model shows the mechanics of the distribution of settlement funds. The pro-rata percentage allotted to each Class Member has been adjusted to reallocate the amounts originally allocated to 1) Class Members whose Class Notices were deemed undeliverable per ¶ 6.2 of the Settlement Agreement as of June 7, 2017, which amounted to $54,342.07 and 2) Class Members who requested to be excluded from the settlement, which amounted to $771.51. In total, $55,113.58 was reallocated due to undeliverable Class Notice or voluntary exclusion from the settlement.

| PRELIMINARY DISTRIBUTION MODEL | |
| --- | --- |
| **Payee** | **Amount** |
| Maximum Settlement Fund: | $5,000,000.00 |
| Class Counsel Attorney Fees: | ($1,750,000.00) |

3

| | |
|---|---|
| Class Counsel Attorney Fees: | ($1,750,000.00) |
| Class Counsel Costs: | ($75,000.00) |
| Administration Costs: | ($84,968.00) |
| Service Awards (2 x $5,000): | ($10,000.00) |
| | |
| Net Settlement Fund: | $3,080,032.00 |
| | |
| $10.00 Minimum Distribution Reserve (17,339 Claims x $10.00): | ($173,390.00) |
| | |
| Balance for Pro-Rata Distribution: | $2,906,642.00 |
| | |
| Valid Claims > $10.00 participating in Pro-Rata Distribution as of June 7, 2017 (20,162 claimants): | $2,906,642.00 |
| Pro-Rata % of MTO applied to claims receiving a distribution of > $10.00 | 46.52% |

16. The following summary shows a breakdown by distribution amount based upon the Preliminary Distribution Model above.

| Amount of Distribution Before Payroll Calculations | Number of Class Members |
|---|---|
| $10.00 | 17,339 |
| $10.01 - $100.00 | 13,546 |
| $100.01 - $250.00 | 4,062 |
| $250.01 - $1,000.00 | 2,173 |
| $1,000.01 - $16,050.00 | 381 |
| Total Class Members to Receive Distribution: | 37,501 |

I declare under penalty of perjury pursuant to the laws of the State of Florida that the foregoing is true and correct to the best of my knowledge. Executed on June 12, 2017 at Jacksonville, Florida.

Jeffrey L. Pirrung

4

EXHIBIT A

RECIPIENTS OF THE CAFA NOTICE

**Exhibit A- CAFA Recipients**

| *United States* | |
|---|---|
| JEFF SESSIONS | US ATTORNEY GENERAL |

| *Territories of the United States* | |
|---|---|
| CLAUDE E WALKER | ATTORNEY GENERAL OF US VIRGIN ISLANDS |
| KARL A RACINE | OF DISTRICT OF COLUMBIA |

| *States* | |
|---|---|
| STEVE MARSHALL | ATTORNEY GENERAL OF ALABAMA |
| JAHNA LINDEMUTH | ATTORNEY GENERAL OF ALASKA |
| MARK BRNOVICH | ATTORNEY GENERAL OF ARIZONA |
| LESLIE RUTLEDGE | ATTORNEY GENERAL OF ARKANSAS |
| XAVIER BECERRA | ATTORNEY GENERAL OF CALIFORNIA |
| CYNTHIA H COFFMAN | ATTORNEY GENERAL OF COLORADO |
| GEORGE JEPSEN | ATTORNEY GENERAL OF CONNECTICUT |
| MATTHEW DENN | ATTORNEY GENERAL OF DELAWARE |
| PAM BONDI | ATTORNEY GENERAL OF FLORIDA |
| CHRIS CARR | ATTORNEY GENERAL OF GEORGIA |
| LAWRENCE WASDEN | ATTORNEY GENERAL OF IDAHO |
| LISA MADIGAN | ATTORNEY GENERAL OF ILLINOIS |
| CURTIS T HILL JR | ATTORNEY GENERAL OF INDIANA |
| THOMAS MILLER | ATTORNEY GENERAL OF IOWA |
| DEREK SCHMIDT | ATTORNEY GENERAL OF KANSAS |
| ANDY BESHEAR | ATTORNEY GENERAL OF KENTUCKY |
| JEFF LANDRY | ATTORNEY GENERAL OF LOUISIANA |
| BRIAN FROSH | ATTORNEY GENERAL OF MARYLAND |
| MAURA HEALEY | ATTORNEY GENERAL OF MASSACHUSETTS |
| BILL SCHUETTE | ATTORNEY GENERAL OF MICHIGAN |
| LORI SWANSON | ATTORNEY GENERAL OF MINNESOTA |
| JIM HOOD | ATTORNEY GENERAL OF MISSISSIPPI |
| JOSHUA D HAWLEY | ATTORNEY GENERAL OF MISSOURI |
| TIM FOX | ATTORNEY GENERAL OF MONTANA |
| DOUG PETERSON | ATTORNEY GENERAL OF NEBRASKA |
| ADAM PAUL LAXALT | ATTORNEY GENERAL OF NEVADA |
| JOSEPH A FOSTER | ATTORNEY GENERAL OF NEW HAMPSHIRE |
| CHRISTOPHER S PORRINO | ATTORNEY GENERAL OF NEW JERSEY |
| HECTOR BALDERAS | ATTORNEY GENERAL OF NEW MEXICO |
| ERIC SCHNEIDERMAN | ATTORNEY GENERAL OF NEW YORK |
| JOSH STEIN | ATTORNEY GENERAL OF NORTH CAROLINA |
| WAYNE STENEHJEM | ATTORNEY GENERAL OF NORTH DAKOTA |
| MIKE DEWINE | ATTORNEY GENERAL OF OHIO |
| MIKE HUNTER | ATTORNEY GENERAL OF OKLAHOMA |
| ELLEN F ROSENBLUM | ATTORNEY GENERAL OF OREGON |
| JOSH SHAPIRO | ATTORNEY GENERAL OF PENNSYLVANIA |
| PETER KILMARTIN | ATTORNEY GENERAL OF RHODE ISLAND |
| ALAN WILSON | ATTORNEY GENERAL OF SOUTH CAROLINA |
| MARTY J JACKLEY | ATTORNEY GENERAL OF SOUTH DAKOTA |
| HERBERT H SLATERY | ATTORNEY GENERAL OF TENNESSEE |
| KEN PAXTON | ATTORNEY GENERAL OF TEXAS |
| SEAN REYES | ATTORNEY GENERAL OF UTAH |
| TJ DONOVAN | ATTORNEY GENERAL OF VERMONT |
| MARK HERRING | ATTORNEY GENERAL OF VIRGINIA |
| BOB FERGUSON | ATTORNEY GENERAL OF WASHINGTON |
| PATRICK MORRISEY | ATTORNEY GENERAL OF WEST VIRGINIA |
| BRAD SCHIMEL | ATTORNEY GENERAL OF WISCONSIN |
| PETER K MICHAEL | ATTORNEY GENERAL OF WYOMING |

EXHIBIT B

COVER LETTER INCLUDED IN CAFA NOTICE PACKET

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Catherine A. Conway
Direct: +1 213.229.7822
Fax: +1 213.229.6822
CConway@gibsondunn.com

March 29, 2017

VIA CERTIFIED MAIL

To:  All "Appropriate" Federal and State Officials Per 28 U.S.C.
Section 1715 (see attached distribution list)

Re:    Notice of Proposed Class Action Settlement Under 28 U.S.C. § 1715: *Garcia, et al. v. J.C. Penney Corporation, Inc.*, Case No. 12-CV-03687 (N.D. Ill.)

Dear Sir or Madam:

As counsel for and on behalf of J.C. Penney Corporation, Inc. ("JCPenney" or "Defendant"), I write to provide notice under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711 *et seq.*, of a proposed class action settlement between Defendant and Plaintiffs (collectively, the "Parties") in the above-referenced matter pending in the United States District Court for the Northern District of Illinois.  A settlement agreement that, if approved, would resolve all pending claims in *Garcia, et al. v. J.C. Penney Corporation, Inc.*, Case No. 12-CV-03687 (N.D. Ill.) was filed on March 22, 2017.

The *Garcia* class action lawsuit alleges that Defendant's "My Time Off" vacation policy violates the Illinois Wage Payment and Collection Act.  JCPenney has denied and continues to deny any wrongdoing whatsoever and asserts that its policies and practices complied with Illinois law.  The parties' Class Action Settlement and Release (the "Settlement Agreement") provides that it is not an admission of wrongdoing, and JCPenney is not altering any of its policies or procedures as a condition of the settlement.

On July 29, 2016, counsel for Plaintiffs and counsel for Defendant engaged in a mediation with David Rotman.  Following the mediation, the parties continued settlement negotiations. On September 9, 2016, the parties filed a Joint Notice of Settlement and Stipulation to Stay with the Court after the parties reached an agreement in principle to settle the case.  Since then, the parties continued negotiating the terms of the Settlement Agreement, which the parties finalized on March 1, 2017.  On March 22, 2017, Plaintiffs filed a Motion for Preliminary Approval of the finalized Settlement Agreement with the Court.

28 U.S.C. § 1715(b) lists eight items that must be provided to you in connection with any proposed class action settlement.   Each of these items is addressed below:

**GIBSON DUNN**

March 29, 2017
Page 2

1. 28 U.S.C. § 1715 (b)(l):  A copy of the complaint and any materials filed with the complaint and any amended complaints.

   The Complaint, First Amended Class Action Complaint, Second Amended Class Action Complaint, and Third Amended Class Action Complaint, along with all materials filed therein, are provided in electronic form on the enclosed CD as Exhibit A.[1]

2. 28 U.S.C. § 1715 (b)(2):  Notice of any scheduled judicial hearing in the class action.

   The Parties have proposed March 29, 2017 as the date for the Court to hold a hearing for preliminary approval of the Settlement Agreement.  A copy of the Motion for Preliminary Approval, which includes the Settlement Agreement and Release (with Exhibits) requesting this hearing is provided on the enclosed CD as Exhibit B.

3. 28 U.S.C. § 1715(b)(3):  Any proposed or final notification to class members.

   A copy of the proposed Notice to Class Members of Proposed Settlement of Class Action that will be provided to class members by first-class mail is provided on the enclosed CD as Exhibit 2 to the Motion for Preliminary Approval (Exhibit B on the enclosed CD).  This Notice describes the class members' right to exclude themselves from the class.

4. 28 U.S.C.  § 1715(b)(4):  Any proposed or final class action settlement.

   The proposed class action settlement is set forth in the Motion for Preliminary Approval and Settlement Agreement and Release (with exhibits), a copy of which is provided on the enclosed CD as Exhibit B.

5. 28 U.S.C. § 1715(b)(5):  Any settlement or other agreement contemporaneously made between class counsel and counsel for defendants.

   Class counsel and counsel for J.C. Penney Corporation, Inc. are currently in the process of finalizing a settlement in a related case pending in the Southern District of California, *Tschudy v. J.C. Penney Corporation, Inc.*, Case No. 11cv1011 JM (KSC) (S.D. Cal.).  As that settlement agreement has not yet been filed with the court, there are no documents currently available.

6. 28 U.S.C. § 1715(b)(6):  Any final judgment or notice of dismissal.

   There has been no final judgment or notice of dismissal.   Accordingly, no such document is currently available.  A copy of a Proposed Order Granting Final

---

[1]  This action was severed from a related case, *Tschudy v. J.C. Penney Corporation, Inc.*, Case No. 11cv1011 JM (KSC), which was brought in the Southern District of California.  *See* Exhibit D on the enclosed CD.

# GIBSON DUNN

March 29, 2017
Page 3

Approval of Class Action Settlement and Judgment of Dismissal has been tendered to the Court, and is provided on the enclosed CD as Exhibit 3 to the Motion for Preliminary Approval and Settlement Agreement (Exhibit B on the enclosed CD).

7. <u>28 U.S.C. § 1715(b)(7): (a) If feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or (b) if the provision of the information under subparagraph (a) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement.</u>

The names of class members who reside in each state and the estimated proportionate share of the claims of such members to the entire settlement are provided on the enclosed CD as Exhibit C.

8. <u>28 U.S.C. § 1715(b)(8): Any written judicial opinion relating to the materials described in 28 U.S.C. § 1715(b), subparagraphs (3) through (6).</u>

An order from the related case *Tschudy v. J.C. Penney Corporation, Inc.*, Case No. 11cv1011 JM (KSC) (S.D. Cal.) granting JCPenney's motion to sever the Illinois Plaintiffs and transfer venue of their claims to Illinois, along with a letter from the Southern District of California's Clerk of Court effecting the same, is provided on the enclosed CD as Exhibit D. There are no other written judicial opinions relating to the materials described in 28 U.S.C. § 1715(b) subparagraphs (3) through (6) at this time.

Any materials relating to the proposed settlement that are filed after the service of this notice can be found by visiting the "CM/ECF" online docket for the above-captioned case at https://ecf.ilnd.uscourts.gov/cgi-bin/ShowIndex.pl. These materials will also be made available at the settlement website, which the Parties are in the process of creating. If you have any questions or requests about this notice, the *Garcia* class action lawsuit, or the enclosed materials, please do not hesitate to contact me.

Sincerely,

Catherine A. Conway

CAC/bm

Attachment and Enclosure

cc: Attached Service List

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARCIA, et al., | ) | |
| | ) | Case No. 12-CV-03687 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge: Hon. Joan B. Gottschall |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF DOUGLAS M. WERMAN**

I, Douglas M. Werman, declare and state under penalty of perjury, the following:

1.      I am a member in good standing of the Illinois State Bar and am the managing shareholder of Werman Salas P.C.

2.      All the facts stated herein are true and correct and are within my personal knowledge.

**My Education and Experience**

3.      I graduated from Loyola University of Chicago's School of Law in 1990. I received my undergraduate degree from the University of Illinois, Champaign-Urbana, in 1987. I was admitted to practice law in the State of Illinois in 1990. During the entire course of my legal practice, I have practiced primarily in the area of labor and employment law. Since 2001, my practice has been highly concentrated in representing employees in cases arising under federal and state wage and hour laws, including the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), the Illinois Wage Payment and Collection Act ("IWPCA") and

1

the Illinois Day and Temporary Labor Services Act ("IDTLSA").

4.    Over 95% of my legal work involves federal and state court litigation of wage and hour cases in which employees seek to collect unpaid compensation or other owed employment benefits.

5.    I am admitted in the following courts:

| COURT OF ADMISSION | DATE OF ADMISSION |
|---|---|
| State of Illinois | 11/8/1990 |
| United States District Court, Northern District of Illinois | 12/20/1990 |
| United States Court Appeals, Seventh Circuit | 8/5/1994 |
| United States District Court, Western District of Michigan | 6/24/1999 |
| United States District Court, Central District of Illinois | 3/30/2001 |
| United States District Court, Eastern District of Michigan | 3/25/2003 |
| United States District Court, Southern District of Illinois | 4/8/2010 |
| United States District Court, Northern District of Indiana | 10/25/2010 |
| United States Court Appeals, Second Circuit | 11/21/2013 |
| United States Court Appeals, Eleventh Circuit | 5/6/2015 |
| United States District Court, Western District of New York | 7/22/2015 |
| United States Federal Claims Court | 8/13/2015 |
| United States District Court, Southern District of Indiana | 11/5/2015 |
| United States District Court, Eastern District of Arkansas | 12/4/2015 |
| United States Court Appeals, Tenth Circuit | 4/21/2016 |
| United States Court Appeals, Ninth Circuit | 5/20/2016 |
| United States District Court for Colorado | 6/6/2017 |

6.     My published cases in the area of wage and hour and employment law exceed 190

decisions, and include *Ervin v. OS Rest. Servs.*, 632 F.3d 971 (7th Cir. 2011), the leading

appellate decision addressing the propriety of a combined Rule 23 class action and a FLSA

collective action under 29 U.S.C. § 216(b).

7.     I was a co-author of the National Employment Lawyers Association ("NELA")

*amicus* brief filed in the case *Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872 (8th Cir. 2011) *cert.*

*denied* ___ U.S. ___, 181 L. Ed. 2d 977 (Jan. 17, 2012), which deals with Section 3(m) of the

Fair Labor Standards Act, and what duties a tipped employee may lawfully perform while

receiving a tip-credit wage rate. I was also a co-author of the NELA *amicus* brief filed in the case

*Roach v. T.L. Cannon Corp.*, Case No. 13-3070, which resulted in the successful appeal and

reversal of a district court's decision denying class certification on the grounds that

individualized damages in a wage and hour class action defeated predominance under Fed. R.

Civ. P. 23(b)(3). *Roach v. T.L. Cannon Corp.*, No. 13-3070-CV, 2015 WL 528125 (2d Cir. Feb.

10, 2015). The *Roach* decision is currently the lead appellate decision addressing the impact of

the United States Supreme Court decision in *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct.

1426 (2013) on the predominance prong of Fed. R. Civ. P. 23(b)(3) in wage and hour class

actions.

8.     I was a member of the working committee that helped author the 2006

amendments to the Illinois Day and Temporary Labor Services Act and the 2006 amendments to

the Illinois Minimum Wage Law. I was also a member of the working committee that assisted in

drafting the 2010 "Wage Theft" amendments to the Illinois Wage Payment and Collection Act.

9.     I am one of ten lawyers (five employee lawyers and five defense lawyers)

currently nominated to draft proposed Initial Discovery Protocols for individual Fair Labor

Standard Act ("FLSA") cases, to be implemented as a pilot project by individual judges throughout the United States District Courts. The project and the product are endorsed by the Federal Judiciary Center and Civil Rules Advisory Committee and is supervised by the Institute for the Advancement of the American Legal System.

10.    I am a member of the Board of Editors of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*," published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. Before being elevated to the Board of Editors in 2016, I was the Senior Chapter Editor of Chapter 20 ("Hybrid" FLSA/State Law Actions) of that same treatise.

11.    I am a frequent speaker and author on wage and hour matters. Some examples of my speaking engagements are:

| | |
|---|---|
| National Employment Lawyers Association National Convention, Los Angeles, 2016 | Co-Counseling & Cooperating with Other Plaintiffs' Lawyers |
| National Employment Lawyers Association National Convention, Los Angeles, 2016 | Who is an Employer & Who is an Employee? |
| Federal Bar Association, Chicago Chapter, Moderator, 2016 | Enforcement and Litigation Priorities: EEOC, NLRB, DOL |
| National Employment Lawyers Association National Convention, Washington, D.C., 2015 | Settlement Issues in Settling Wage and Hour Class and Collective Actions |
| American Bar Association, Fair Labor Standards Legislation Committee, Puerto Vallarta, Mexico 2015 | Litigation Issues in Wage and Hour Class and Collective Actions |
| Bridgeport Legal Conferences, Wage and Hour Class Action, Chicago, 2015 | Settlement of Wage and Hour Class Actions |
| Practicing Law Institute, Chicago, 2013, 2014, 2015 | FLSA Wage and Hour Update |
| Chicago Bar Association, Class Litigation Committee, 2011 | Current Terrain in Class Action Litigation |
| Illinois Institute of Continuing Legal Education, 2008 | Litigating Class Action Claims |
| AFL-CIO Lawyers Coordinating Committee, 2008 | Arbitrating Wage and Hour Cases |

12.     In 2012, I was a recipient of the Thirteenth Annual Award for Excellence in Pro
Bono Service awarded by the United States District Court for the Northern District of Illinois, in
conjunction with the Chicago Chapter of the Federal Bar Association.

13.     I have significant experience and success in prosecuting wage and hour class and
collective actions. Since January, 2000, I have been lead counsel in nearly seven hundred (700)
cases in the Northern, Central, and Southern Districts of Illinois, other federal district courts, and
the Circuit Court of Cook County, relating to the recovery of unpaid wages. The majority of
these cases proceeded as collective actions under § 216(b) of the FLSA and/or set forth class
action claims under the IMWL and IWPCA.

14.     Some examples of the cases that I have been designated class counsel include:
*Manpower*, Inc., No. 12 C 5248 (N.D. Ill. August 21, 2012) (class comprising over 85,000
employees); *Arrez v. Kelly Services, Inc.,* No. 07 C 1289 (N.D. Ill.) (class action for unpaid
wages for over 95,000 employees); *Polk v. Adecco*, No. 06 CH 13405 (Cook County, Il.)(class
action for owed pay for over 36,000 employees); *Romo v. Manpower,* No. 09 C 3429 (N.D. Ill.
January 18, 2012); *Robbins v. Blazin Wings, Inc.,* No. 15-CV-6340 CJS, 2016 WL 1068201, at
*1 (W.D.N.Y. Mar. 18, 2016) (step one FLSA certification of a collective of 62,000 tipped
employees); *Garcia v. JC Penney Corp., Inc.*, No. 12-CV-3687, 2016 WL 878203 (N.D. Ill. Mar.
8, 2016) (class action for owed pay for over 36,000 employees); *Haschak v. Fox & Hound Rest.
Grp.,* No. 10 C 8023, 2012 U.S. Dist. 162476, at * 2 (N.D. Ill. Nov. 14, 2012); *Sanchez v. Roka
Akor Chicago LLC,* No. 14-CV-4645, 2016 WL 74668, at *3 (N.D. Ill. Jan. 7, 2016); *Schaefer v.
Walker Bros. Enters., Inc.,* No. 10 C 6366, 2012 U.S. Dist. LEXIS 65432, at *4 (N.D. Ill. May 7,
2012); *Kernats v. Comcast Corp. Inc.,* Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS
112071 (N.D. Ill. Oct. 20, 2010); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 311 (N.D. Ill.

5

2010) & *Driver,* No. 06 C 6149, 2012 U.S. Dist. LEXIS 27659, at *15 (N.D. Ill. Mar. 2, 2012)

(decertification denied); *Schmidt v. Smith & Wollensky,* 268 F.R.D. 323 (N.D. Ill. 2010);

*Hardaway v. Employbridge of Dallas, et al.,* No. 11 C 3200 (N.D. Ill.); *Williams v. Volt,* No. 10

C 3927 (N.D. Ill.)(IWPCA class action for owed pay for over 15,000 employees); *Rosales v.

Randstad,* No. 09 C 1706 (N.D. Ill.); *Rusin v. Chicago Tribune,* No. 12 C 1135 (N.D. Ill.

February 5, 2013); and *Peraza v. Dominick's Finer Foods, LLC,* No. 11 C 8390 (N.D. Ill.

November 20, 2012). These and other cases have successfully recovered wages for tens of

thousands of working people.

### The Reasonable Fee and Market Rate in Wage and Hour Class Actions

15.     My firm contracts with its clients to receive between one-third and forty percent

of any potential settlement, whether class or individual, as reasonable compensation for engaging

in a potential multi-year lawsuit without an assurance of recovery.  Such fee contracts expressly

provide that plaintiffs' counsel will receive nothing if they ultimately fail to secure a monetary

recovery for plaintiffs.  Thus, plaintiffs' counsel assumed the risk that they would recover no fee

in this case it they were not successful.

16.     Between one-third and forty percent of the common-fund is also the customary

and reasonable fee in wage and hour class and collective actions in the Seventh Circuit. *See,

e.g.,* *Sanchez v. Roka Akor Chicago LLC,* 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017) (in

IMWL class action, awarding fees equivalent to 39.5% of the common fund and stating such an

award is "consistent with the market in the Northern District of Illinois."); *Furman v. At Home

Stores LLC,*  2017 WL 1730995, at *4 (N.D. Ill. May 1, 2017) (in FLSA minimum wage case,

awarding one-third of common fund and stating that "is the standard contingent percentage that

employment lawyers in the Northern District of Illinois charge individual clients."); *Briggs v.*

*PNC Financial Services, Inc.*, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016) (awarding one-third of maximum $6,000,000 common fund in FLSA collective action for owed overtime pay); *McDonnell v. Groupon, Inc.*, Case No. 14-9028, ECF No. 100 (N.D. Ill. Nov. 11, 2016) (awarding one-third of $2,500,000 common fund in FLSA and IMWL collective and class action for owed overtime pay); *Romo v. Manpower, Inc.*, Case No. 09 C 3429, ECF No. 249 (N.D. Ill.) (awarding one-third of $8,000,000 common fund in IWPCA vacation pay forfeiture class action); *Ortiz v. Manpower*, Case No. 12 C 5248, ECF No. 63 (N.D. Ill.) (awarding requested 30% of $11,000,000 common fund); *O'Toole v. Sears Roebuck, and Co.*, Case No. 11 C 4611, ECF 274 (awarding one-third of $5,000,000 common fund); *Beatty v. Capital One Financial Corporation*, Case No. 12-cv-434, ECF No. 75 (N.D. Ill.) (awarding one-third of $3,200,000 in FLSA collective action); *Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) (awarding one-third of $2,500,000 common fund in IWPCA vacation pay forfeiture class action); *Hardaway v. Employbridge of Dallas, Inc., et al.,* Case No. 11 C 3200, ECF No. 73 (N.D. Ill.) (awarding one-third of $1,500,000.00 common fund in IWPCA, IDTLSA, and IMWL unpaid wage class action); *Peraza v. Dominick's Finer Foods, LLC,* Case No. 11 C 8390, ECF No. 52 (N.D. Ill.) (awarding one-third of $1,450,000 common fund in IMWL overtime pay class action); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation pay forfeiture class action); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill) (awarding one-third of common fund in IMWL minimum wage and overtime pay case); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation pay forfeiture class action); *Rusin v. Chicago Tribune Company,* No. 12 C 1135, ECF No. 41 (N.D. Ill.) (awarding one-third of common fund in IMWL class action).

7

17.     Plaintiffs' Counsel also incurred $381.87 in reasonably incurred costs.

**The Settlement Provides an Excellent Result to the Class**

18.     I have been one of the counsel of record in this case since its filing. I am familiar with the procedural posture of the litigation and the settlement terms. I believe that the settlement is more than fair, reasonable and adequate, but provides an excellent result for all class members for the reasons explained in the memorandum of law in support of Plaintiff's motion for final approval.

19.     I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.


FURTHER AFFIANT SAYETH NOT.

Dated: June 14, 2017

Douglas M. Werman
**Werman Salas P.C.**
77 West Washington Street, Ste. 1402
Chicago, Illinois 60602
(312) 419-1008
dwerman@flsalaw.com

8

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARCIA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-03687 |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF SHELDON A. OSTROFF IN SUPPORT OF NAMED PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS**

I, Sheldon A. Ostroff, hereby declare and say as follows:

1.     I am one of the attorneys of record for the Named Plaintiffs in the above-captioned

action and have personal knowledge of each of the facts set forth herein, and if called upon as a

witness could and would testify competently thereto.

2.     On February 18, 2012, this Court granted my motion to appear *pro hoc vice* as co-

counsel on behalf of Named Plaintiffs herein. (ECF, 64)

3.     I am a member in good standing of the California State Bar. I have never had a

complaint filed against me with the Illinois State Bar or California State Bar. I have been

practicing law continuously on a full-time basis since June 3, 1983. I am licensed to practice

before all courts in the State of California, all U.S. District Courts in California, and the United

States Court of Appeals for the Ninth Circuit. I am also entitled to appear before the courts in the

1

State of Illinois and have complied with Supreme Court Rule 707. My attorney registration number is 6311804.

4. I did not have a prior relationship with the Named Plaintiffs prior to the commencement of this case.

5. I do not have any other cases pending in which J.C. Penney Corporation, Inc. ("JCP") is a party other than the case from which this case was severed and transferred by the District Court for the Southern District of California (3:11-CV-01011-JM) ("California action"). Further, I am not aware of any other vacation pay class action(s) or individual case(s) that are pending in Illinois against JCP.

6. For more than twenty (20) years I have devoted my practice almost exclusively to the representation of employees in consumer class actions and representative actions involving claims for unpaid wages. My current and former firm has served as lead counsel and/or co-lead counsel in more than 100 class and representative actions. I have been recognized by my peers as one of the "Top Attorneys" in San Diego County practicing in the area of labor/employment law. Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of my curriculum vitae which sets forth my educational background and professional experience.

7. This declaration is being submitted in support of Named Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, and Attorneys' Fees and Costs. The operative Settlement Agreement is attached to the declaration of my co-counsel, James C. Kostas, as Exhibit "B". I have read Mr. Kostas' declaration in support of final approval of the class-wide settlement reached in this action and agree with the statements contained therein. I will attempt to avoid repeating the statements contained in Mr. Kostas' declaration. I will also avoid repeating the entire procedural history of this case and the California action that is set forth in detail

in the declarations Mr. Kostas, Mr. Werman and I submitted in support of Plaintiffs' preliminary approval motion. Instead, I will focus on my involvement in the prosecution of Named Plaintiffs' claims which form the basis for my opinion that the settlement reached is fair, reasonable and adequate, in the best interest of the Class Members, and should be granted final approval by this Court. I will also briefly discuss my involvement in the administrative process subsequent to this Court's entry of the Preliminary Approval Order.

<u>Pre-litigation Investigation and Filing of Amended Complaint.</u>

8.     In November 2010, I was contacted JCP's Illinois employees regarding JCP's vacation policies. After my initial telephone discussions with the JCP's employees who contacted me regarding JCP's vacation policies, I began the process of investigating the terms of JCP's vacation policies applicable to its Illinois employees as well as JCP's administration of such policies. My investigation involved, among other things, interviewing former and current JCP Illinois employees, obtaining handbooks, payroll data, and other documents from the persons who I interviewed relating to the adoption, enforcement and administration of JCP's vacation policies applicable to its Illinois employees. Based on such investigation, I concluded that JCP's vacation policies and its administration of such policies did not comply with the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS §§ 115/1, *et seq*. and the regulations prescribed in the Illinois Administrative Code ("IAC").

9.     Based on the discussions with JCP's employees, my review and analysis of the documents provided to me by such employees regarding JCP's vacation policies and its administration of such policies, and the legal research I performed regarding Illinois law as it related to the accrual and payment of vacation wages, the previously filed California action, over JCP's objection, was amended on October 24, 2011 to include a similar claim under Illinois law on

3

behalf of the Named Plaintiffs herein. The claims of the Named Plaintiffs herein, Laura Progo, formerly Laura Garcia ("Progo") and Lore Rednour ("Rednour") were severed from the claims of the California Plaintiffs and transferred to this court on April 27, 2012. Following the transfer, Douglas M. Werman of Werman Salas P.C. joined my co-counsel, Mr. Kostas, and me in the prosecution of the Named Plaintiffs' and Class Members' claims

<u>Litigation History & Discovery.</u>

10.    After this case was severed from the California action and transferred to this court, I continued to interview percipient witnesses regarding JCP's vacation policies, regularly communicated with the Named Plaintiffs by telephone, email and/or in person. I prepared and propounded several sets of written discovery relating to JCP's vacation policies. "Met and conferred" repeatedly with JCP's counsel regarding what I perceived to be inadequate/incomplete discovery responses. Successfully compelled JCP to provide supplemental responses and additional responsive documents to the written discovery propounded by Named Plaintiffs regarding JCP's vacation policies and its administration of such policies. Thereafter, I was involved in the analysis of the hundreds of documents and thousands of data entries produced by JCP regarding the Named Plaintiffs' and Class Members' vacation accrual, usage, forfeitures, and payment of "accrued" but unused vacation on termination.

I spent a considerable amount of time in Chicago and surrounding suburbs interviewing witnesses, conferring with counsel, and preparing for and defending the depositions of the Named Plaintiffs. I also took the depositions of JCP's corporate designee(s) most knowledgeable regarding the adoption, enforcement and administration of JCP's vacation policies in Dallas, Texas on two separate occasions. I was involved in all aspects of both mediations conducted in San Francisco on April 9, 2014 and July 29, 2016, respectively.

I prepared and/or assisted in the preparation of all documents and pleadings filed in the instant action, including the operative Third Amended Complaint filed on April 14, 2015, both motions for class certification, the Settlement Agreement and exhibits annexed thereto, and the preliminary and final approval motion. I also assisted Mr. Kostas in the preparation of Named Plaintiffs' unfiled motion for summary judgment. The foregoing is a non-exhaustive list of my involvement in the prosecution of the claims asserted in the instant action.

Discovery in this case is complete and nothing more needs to be done to assess the merits of the Class Members' claims, JCP's defenses thereto and the dollar value of each Class Member's vacation forfeiture, according to Named Plaintiffs' theory of the case.

<u>The Settlement is Fair, Reasonable & Adequate.</u>

11.  Based on the foregoing, it is my opinion that the class-wide settlement reached in the instant action as set forth in the Parties' Settlement Agreement attached to the declaration of my co-counsel, James C. Kostas, as Exhibit "B" is fair, reasonable and adequate, in the best interest of the Class Members and represents an excellent result. The Maximum Settlement Fund represents a recovery of approximately 77.7% of the Settled Claims. The Settlement is the product of arms-length negotiations and there are no other agreements between the Parties or Counsel for the Parties of any nature. The proposed settlement treats all similarly situated Class Members identically. All Class Members received the same opportunity to participate in and receive payment from the approximately $3,080,032 Net Settlement Fund without making a claim. After almost six (6) years of litigation, two mediations, protracted discovery, and two class certification motions, clearly the goal of this litigation, to seek redress for the Class Members, has been met.

12.  The settlement reached by Settlement Class Counsel is exemplary and the product of years of litigation and the undertaking of significant risks by both Settlement

5

Class Counsel and the Named Plaintiffs. No Class Member has objected to the settlement. The Class Members were advised in the Class Notice that Settlement Class Counsel would request an award of attorneys' fees of thirty-five percent (35%) of the Maximum Settlement Fund. No Settlement Class Member has objected to such request which is in line with fee awards in similar cases and is justified by the efforts undertaken and exemplary result achieved. The Class Notice also advised Class Members that Settlement Class Counsel would request reimbursement of up to $75,000 in costs incurred in prosecuting this Action. Such costs were reasonable in amount and necessary in connection with the prosecution of this Action. No Class Member objected to this request. Additionally, only 11 of the 38,465 Class members have sought to exclude themselves from the settlement. This is the case because Participating Class Members are receiving settlement awards which represent a significant percentage of their actual losses according to Named Plaintiffs' theory of the case, exclusive of attorney's fees and expenses, costs of administration or the Named Plaintiffs' service award.

13. JCP denied, and continues to deny, each and all of the claims and allegations of the Named Plaintiffs' in this action. JCP has asserted, and continues to assert, many defenses to the Named Plaintiffs' claims, and has expressly denied, and continues to deny, any wrongdoing or legal liability. In essence, JCP claimed, and continues to claim: 1) that the Settlement Class Members suffered no forfeitures because its vacation policies contain a lawful "waiting period" during which no "vacation" benefits were accrued; (2) that Settlement Class Members suffered no forfeitures because pursuant to the express terms of its vacation policies, vacation benefits are advanced as an inducement for future performance and not based on length of service as in the case of

6

a look-back policy; (3) the Named Plaintiffs suffered no damages or released any claims which they possessed; and (4) that the Named Plaintiffs' and Settlement Class Members' claims are subject to decertification.

14.     The above brief description of the procedural history of the litigation and history of the settlement negotiations set forth in preceding paragraphs and the work described therein, do not represent an exhaustive description of every task performed by Settlement Class Counsel during the course of this litigation, but rather provide a summary of the more important tasks undertaken by Settlement Class Counsel. A general description of the work performed in this case by my co-counsel, James C. Kostas of Huffman & Kostas, and Douglas Werman of Werman Salas PC, is provided in their respective declarations and summarized in the accompanying Declaration of James C. Kostas.

15.     <u>The Settlement achieved is in the best interests of the Settlement Class Members.</u>

(a) Though Named Plaintiffs believe this case had merit, Named Plaintiffs realized they had a long and arduous road before them that was fraught with risk. Based upon the factors set forth herein above and below, the Named Plaintiffs agreed to settle this lawsuit on the terms provided in the Settlement Agreement.

(b)    The result achieved in this case is exceptional. Settlement Class Members are not required to file a claim to receive a Settlement Payment from the Net Settlement Fund and Participating Settlement Class Members will receive almost fifty percent (50%) of the dollar value of their unpaid vacation based on Named Plaintiffs'

theory of liability and damages, net of attorney's fees and expenses, administration costs and the service awards to the Named Plaintiffs.

(c)  It is impossible to predict with certainty whether, under the facts of this case, the Named Plaintiffs would prevail. Furthermore, even if the Named Plaintiffs survived a sure to be filed decertification motion and prevailed at the trial level, JCP would likely appeal any such favorable rulings. While Named Plaintiffs believe in the merits of their claims and those of the Settlement Class Members, JCP has asserted real and substantial defenses to them. Settlement in this case clearly benefits the Settlement Class when measuring the strengths of the Named Plaintiffs' case against the risk that Named Plaintiffs may not be able to establish liability and, even if successful, would ever receive compensation.

16.  Because liability in this case is uncertain, and because of the immediate beneficial effects of the proposed settlement, Settlement Class Counsel recommends that the Court approve the settlement as fair, reasonable and adequate, and in the best interest of the Settlement Class Members.

Administrative Process.

17.  Following notice to the class, I was involved in responding to questions by Class Members regarding the terms of the Settlement, their options under the Settlement Agreement, and the timing of the issuance of the Settlement Payments. I communicated with many Settlement Class Members by phone, in writing and email on a daily basis during the sixty (60) day notice period, as amended. The substance of my communications with Settlement Class Members involved responding to requests for detailed information regarding the terms of the Settlement, responding to questions

regarding Named Plaintiffs' theory of the case, responding to requests for additional Notice Packets, and obtaining information regarding address changes to provide to the Settlement Administrator. I kept detailed notes of each communication I had during the administration process with the Settlement Class Members.

<u>Nature of Settlement Class Counsel's Practice/Attorney Fee Request.</u>

18.   I am a solo practitioner and only work on select three (3) or four (4) class actions at a time. All of the work performed by my firm in this action was performed by me. I devoted a significant amount of time to the prosecution and resolution of this case over the past six (6) years. I was also prohibited from participating as counsel in other matters due to my involvement in this action. Settlement Class Counsel's request for an award of attorneys' fees of thirty-five percent (35%) of the Maximum Settlement Fund is in line with the market rate in cases such as this, has been awarded to Settlement Class Counsel by courts in this state and others in connection with the prosecution and settlement of similar class actions, and is justified by the effort expended and result achieved.

<u>Named Plaintiffs' Service Awards.</u>

19.   In accordance with the Settlement Agreement, § 3.5, Settlement Class Counsel also requests a service award of $5,000 each for the Named Plaintiffs. Such service awards are justified for a variety of reasons: (1) the Named Plaintiffs challenged their former employer for themselves and other former employees, (2) the Named Plaintiffs appeared for deposition, assisted in the preparation of their declarations is connection with both class certification motions, and responded to written discovery, (3) the Named Plaintiffs accepted the responsibility of personally assisting Settlement Class Counsel in all aspects of the litigation and, if the case warranted, trial, (4) the Named Plaintiffs expended a significant amount of time assisting Settlement Class Counsel in the

prosecution of this action, consisting of: (a) meeting Settlement Class Counsel to discuss the claims asserted in the operative complaint and preparing for their depositions; (b) locating witnesses and providing all documentation, including pay stubs and employee handbooks, which they received during the tenure of their employment with JCP to Settlement Class Counsel; (c) reviewing and approving the each complaint and the Settlement Agreement; (d) assisting Settlement Class Counsel with the preparation of written discovery propounded to JCP; (e) arranging telephone conversations between Settlement Class Counsel and other Associates employed in Illinois by JCP during the Class Period; and (f) responding to telephone and e-mail inquiries made by Settlement Class Counsel during the pendency of this action. The action brought by the Named Plaintiffs was risky. Nevertheless, the Named Plaintiffs achieved an exceptional result. Thus, the service awards requested would compensate the Named Plaintiffs for all of the above. In addition, it would serve as an incentive for others to step forward and vindicate important statutory rights as was done in this case. On this basis, and in accordance with § 3.5 of the Settlement Agreement, a service award in the amount of $5000 payable to each of the two the Named Plaintiffs is justified by the facts of this case.

I declare under penalty of perjury under the laws of the State of Illinois and the United States of America that the foregoing is true and correct.

EXECUTED on this 12 day of June, 2017 at San Diego, California.

Sheldon A. Ostroff



## BIOGRAPHY OF FIRM

**Sheldon A. Ostroff**
Partner
<u>Practice Areas</u>: Consumer Class Actions, Representative Actions, Employment Law, Insurance-Related Litigation, Civil Litigation and Business Litigation
<u>Admitted</u>: 1983, California; U.S. Tax Court; U.S. District Court, Southern District of California
<u>Biography</u>: Founding Partner, Law Offices of Sheldon A. Ostroff, 2001-present; Founding Partner, Blumenthal, Ostroff & Markham, 1991-2001; Associate, Law Offices of Rudick Platt Victor & Zuccaro, 1985-1991; Deputy Public Defender III, Imperial County Public Defender's Office, 1983-1985;
<u>Member</u>: San Diego County Bar Association; State Bar of California; San Diego Trial Lawyers Association, Consumer Attorneys of California, Consumer Attorneys of San Diego
<u>Educated</u>: University of California at San Diego (B.A., 1979); California Western School of Law (J.D. 1982); University of San Diego School Law (Post Graduate Diploma in Taxation (1983)
<u>Born</u>: Brooklyn, New York, June 10, 1958

## MATTERS IN WHICH I OR MY FIRM CURRENTLY ACTS OR HAS ACTED AS LEAD COUNSEL OR CO-LEAD COUNSEL

<u>Alvarez v. Limited Express, LLC</u> - Settled.
San Diego County Superior Court Case No. GIC856639
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Citizens Against Unfair Treatment, Inc. v. Abercrombie & Fitch Stores, Inc.</u> - Settled.
San Diego Superior Court, #GIC772693
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Citizens Against Unfair Treatment, Inc. v. American Manufacturers Mutual Insurance Co.</u> - Settled.
San Diego Superior Court, #GIC794464
Nature of Case: Unfair Business Practice; Sale of Unlawful Insurance Endorsements
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Citizens Against Unfair Treatment, Inc. v. Automobile Club of Southern California</u> - Settled.
San Diego Superior Court, #GIC801332
Nature of Case: Unfair Business Practices
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Citizens Against Unfair Treatment, Inc. v. Bath & Body Works</u> - Settled.
San Diego Superior Court, #GIC
Nature of Case: Unfair Business Practices - Failure to Pay for Vacation Time
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Robson v. Compaq</u> - Settled.
San Diego Superior Court, #GIC800679
Nature of Case: Wage and Hour Dispute
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

1

1
2

<u>Citizens Against Unfair Treatment, Inc. v. Lane Bryant, Inc.</u> - Settled.
San Diego Superior Court, #GIC796812
Nature of Case: Unfair Business Practices - Failure to Pay for Vacation Time
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

3
4
5

<u>Citizens Against Unfair Treatment, Inc. v. Lerner New York, Inc.</u> - Settled.
San Diego Superior Court, #GIC796812
Nature of Case: Unfair Business Practices - Failure to Pay for Vacation Time
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

6
7
8

<u>Citizens Against Unfair Treatment, Inc. v. The Limited Stores, Inc.</u> - Settled.
San Diego Superior Court, #GIC 772694
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

9
10
11

<u>Schaeffer v. Merrill Lynch & Co., Inc.</u> - Settled.
San Diego Superior Court, #GIC796812
Nature of Case: Unfair Business Practice - Wage and House Dispute
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

12
13
14

<u>Citizens for Fair Treatment, Inc. v. Mervyn's</u> - Settled.
San Diego Superior Court, #GIC 758205
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

15
16
17

<u>Citizens for Fair Treatment, Inc. v. Neiman Marcus Group, Inc.</u> - Settled.
San Diego Superior Court, #GIC 749587
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

18
19
20

<u>Citizens Against Unfair Treatment, Inc. v. Too, Inc.</u> - Settled.
San Diego Superior Court, #GIC799785
Nature of Case: Unfair Business Practices - Wage and Hour Dispute
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

21
22
23

<u>Citizens Against Unfair Treatment, Inc. v. US Bank</u> - Settled.
San Diego Superior Court, #GIC800007
Nature of Case: Unfair Business Practices - Wage and Hour Dispute
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

24
25

<u>Citizens Against Unfair Treatment, Inc. v. Victoria's Secret Stores, Inc.</u> - Settled.
San Diego Superior Court,
Nature of Case: Unfair Business Practices - Wage and Hour Dispute
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

26
27
28

<u>Barksdale v. Wells Fargo</u> - Settled.
San Diego Superior Court, #GIC798607
Nature of Case: Unfair Business Practices - Wage and Hour Dispute
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

1

<u>Danford v. UC Media, Inc.</u> - Settled.
San Diego Superior Court, #GIC 785717

2
Nature of Case: Unfair Business Practices-Unruh Act
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

3

4
<u>Delperdan v. Quest Communications</u> - Settled.
San Diego Superior Court, #GIC 741310

5
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

6
<u>Gambini v. Regents of the University of California</u> - Settled.
San Diego Superior Court, #GIC824765

7
Nature of Case: Statutory Violation - Patient Overcharges

8
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas; Barron Ramos

9
<u>Gift Card Cases II</u> *(JCCP-Coordinated)* - Settled.
San Diego Superior Court JCCP No. 4362

10
Unfair Business Practice - CC § 1749.5

11
<u>Hahn v. Circuit City Stores, Inc.</u> - Settled.
San Diego Superior Court, #GIC 741306

12
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time

13
Plaintiffs' Counsel: Blumenthal Ostroff & Markham; Huffman & Kostas

14
<u>Higgins v. Maryland Casualty</u> - Settled.
San Diego Superior Court, #726996

15
Nature of Case: Unfair Business Practices - Deceptive Insurance Overcharges

16
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

17
<u>Jones v. Explorer Insurance Co.</u> - Settled.
San Diego Superior Court, #GIC767188

18
Nature of Case: Unfair Business Practice - Unlawful Insurance Policy Provision

19
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

20
<u>Knoll v. Tenet Healthcare Corp.</u> - Settled.
San Diego Superior Court, #GIC726510

21
Nature of Case: Unfair Business Practice - Balanced Billing Overcharges
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff

22

23
<u>Lara - The Gap, Inc.</u> - Settled.
San Diego Superior Court, #GIC822867

24
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

25

26
<u>Lee v. County of San Diego</u> - Settled After Trial.
San Diego Superior Court, #623578

27
Nature of Case: Civil Rights Violation
Plaintiffs' Counsel: Blumenthal & Ostroff; Plourd & Levine; Law Offices of Tom Adler

28

EXHIBIT "A"

<u>Lexington v. Travelers</u> - Settled
U.S. District Court, Central District of California
Nature of Case: Insurance Subrogation
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

<u>King v. Nordstrom, Inc.</u> - Settled.
San Diego Superior Court, #731580
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Blumenthal Ostroff & Markham; Huffman & Kostas

<u>Manzanarez v. Home Savings of America</u> - Settled.
San Francisco Superior Court, #996068
Nature of Case: Unfair Business Practices - Overcharge for Inspection Fees
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

<u>Matloubian v. Home Savings of America</u> - Settled.
San Diego Superior Court, #693362
Nature of Case: Unfair Business Practices - Insurance Overcharges
Plaintiffs' Counsel: Blumenthal Ostroff & Markham; Chavez & Gertler

<u>McMeans v. Scripps Health</u> - Settled following California Supreme Court Review
San Diego Superior Court, #719840
Nature of Case: Unfair Business Practices - Hospital Overcharges
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

<u>Molina v. New York Life</u> - Settled
San Diego Superior Court Case No. GIC821137
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Molina v. New York Life</u> - Settled
San Diego Superior Court Case No. GIC824762
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Neustein v. Good Guys</u> - Settled.
San Diego Superior Court, #GIC823773
Nature of Case: Unfair Business Practices - Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Olszewski v. Scrippshealth</u> - Settled.
(2003) 30 Cal.4th 798
San Diego Superior Court, #728855
Nature of Case: Unfair Business Practices - Hospital Overcharges
Plaintiffs' Counsel: Chavez & Gertler; Law Offices of Sheldon A. Ostroff; Law Offices of Thomas J. Brandi

4

1
2

<u>Pearlman v. Bank of America</u> - Settled.
San Diego Superior Court, #687664
Nature of Case: Unfair Business Practice  - Insurance Overcharges
Plaintiffs' Counsel: Blumenthal Ostroff & Markham; Chavez & Gertler

3
4
5

<u>Plourd v. The Regents</u> - Dismissed.
San Diego Superior Court, #729408
Nature of Case: Unfair Business Practices - Hospital Overcharges
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

6
7
8

<u>Plourd v. Tenet Healthcare Corp.</u> - Settled.
San Diego Superior Court, #GIC730166
Nature of Case: Unfair Business Practices - Hospital Overcharges
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff

9
10
11

<u>Raasch v. Orkin Exterminating Company, Inc.</u> - Settled.
San Diego Superior Court, #GIC 757801
Nature of Case: Nature of Case: Unfair Business Practices- Unlawful Employment Practices
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

12
13
14

<u>Ramirez v. American Multi-Media, Inc.</u> - Settled.
San Diego Superior Court, #GIC823016
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

15
16
17

<u>Ramirez v. Big 5</u> - Settled.
San Diego Superior Court, #GIC822865
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

18
19

<u>Ramirez v. Big Lots Stores, Inc.</u> - Settled.
San Diego Superior Court, #GIC822866
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

20
21
22
23

<u>Ramirez v. Bath & Body Works</u> - Settled.
San Diego Superior Court, #GIC823734
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

24
25

<u>Ramirez v. Blockbuster</u> - Settled.
San Diego Superior Court, #GIC823735
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

26
27
28

<u>Ramirez v. Borders</u> - Settled.
San Diego Superior Court, #GIC823011
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

EXHIBIT "A"

1
2

<u>Ramirez v. Euromarket</u> - Settled.
San Diego Superior Court, #GIC823682
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

3
4
5

<u>Ramirez v. Gymboree</u> - Settled.
San Diego Superior Court, #GIC823733
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

6
7
8

<u>Ramirez v. Jamba Juice</u> - Settled.
San Diego Superior Court, #GIC822864
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

9
10
11

<u>Ramirez v. Limited</u> - Settled.
San Diego Superior Court, #GIC823684
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

12
13
14

<u>Ramirez v. Macys</u> - Settled.
San Diego Superior Court, #GIC823012
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

15
16

<u>Ramirez v. Neiman-Marcus</u> - Settled.
San Diego Superior Court, #GIC823015
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

17
18
19

<u>Ramirez v. Nordstrom</u> - Settled.
San Diego Superior Court, #GIC823013
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

20
21
22

<u>Ramirez v. Pottery Barn</u> - Settled.
San Diego Superior Court, #GIC823686
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

23
24
25

<u>Ramirez v. Simon</u> - Settled.
San Diego Superior Court, #GIC822766
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

26
27
28

<u>Ramirez v. Tiffany & Company</u> - Settled.
San Diego Superior Court, #GIC823010
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

6

<u>Ramirez v. Tommy Bahama Fashion Valley, LLC, et al.</u> - Settled.
San Diego Superior Court, #GIC826265
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Ramirez v. Victoria's Secret</u> - Settled.
San Diego Superior Court, #GIC823685
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Ramirez v. Westfield America, Inc.</u> - Settled.
San Diego Superior Court, #GIC822775
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Ramirez v. Williams-Sonoma</u> - Settled.
San Diego Superior Court, #GIC823760
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Ramos v. Countrywide</u> - Settled.
San Diego Superior Court, #691897
Nature of Case: Unfair Business Practices - Insurance Overcharges
Plaintiffs' Counsel: Blumenthal Ostroff & Markham; Sullivan Hill; Chavez & Gertler

<u>Redin v. Sterling Trust</u> - Settled.
Los Angeles Superior Court, #BC217726
Nature of Case: Breach of Fiduciary Duties of IRA Administrator
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

<u>Richardson v. Tenet Healthcare Corporation</u> - Settled.
San Diego Superior Court, #GIC 744954
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Robinson v. J.C. Penney Company</u> - Settled.
San Diego Superior Court, #GIC 741927
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Rulla v. State Farm Insurance Mutual Automobile Insurance Company</u> - Settled.
San Diego Superior Court, #GIC805951
Nature of Case: Unfair Business Practices
Plaintiff's Counsel: Law Offices of Sheldon A. Ostrfoff; Huffman & Kostas

<u>Schaeffer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u> - Settled.
San Diego Superior Court, #GIC 796812
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

7

1

<u>Stevens v. Robinsons-May</u> - Settled.

2

San Diego Superior Court, #GIC 729301
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time

3

Plaintiffs' Counsel: Blumenthal Ostroff & Markham; Huffman & Kostas

4

<u>Thornburg v. Bactes</u> - Settled Following Appeal

5

Imperial Superior Court, #L-01410
Nature of Case: Unfair Business Practices

6

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas, Law Offices of
Barron C. Ramos

7

8

<u>Vasquez v. Abercrombie & Fitch</u> - Settled.
San Diego Superior Court, #GIC823737
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards

9

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

10

11

<u>Vasquez v. Brookstone</u> - Settled.
San Diego Superior Court, #GIC823110
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards

12

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

13

14

<u>Vasquez v. Eddie Bauer</u> - Settled.
San Diego Superior Court, #GIC823682
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards

15

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

16

17

<u>Vasquez v. JC Penney</u> - Settled.
San Diego Superior Court, #GIC23108
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards

18

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

19

20

<u>Vasquez v. May</u> - Settled.
San Diego Superior Court, #GIC823111
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

21

22

<u>Vasquez v. Pier I Imports, Inc.</u> - Settled.
San Diego Superior Court, #GIC823755
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards

23

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

24

25

<u>Vasquez v. Saks</u> - Settled.
San Diego Superior Court, #GIC823109
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards

26

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

27

28

EXHIBIT "A"

Vasquez v. Sharper Image - Settled.
San Diego Superior Court, #GIC823683
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Vasquez v. Too, Inc. - Settled.
San Diego Superior Court, #GIC823756
Nature of Case: Unfair Business Practices; Deceptive Marking of Gift Cards
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Villavicencio v. The TJX Companies, Inc. - Settled.
San Diego Superior Court, #GIC 758206
Nature of Case: Unfair Business Practices-Failure to Pay for Vacation Time
Plaintiffs' Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Vuorenmaa v. Structure, Inc. - Settled.
San Diego Superior Court, #GIC796812
Nature of Case: Unfair Business Practices - Failure to Pay for Vacation Time
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Wadhwa v. Escrow Plus - Settled.
Los Angeles County Superior Court, #BC170157
Nature of Case: Investment Fraud
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

Zugich v. Wells Fargo Bank - Settled.
San Francisco Superior Court, #990622
Nature of Case: Unfair Business Practices - Insurance Overcharges
Plaintiffs' Counsel: Blumenthal Ostroff & Markham

Hlavac v. Citigroup Global Markets, Inc. - Settled
San Diego Superior Court Case No: GIC 831641
Nature of Case: Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Johnson v. Bank of America - Settled.
San Diego Superior Court Case No: GIC857397
Nature of Case: Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Ghafour v. Wawanesa General Insurance Company - Settled.
San Diego Superior Court Case No: GIC857012
Nature of Case: Unfair Business Practice - Insurance
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Butts v. USAA Casualty Insurance Company - Settled.
United States District Court Case No: 05CV2291
Nature of Case: Unfair Business Practice - Insurance
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

9

1

<u>Chong v. State Farm Mutual Automobile Insurance Company</u> - Settled.
United States District Court Case No: 06CV2241

2

Unfair Business Practice - Insurance
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

3

4

<u>Collins v. Allstate Indemnity Company</u> - Resolved following review by the California Supreme Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).
San Diego Superior Court Case No: GIC867011

5

Nature of Case: Unfair Business Practice - Insurance

6

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

7

<u>Delanzo v. Allstate Insurance Company</u> - Resolved following review by the California Supreme Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).

8

San Diego Superior Court Case No: GIC856166
Nature of Case: Unfair Business Practice - Insurance

9

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

10

<u>Fimbrez v. Mercury Insurance Company</u> - Resolved following review by the California Supreme

11

Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).
San Diego Superior Court Case No: GIC857013

12

Nature of Case: Unfair Business Practice - Insurance
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

13

14

<u>Jerome v. Coast National Insurance Company</u> - Resolved following review by the California Supreme
Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).

15

San Diego Superior Court Case No: GIC857009
Nature of Case: Unfair Business Practice - Insurance

16

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

17

<u>Montpetit v. Interinsurance Exchange of the Automobile Club</u> - Resolved following review by the

18

California Supreme Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511
(2009).

19

San Diego Superior Court Case No: GIC856160
Nature of Case: Unfair Business Practice - Insurance

20

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

21

<u>Northcote v. Hartford Casualty Insurance Company</u> - Resolved following review by the California

22

Supreme Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).
San Diego Superior Court Case No: GIC856165

23

Nature of Case: Unfair Business Practice - Insurance
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

24

25

<u>Olson v. Mercury Casualty Insurance Company</u> - Resolved following review by the California
Supreme Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).

26

San Diego Superior Court Case No: GIC856164
Nature of Case: Unfair Business Practice - Insurance

27

Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

28

EXHIBIT "A"

1

<u>Philips v. Farmers Insurance Exchange</u> - Resolved following review by the California Supreme Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).

2

San Diego Superior Court Case No: GIC856161
Nature of Case: Unfair Business Practice - Insurance

3

4

<u>Quintana v. 21st Century Insurance Company</u> - Resolved following review by the California Supreme Court in *21st Century Insurance Company v. Superior Court,* 47 Cal.4th 511 (2009).
San Diego Superior Court Case No: GIC857010

5

Nature of Case: Unfair Business Practice - Insurance
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

6

7

<u>Ziman v. Liberty Mutual Fire Insurance Company</u> - Settled.
United States District Court Case No: 05CV2344W

8

Nature of Case: Unfair Business Practice - Insurance
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

9

10

<u>Casiple v. Medrec Services, Inc.</u> - Settled.
Orange Superior Court Case No: 06CC00075

11

Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

12

13

<u>Dall v. MedAmerica Billing Services</u> - Settled.
San Diego Superior Court Case No: GIC864291

14

Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

15

16

<u>Del Campo v. Per-Se Technologies, Inc.</u> - Settled.
Imperial Superior Court Case No: ECU03004

17

Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

18

19

<u>Herbers v. Smart Document Solutions, LLC</u> - Settled.
Orange Superior Court Case No: 06CC00074

20

Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

21

22

<u>Peralta v. HRA Medical Management, Inc.</u> - Settled.
San Diego Superior Case No: GIC864244

23

Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

24

<u>Ramirez v. Correspondence Management Specialists</u> - Settled.
San Diego Superior Court Case No: GIC864242

25

Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

26

27

<u>Sullivan v. Diversified Medical Records Services, Inc.</u> - Settled.
San Diego Superior Court Case No: GIC864288

28

11

Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Tapia v. Healthcare Management Partners, LLC - Settled.
San Diego Superior Court Case No: GIC864289
Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Ramos v. Cedars-Sinai Medical Center - Settled.
Los Angeles Superior Court Case No: BC345281
Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Stanley v. Kelly Services, Inc. - Settled.
United States District Court Case No: 06CV0690
Nature of Case: Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Adler/Danford v. Interactive Voice Medical (CA) Corp. - Settled.
Sacramento Superior Court Case No: 04AS01936
Nature of Case: Unfair Business Practice - Unruh Act
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Reece v. Chart One, Inc. - Settled.
San Diego Superior Court Case No: GIC864290
Nature of Case: Unfair Business Practice - Violation of Evidence Code §1158
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Stone v. Busch Entertainment Corporation - Settled.
San Diego Superior Court Case No: GIC837803
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Gomez v. Lennar Corporation - Settled.
San Diego County Superior Court - Case No: 37-2007-00083630-CU-OE-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Machucho v. Volt Information Sciences, Inc. - Settled.
San Diego County Superior Court - Case No: 37-2008-00076583-CU-OE-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

Shin v. First Republic Bank - Settled
San Diego County Superior Court - Case No: 37-2007-00067206-CU-OE-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

12

1
2
3

Whyte v. The May Dept. Stores - Settled.
San Diego County Superior Court - Case No: GIC 873468
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

4
5

Piccirilli v. Hertz Local Edition Corp. - Settled.
U.S. District Court, Southern District of California - Case No: 07-CV-1370 JAH (RBA)
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

6
7
8

Maninang v. Randstad - Settled.
San Diego Superior Court - Case No: 37-2010-00093130-CU-BT-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

9
10
11

Johnson v. Robert Half International, Inc. - Settled.
San Diego Superior Court - Case No: 37-2009-00084135-CU-MC-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

12
13
14

Harris v. Manpower, Inc.  - Settled following Ninth Circuit Appeal.
United States District Court - Case No:  09-CV-2368-BEN-JMA
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

15
16
17

Rodriguez v. Enterprise Holding, Inc. - Settled.
San Diego Superior Court - Case No: 37-2010-00103735-CU-BT-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

18
19
20

Interbitzen v. Bank of America Corporation - Settled.
San Diego Superior Court - Case No: 37-2010-00099388-CU-BT-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

21
22
23

Huizar v. Bank of America Corporation - Settled.
San Diego Superior Court - Case No: 37-2012-00095579-CU-BT-CTL
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

24
25

Garcia v. J. C. Penney Corporation, Inc. - In Litigation
United States District Court, Northern District of Illinois, Case No:  12-CV-03687
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

26
27
28

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Wright, et al. v. Kmart Stores of Illinois, Inc.</u> - Settled
Circuit Court of Cook County, Illinois, County Department, Chancery Division,
Case No: No. 2013CH07579
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Morris, et al. v. Sears, Roebuck and Co., et al.</u> - Settled
Circuit Court of Cook County, Illinois, County Department, Chancery Division,
Case No: No. 2016CH05775
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Paprock v. First Transit, Inc.</u> - On Appeal
San Diego Superior Court - Case No: 37-2010-00055583-CU-OE-NC
Unfair Business Practices - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Tschudy, Raymond v. J. C. Penney Corporation, Inc.</u> - In Litigation
San Diego Superior Court - Case No: 37-2011-00088964-CU-BT-CTL
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

<u>Knatt and Lowe v. J.C. Penney Corporation, Inc.</u> - In Litigation
U.S. District Court, Southern District of California
Case No: 3:15-CV-2516 (JM)(KS)
Unfair Business Practice - Labor
Plaintiff's Counsel: Law Offices of Sheldon A. Ostroff; Huffman & Kostas

EXHIBIT "A"

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARCIA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-03687 |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF LAURA PROGO fka LAURA GARCIA IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS**

I, Laura Progo, hereby declare and say as follows:

1.     I was employed by JCPenney as a Part-Time Non-Management Associate ("PTNMA") in Illinois from in or about November 17, 2005 to in or about June 28, 2009. As a PTNMA I was eligible to receive vacation benefits pursuant to JCPenney's My Time Off vacation policy ("Vacation Policy").

2.     During my three and one-half years of employment at JCPenney I worked 3,796.7 hours, and generally worked more than 20 hours each week. During the first 48 weeks of my employment I averaged approximately 18.24 hour per week. I was earning $8.63 per hour at the time of my termination. It is my understanding that I did not receive any MTO benefits because I did not average 25 hours a week during the first 48 weeks of my employment, or during the first 48 weeks of any 52 week period during each anniversary year of my employment.

1

3.     After I terminated my employment with JCPenney it came to my attention that the JCPenney may have not paid its PTNMAs all accrued vacation benefits at termination. I elected to explore any claim I had against JCPenney and was ultimately referred to Class Counsel.

4.     After discussing my employment status and history with Class Counsel, they informed me that they would be willing to represent me and all other similarly situated employees if I was willing to act as a  representative plaintiff.  I was informed that as a representative plaintiff the case would be prosecuted through me on behalf of all similarly situated employees.  I was also informed that I may be required to spend substantial time assisting Class Counsel and that I would be required to be available to perform the following general tasks:

    a.     Assist Class Counsel with any and all pre-filing and post-filing investigations;

    b.     Review, edit and approve any and all pleadings;

    c.     Assist in the preparation of discovery;

    d.     Assist in responding to discovery;

    e.     Attend depositions as required;

    f.     Attend hearings, including settlement conferences, as required;

    g.     Assist Class Counsel, as required, to analyze and/or develop existing and/new evidence;

    h.     Evaluate settlement proposals; and

    i.     Attend and testify at the hearing on the motion for class certification and/or trial.

5.     I was also informed that if the case settled before trial or Class Counsel was successful at trial, I would be treated the same as all other similarly situated employees.  Class Counsel explained to me that I may receive an incentive award or enhancement for the services that I performed for the benefit of all of the similarly situated employees but that: 1) such amount could

2

not be determined until the services that I rendered could be evaluated; 2) that any award must be determined and approved by the court; and 3) that Class Counsel could only recommend or request the payment of a specific amount, based on their experience and the quality and quantity of my service, after I evaluate and approve a settlement or a trial is completed;

6.    I am estimate that I have spent 64 hours performing the duties of a representative plaintiff. A summary of the tasks I performed, and the assistance that I provided Class Counsel, is as follows:

    a.    Assisted with the pre-filing and post-filing investigation by telephone, email and at meetings;

    b.    Reviewed, edited and approved complaint(s);

    c.    Located and contacted other employees to discuss this case and requested that they contact Class Counsel to be interviewed to assist in the development and prosecution of this case;

    d.    Assisted with the preparation of discovery, including interrogatories, requests for admissions and document requests;

    e.    Assisted with the review of the documents and the declarations that were submitted by JCPenney to help Class Counsel understand the Vacation Policy;

    f.    Attended two (2) pre-deposition preparation meetings with Class Counsel;

    g.    Traveled to and attended my deposition;

    h.    Remained in contact with Class Counsel by phone, email and face to face meetings during the pendency of this case;

    i.    Reviewed and edited my declaration in support of class certification

    j.    Discussed settlement positions and terms with Class Counsel during the course of the settlement discussions;

    k.    approved proposed settlement terms;

    l.    Reviewed and approved Settlement Agreement with Class Counsel; and

m.    Reviewed and approved motion for preliminary and final approval and authorized the filing of these documents.

7.    I was never informed of the amount of my estimated individual settlement award during the time that I was assisting Class Counsel with settlement negotiations or at the time that I ultimately approved the final settlement terms. In fact, I was not informed of the estimated amount of my individual settlement class award until I received the Class Notice.

8.    After I approved the final settlement terms Class Counsel informed me that based on their experience and the work I performed that they would request JCPenney consent to the payment of an enhancement award, subject to Court approval, not to exceed $5,000. Class Counsel emphasized that any award will be determined by the court, and its decision as to the amount of my award will be made independent of any other decision the court makes in connection with the motion for final approval of the settlement and other related matters.

9.    As I indicated in paragraph 7 above, I actively participated in the negotiations for the settlement of this case; I have reviewed and am familiar with the scope of the settlement class and the amount that we will be paid for the settled claims. I believe that the settlement terms are a fair, reasonable and adequate resolution of the settled claims. I was also expressly informed before I approved the settlement terms the amount of attorneys' fees and costs that Class Counsel would be authorized to request pursuant to the terms of the settlement. I believe that Class Counsel should be awarded the $1,750,000 in fees and $38,541.80 in costs that they are requesting for the work

/ / /

/ / /

/ / /

/ / /

4

they performed, the costs they incurred and the result they achieved. I also believe that the costs that Class Counsel incurred are reasonable and necessary.

If I were called as a witness in this proceeding, I could and would competently testify to the foregoing facts as being of my own personal knowledge except where otherwise indicated.

I declare under penalty of perjury under the laws of the State of Illinois and the United States of America that the foregoing is true and correct. Executed this _2_ day of June, 2017 at _Berkeley_, Illinois.

_Laura Progo_
Laura Progo

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARCIA, et al.                              )
                                            )
              Plaintiffs,                   )
                                            )
       v.                                   )       Case No. 12-CV-03687
                                            )
J.C. PENNEY CORPORATION, INC.,              )
et al.,                                     )       Judge Joan B. Gottschall
                                            )
              Defendant.                    )
                                            )

## DECLARATION OF LORE REDNOUR IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

I, Lore Rednour, hereby declare and say as follows:

1.      I was employed by JCPenney as a Part-Time Non-Management Associate ("PTNMA") in Illinois from in or about November 26, 2007 to in or about October 30, 2010. As a PTNMA I was eligible to receive vacation benefits pursuant to JCPenney's My Time Off vacation policy ("Vacation Policy").

2.      During my almost three years of employment with JCPenney, I worked 3,750.40 hours. During the first 48 weeks of my employment I averaged approximately 29.47 hours per week. During the 174 weeks I worked for JCPenney I averaged 21.55 per week. I was earning $8.79 per hour at the time of my termination. Because I averaged more than 25 hours in the first 48 weeks of my employment, I received the vacation benefits which I accrued during the first 48 weeks of my employment on a pro rata basis on the first day of each month during my second year of employment. Although I averaged more than 25 hours during the first 48 weeks of my second

1

year of employment in 2009 as calculated by JCPenney, JCPenney did not pay the 2009 vacation benefits that were due in November and December 2010 because my employment terminated on October 30, 2010. I also did not receive any vacation benefits for the period January 1, 2010 through October 30, 2010.

3.     After I terminated my employment with JCPenney it came to my attention that JCPenney may have not paid its PTNMAs all accrued vacation benefits at termination. I elected to explore any claim I had against JCPenney and was ultimately referred to Class Counsel.

4.     After discussing my employment status and history with Class Counsel, they informed me that they would be willing to represent me and all other similarly situated employees if I was willing to act as a representative plaintiff. I was informed that as a representative plaintiff the case would be prosecuted through me on behalf of all similarly situated employees. I was also informed that I may be required to spend substantial time assisting Class Counsel and that I would be required to be available to perform the following general tasks:

a.     Assist Class Counsel with any and all pre-filing and post-filing investigations;

b.     Review, edit and approve any and all pleadings;

c.     Assist in the preparation of discovery;

d.     Assist in responding to discovery;

e.     Attend depositions as required;

f.     Attend hearings, including settlement conferences, as required;

g.     Assist Class Counsel, as required, to analyze and/or develop existing and/new evidence;

h.     Evaluate settlement proposals; and

i.     Attend and testify at the hearing on the motion for class certification and/or trial.

2

5.     I was also informed that if the case settled before trial or Class Counsel was successful at trial, I would be treated the same as all other similarly situated employees. Class Counsel explained to me that I may receive an incentive award or enhancement for the services that I performed for the benefit of all of the similarly situated employees but that: 1) such amount could not be determined until the services that I rendered could be evaluated; 2) that any award must be determined and approved by the court; and 3) that Class Counsel could only recommend or request the payment of a specific amount, based on their experience and the quality and quantity of my service, after I evaluate and approve a settlement or a trial is completed;

6.     I am estimate that I have spent 61 hours performing the duties of a representative plaintiff. A summary of the tasks I performed, and the assistance that I provided Class Counsel, is as follows:

    a.    Assisted with the pre-filing/post-filing investigation by telephone, email and at meetings;

    b.    Reviewed, edited and approved complaint(s);

    c.    Located and contacted other employees to discuss this case and request that they contact Class Counsel to be interviewed to assist in the development and prosecution of this case;

    d.    Assisted with the preparation of discovery, including interrogatories, requests for admissions and document requests;

    e.    Assisted with the review of the documents and the declarations that were submitted by JCPenney to help Class Counsel understand the Vacation Policy;

    f.    Attended two (2) pre-deposition preparation meetings with Class Counsel;

    g.    Traveled to and attended my deposition;

    h.    Remained in contact with Class Counsel by phone, email and face to face meetings during the pendency of this case;

    i.    Reviewed and edited my declaration in support of class certification;

3

j.  Discussed settlement positions and terms with Class Counsel during the course of the settlement discussions;

k.  approved proposed settlement terms;

l.  Reviewed and approved Settlement Agreement with Class Counsel; and

m.  Reviewed and approved motion for preliminary and final approval and authorized the filing of these documents.

7.  I was never informed of the amount of my estimated individual settlement award during the time that I was assisting Class Counsel with settlement negotiations or at the time that I ultimately approved the final settlement terms. In fact, I was not informed of the estimated amount of my individual settlement class award until I received the Class Notice.

8.  After I approved the final settlement terms, Class Counsel informed me that based on their experience and the work I performed that they would request JCPenney consent to the payment of an enhancement award, subject to Court approval, not to exceed $5,000. Class Counsel emphasized that any award will be determined by the court, and its decision as to the amount of my award will be made independent of any other decision the court makes in connection with the motion for final approval of the settlement and other related matters.

9.  As I indicated in paragraph 7 above, I actively participated in the negotiations for the settlement of this case; I have reviewed and am familiar with the scope of the settlement class and the amount that we will be paid for the settled claims. I believe that the settlement terms are a fair, reasonable and adequate resolution of the settled claims. I was also expressly informed before I approved the settlement terms the amount of attorneys' fees and costs that Class Counsel would be authorized to request pursuant to the terms of the settlement. I believe that Class Counsel should be awarded the $1,750,000 in fees and $38,541.80 in costs that they are requesting for the work

they performed, the costs they incurred and the result they achieved. I also believe that the costs that Class Counsel incurred are reasonable and necessary.

If I were called as a witness in this proceeding, I could and would competently testify to the foregoing facts as being of my own personal knowledge except where otherwise indicated.

I declare under penalty of perjury under the laws of the State of Missouri and the United States of America that the foregoing is true and correct. Executed this _10th_ day of June, 2017 at _Springfield_, Missouri.

_Lore Rednour_
Lore Rednour